UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE L. TWITCHELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ENOVIX CORPORATION, et al.,<br><br>Defendants. | Case No. 23-cv-00071-SI<br><br>**ORDER RE: MOTIONS TO CONSOLIDATE AND FOR APPOINTMENT OF LEAD PLAINTIFF**<br><br>Re: Dkt. Nos. 7, 8, 17, 22<br><br>Related Case No. 23-cv-00372-SI<br><br>Re: Dkt. No. 6 |

Now before the Court are motions to consolidate and for appointment as lead plaintiff and lead counsel in this securities fraud action. Dkt. Nos. 7, 8, 17.[1]  This matter came on for hearing on April 25, 2023.  Following the hearing, the Court ordered the Discovery Funds to file a supplemental declaration, which they did on April 26, 2023.  *See* Dkt. Nos. 65, 67.

Having considered the arguments presented in the papers and at the hearing, the Court hereby GRANTS the motions of the Discovery Funds (Dkt. No. 7) and Gary Kung (Dkt. No 17), appointing both as Co-Lead Plaintiffs.  Rolnick Kramer Sadighi LLP and The Rosen Law Firm, P.A. shall serve as Co-Lead Counsel, with Sawyer & Labar LLP as Liaison Counsel.  The Court also GRANTS the motions to consolidate.

The parties shall file a stipulation regarding the schedule for the filing of any consolidated complaint and motion practice no later than **May 8, 2023.**

---

[1] Unless otherwise specified, references to the docket are to the docket in *Twitchell v. Enovix Corp.*, No. 23-cv-00071-SI (N.D. Cal. Jan. 6, 2023).

**BACKGROUND**

On January 6 and January 25, 2023, plaintiffs filed two class action lawsuits for violation of the federal securities laws against defendants Enovix Corporation ("Enovix"), Harrold Rust, Steffen Pietzke, Cameron Dales, and Thurman Rodgers. *Twitchell v. Enovix Corp.*, No. 23-cv-00071-SI (N.D. Cal. Jan. 6, 2023); *Rosin v. Enovix Corp.*, No. 23-cv-00372-SI (N.D. Cal. Jan. 25. 2023).[2] Plaintiffs allege causes of action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. The class actions are brought on behalf of persons and entities that purchased or otherwise acquired Enovix common stock (or Rodgers Silicon Valley Acquisition Corp. ("RSVAC") common stock prior to July 15, 2021) between February 22, 2021, and January 3, 2023, inclusive.

According to the complaints, Enovix "purports to design, develop, and manufacture silicon-anode lithium-ion batteries using proprietary 3D cell architecture, which the Company claims allow its batteries to achieve higher energy density." *Twitchell* Compl. ¶ 2; *Rosin* Compl. ¶ 2. "Since launching in 2007, the Company has focused on developing and commercializing its batteries. It did not generate any revenue from its products until the second quarter of 2022." *Id.* On February 22, 2021, Enovix announced its plan to become a publicly traded company, setting an "'ambitious goal' to both develop its own U.S.-based manufacturing line and to begin delivering products to customers (thereby recognizing its first product revenue) by the second quarter of 2022." *Id.* ¶ 3. On July 15, 2021, Enovix became a publicly traded company. *Id.* ¶ 4. Rather than go public through a traditional initial public offering, Enovix merged with a special purpose acquisition company or "SPAC," "a public shell corporation with no business of its own other than to acquire a private company." *Id.* "On July 14, 2021, Enovix was officially acquired by RSVAC, which then changed its name to Enovix Corporation." *Id.* "As a result of this 'de-SPAC' transaction," RSVAC's publicly traded shares therefore became shares of Enovix when trading opened on Nasdaq on July

---

[2] *Rosin v. Enovix Corp.*, No. 23-cv-00372-SI, was originally assigned to Judge Chhabria, who issued a judicial referral to this Judge for the purposes of determining whether that case was related to *Twitchell v. Enovix Corp.*, No. 23-cv-00071-SI. Dkt. No. 36. The undersigned found the cases related and issued an order relating them on March 14, 2023. Dkt. No. 42.

1    15, 2021. *Id.*

2           On July 14, 2021, the company announced in a press release that the gross cash proceeds

3    raised through the de-SPAC merger would "allow Enovix to build out its first two production

4    facilities to support demand from blue chip customers in the global mobile computing market while

5    continuing to develop cells for Electric Vehicles (EVs)." *Id.* ¶ 6. Plaintiffs allege that throughout

6    the class period, "Defendants made false and/or misleading statements, as well as failed to disclose

7    material adverse facts about Enovix's revenues and ability to manufacture its proprietary battery

8    technology." *Id.* ¶ 7.

9           On November 1, 2022, Enovix announced that for the third quarter of 2022 it realized just

10   $8,000 in revenue and that it "anticipate[d] achieving lower overall output" from its "Fab-1" facility

11   in 2023. *Id.* ¶ 18. "On this news, Enovix fell from a close of $18.87 per share on October 31, 2022,

12   to $10.53 per share by the close of trading on November 2, 2022, a 44% decline." *Id.* ¶ 20. On

13   November 7, 2023, Enovix announced that defendant Rodgers would become Executive Chairman.

14   *Id.* ¶ 20. On December 29, 2022, defendant Rust departed as CEO of Enovix. *Id.* ¶ 21.

15          On January 3, 2023, defendant Rodgers held a special presentation for investors, in which

16   he "revealed that the Company's second production facility and Gen2 lines would be delayed by

17   several additional months because of the equipment failures experienced in the Fab-1 lines." *Id.*

18   ¶ 22. "On this news, Enovix's share price dropped 41% from a close of $12.12 per share on January

19   3, 2022 to a close of $7.15 on January 4, 2022." *Id.* ¶ 23.

20          Now before the Court are unopposed motions to consolidate the two related cases and three

21   contested motions for appointment of lead plaintiff filed by: Discovery Global Opportunity Master

22   Fund Ltd. and Discovery Nymeria Master Fund, Ltd. (collectively, the "Discovery Funds"); Gary

23   Kung; and Dale M. Wagner. Dkt. Nos. 7, 8, 17. The competing motions for lead plaintiff also seek

24   appointment of lead counsel. Five additional motions to consolidate and for appointment of lead

25   plaintiff and lead counsel were filed, but those movants have since withdrawn their motions or have

26   filed notices of non-opposition based on the fact that other movants appear to have the larger

27   financial interest in the litigation. *See* Dkt. Nos. 11 (motion by Rustem Samikhov), 14 (motion by

28   Steve Franklin), 22 (motion by Sun-Ho Kang), 26 (motion by Joel D. Fellers, Jr.), 32 (motion by

Charles M. Harvey and Kathy A. Harvey), 37 (withdrawal of motion by Steve Franklin), 43 (withdrawal of motion by Joel D. Fellers, Jr.), 44 (withdrawal of motion by Rustem Samikhov), 45 (withdrawal of motion by Charles M. Harvey and Kathy A. Harvey), 46 (statement of non-opposition by Sun-Ho Kang).

## DISCUSSION

### I.   Consolidation

Federal Rule of Civil Procedure 42 allows the Court to consolidate actions that "involve a common question of law or fact[.]"  Fed. R. Civ. P. 42(a).  District courts are granted broad discretion in deciding whether to consolidate cases pending in the same district.  *Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).

Here, the related cases allege the same causes of action against the same defendants, arising out of the November 1, 2022 and January 3, 2023 disclosures.  The Court finds that consolidation is appropriate, and pursuant to Federal Rule of Civil Procedure 42 the above-captioned related actions are hereby consolidated for all purposes into one action.  These actions shall be referred to herein as the "Consolidated Action."  This order shall apply to the Consolidated Action and to each case that is subsequently filed in this Court that relates to the same subject matter as in the Consolidated Action.

Every pleading in the Consolidated Action, and any related action that is consolidated with the Consolidated Action, shall hereafter bear the following caption:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE ENOVIX CORPORATION SECURITIES LITIGATION | Case No.  23-cv-00071-SI |
|---|---|
|  | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | [Title of Document] |

4

When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:". When the document applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the name of the first-listed plaintiff in said action.

A Master Docket and Master File shall be established for the Consolidated Action. The Master File shall be No. 3:23-cv-00071-SI. All orders, pleadings, motions, and other documents shall, when filed and docketed in the Master File, be deemed filed and docketed in each individual case to the extent applicable. When an order, pleading, motion, or document is filed with a caption indicating that it is applicable to fewer than all individual actions in the Consolidated Action, the clerk shall file such pleadings in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

The parties shall file a Notice of Related Cases pursuant to Civil L.R. 3-12 whenever a case that should be consolidated into this action is filed in, or transferred to, this District. If the Court determines that the case is related, the clerk shall:

    a. place a copy of this Order in the separate file for such action;

    b. serve on plaintiff's counsel in the new case a copy of this Order;

    c. direct that this Order be served upon defendants in the new case; and

    d. make the appropriate entry in the Master Docket.

**II.  Lead Plaintiff**

    **A.  Legal Standard**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." Joint Explanatory Statement of the Committee of Conf., Conference Report on Sec. Litig. Reform, H.R. Conf. Rep. No. 104-39 at 32 (1995). Under the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the plaintiff has suffered more than a nominal

5

loss, is not a professional litigant, and is otherwise interested and able to serve as a class representative. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally publish notice of the complaint in a widely circulated business publication within twenty days of filing the complaint. *Id*. § 78u-4(a)(3)(A)(I). The notice must include a description of the claim and notify prospective class members that they may move within sixty days of the notice to be named lead plaintiff.

Once applications for lead plaintiff are closed, the district court must determine who among the movants is the "most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(I). The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *Id*. In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process. First, as discussed above, timely and complete notice of the action must be published. *Id.* at 729. Second, the district court "must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality" under Federal Rule of Civil Procedure 23. *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (citing *In re Cavanaugh*, 306 F.3d at 730); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730). A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730. At step three, "the process turns adversarial," and other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

### B.     Step One: Notice of the Action

The Court finds, and no party disputes, that publication of notice of this lawsuit was completed within the required timeframe. Plaintiff Maurice Twitchell filed suit on January 6, 2023, and caused notice of the action to be published via Global Newswire that same day. Dkt. No. 6. On March 7, 2023, eight movants came forward seeking appointment as lead plaintiff. Three movants

1  submitted full briefing in support of their applications for lead plaintiff: the Discovery Funds, Gary
2  Kung, and Dale M. Wagner.

### C.     Step Two: Initial Rule 23 Determination

Having determined that plaintiffs timely published notice of the suit and filed motions for appointment, the Court must next identify the "presumptively most adequate plaintiff" by determining which movant "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Cavanaugh*, 306 F.3d at 729-30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The Ninth Circuit has not prescribed a particular method for calculating a plaintiff's financial interest but has directed that courts "may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4. Courts often look to the "Olsten-Lax" factors for guidance. *See, e.g., Richardson v. TVIA, Inc.*, No. 06-6304-RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Under this test, courts examine: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Id.* The last of these factors typically carries the most weight. *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012).

Here, no movant disputes that the Discovery Funds have the largest financial stake in the litigation. The Discovery Funds allege losses totaling $3,889,312.42. Dkt. No. 7, Discovery Funds Mot. at 5. Gary Kung alleges losses of approximately $700,106.53. Dkt. No. 17-4, Kung Mot., Ex. 3, Loss Chart at 7. In his motion, Dale Wagner alleges losses of approximately $561,583.26.[3] Dkt. No. 8-6, Wagner Mot., Ex. D, Loss Chart at 2. The question, then, is whether the Discovery Funds otherwise satisfy the typicality and adequacy requirements of Rule 23.

"The purpose of the typicality requirement is to assure that the interest of the named

---

[3] As discussed *infra*, Wagner presents a different loss calculation in his response brief.

representative aligns with the interests of the class. . . . [C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). "The putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries as absent class members, as a result of the same conduct by the defendants." *In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28, 2016) (citing *Hanon*, 976 F.2d at 508).

Here, the Discovery Funds, like all other members of the putative class, purchased shares of Enovix stock during the class period, when the company's share prices are alleged to have been artificially inflated by defendants' misrepresentations. The Discovery Funds suffered damages when those misrepresentations came to light. Therefore, the Discovery Funds "suffered the same injury as absent class members, as a result of the same conduct by the defendants." *See id.*

The relevant inquiry when determining adequacy under Rule 23 is whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (internal citations omitted). The Court finds that, given the Discovery Funds' significantly larger financial interest in this case, their status as an institutional investor, and through their selection of counsel experienced in securities class action litigation (*see* Discovery Funds Mot. at 9-11), the Discovery Funds have sufficiently demonstrated their alignment of interest with the rest of the class as well as their intent and willingness to act as vigorous advocates on behalf of the entire class. Therefore, the Discovery Funds meet the adequacy requirement to be appointed as lead plaintiff at this stage of the case.

### D.     Step Three: Rebutting the Presumptive Lead Plaintiff's Showing

Movants Kung and Wagner, however, challenge the Discovery Funds' typicality under Rule 23. Movant Wagner argues that the Discovery Funds will be subject to unique defenses because the Discovery Funds sold all of their Enovix stock on December 14, 2022, prior to the second and final corrective disclosure on January 3, 2023. Wagner also argues that the Discovery Funds, as hedge

funds, may be subject to unique defenses regarding their trading strategy. Movant Kung argues that the Discovery Funds lack standing because they failed to obtain an assignment of claims from the beneficial owners of the Enovix stock. Kung further argues that the Discovery Funds' exclusion of other affiliated funds from the lead plaintiff motion raises questions as to whether the Discovery Funds' affiliates actually gained from Enovix stock trades during the class period.

### 1.     Stock Sales Prior to Final Disclosure

As movant Wagner notes in his response brief, the Discovery Funds sold all of their Enovix stock by December 14, 2022. *See* Dkt. No. 48, Wagner Resp. at 1-2; *see also* Dkt. No. 7-2, Rolnick Decl., Ex. A. The complaint alleges two disclosures that caused Enovix stock to drop during the class period. First, on November 1, 2022, the company announced that Enovix realized just $8,000 in revenue in the third quarter of 2022, that Enovix anticipated lower overall output from Fab-1 in 2023, and that it "would be 'dialing back' its work on improving the Gen1 lines in favor of shifting its focus to its future Gen2 lines because the supposed improvements were not having the desired results on output." *Twitchell* Compl. ¶ 18; *Rosin* Compl. ¶ 18. On this news, the company's stock fell 44%. *Id.* ¶ 19. The second disclosure came on January 3, 2023, when defendant Rodgers "revealed that the Company's second production facility and Gen2 lines would be delayed by several additional months because of the equipment failures experienced in the Fab-1 lines." *Id.* ¶ 22. On this news, Enovix stock fell 41%. *Id.* ¶ 23.

Wagner argues that the Discovery Funds will be subject to unique defenses that render them atypical, because the Discovery Funds sold their Enovix stock before the second disclosure. Wagner Resp. at 1-2. The Discovery Funds replies, *inter alia*, that their claims are typical because the claims are based on the same legal theories as other class members' claims. Dkt. No. 55, Discovery Funds Reply at 8-9.

The Discovery Funds persuasively cite a number of cases appointing a lead plaintiff who did not retain stock in the defendant company throughout all of the corrective disclosures at issue in the case. In *Christian v. BT Group PLC*, for instance, the district court approved appointment of a lead plaintiff who sold its shares of the company's stock before the second of two disclosures. No. 2:17-

9

1  cv-00497-KM-JBC, 2017 WL 3705804 (D.N.J. Aug. 28, 2017). Although the second disclosure led
2  to a far larger drop in stock price than the first disclosure, the court found that the allegations of the
3  complaint "present a fairly straightforward (and not atypical) case of progressive revelation of a
4  problem that turned out to be more serious than first believed," and so the presumptive lead plaintiff
5  was "not likely to be subject to a unique loss causation defense that will become a major focus of
6  the case." *Id.* at *8. The court did, however, agree with the presumptive lead plaintiff that the
7  amended complaint should include an additional class representative who held shares in the
8  company through the final disclosure. *Id.*; *see also Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC),
9  2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("Courts in this District have found that where a
10 putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but
11 before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique
12 defense of having to show loss causation to the extent that it cannot serve as lead plaintiff.");
13 *Richardson*, 2007 WL 1129344, at *5-6 (Judge Whyte appointing a lead plaintiff who did not hold
14 stock through the final corrective disclosure, because the lead plaintiff may still be able to establish
15 loss causation and because the plaintiff held the stock through the date that resulted in the single
16 greatest drop in share price along with the highest trading volume).

17 The cases on which movant Wagner relies involved potential lead plaintiffs beset by an array
18 of typicality concerns. In *In re Snap Inc. Securities Litigation*, No. 2:17-cv-03679-SVW-AGR,
19 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019), the district court rejected a lead plaintiff bid by the
20 New Mexico State Investment Council ("NMSIC") on several grounds: (1) the court was unable to
21 determine whether the NMSIC had standing and statutory authority to sue, given that the motion
22 was brought by the State of New Mexico on behalf of the NMSIC and that its authority to sue
23 depended on an unclear interpretation of a New Mexico state court opinion; (2) the NMSIC sold all
24 its shares before the final disclosure; and (3) the NMSIC purchased roughly 15% of its shares after
25 news of the fraud surfaced, thereby raising questions around reliance. *Id.* at *2-4.

26 In *Doshi v. General Cable*, on which Wagner also relies, there were two major hurdles to
27 the presumptive lead plaintiff's appointment: (1) the movant was a net seller and net gainer who
28 sold more shares than it bought during the class period; and (2) the movant had sold all of its stock

10

in the defendant company "roughly sixteen months before the end of the Class Period and before the second alleged corrective disclosure[,]" which led to the much greater stock drop (a 31.61% drop in stock price versus a 4.68% drop). *See* No. 2:17-025 (WOB-CJS), 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017). "Thus," the court explained, "plaintiffs who still held stock on the later date—the closing date of the Class Period—were impacted far more greatly than those affected only by the first disclosure." *Id.* at *4.

Finally, Wagner cites to *In re IMAX Securities Litigation*, 272 F.R.D. 138 (S.D.N.Y. 2010). There, the district court denied class certification in part because the putative lead plaintiff held stock through only one corrective disclosure, and that disclosure concerned misstatements issued <u>after</u> the plaintiff had already purchased its stock, thereby raising serious concerns that the plaintiff's ability to prove loss causation would become the focus of the litigation. *Id.* at 148-55.

In short, the cases Wagner cites are all quite different from the facts presented here, where the Discovery Funds held stock through the first of two related disclosures, where the disclosures are alleged to have caused roughly equivalent drops in stock price (44% and then 41%), and where the Discovery Funds did not continue to purchase Enovix stock after the fraud was revealed. *See* Discovery Funds Reply at 12. In his reply brief and again at the hearing, Wagner cited to the Ninth Circuit's recent decision in *In re Mersho*. In that case, the Ninth Circuit clarified how district courts are to consider the cohesion of a group that seeks lead plaintiff status. The appellate court vacated the district court's order after finding the district court improperly put the burden at step three on the presumptive lead plaintiff rather than on the competing movants. 6 F.4th at 901, 903. The Ninth Circuit explained that, "[f]or the presumption to have meaning at step three, . . . [c]ompeting movants must convince the district court that the presumptive lead plaintiff would not be adequate, not merely that the district court was wrong in determining that the prima facie elements of adequacy were met." *Id.* at 901.

Here, the Court is not convinced. The Court declines to adopt a rule that a plaintiff who sells its stock before the final disclosure may never serve as lead plaintiff. Under the facts presented in this case, the Court finds that Wagner has failed to rebut the presumption that the Discovery Funds

11

should be made lead plaintiff.[4]

### 2. Assignment of Claims

Movant Kung also challenges the Discovery Funds' ability to serve as lead plaintiff by arguing that the Discovery Funds needed to obtain an assignment of claims from the beneficial owners of the Enovix stock. Based on the information the Discovery Funds submitted in their certification and again with their reply brief, the Court finds that Kung has failed to rebut the presumption that the Discovery Funds are the most adequate plaintiff.

The Discovery Funds argue that Kung misconstrues the Second Circuit's decision in *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008). In that case, the Second Circuit held that an investment advisor, who had not itself purchased the subject securities, lacked Article III standing to bring suit in its own name, absent an assignment of claims from the clients who had actually purchased the securities. Such is not the case here, where the Discovery Funds have shown that they are the owners of the Enovix securities in question. Dkt. No. 7-2, Schreck Certification (setting forth the Discovery Funds' purchases of Enovix common stock during the class period); Discovery Funds Reply at 4-5. Discovery Capital Management LLC is the manager of the Discovery Funds. Dkt. No. 7-2, Schreck Certification ¶¶ 1-2. But Discovery Capital Management LLC is not a party to this suit. The Discovery Funds, which themselves purchased the Enovix stock, bring suit in this case, making this unlike the scenario in *Huff*.

### 3. Remaining Arguments

Kung and Wagner's remaining arguments against the Discovery Funds lack proof. After

---

[4] It is worth noting that appointing Wagner would mean appointing a lead plaintiff whose losses are roughly thirteen to fourteen percent of the total losses suffered by the Discovery Funds. "Although having the largest stake is not dispositive, the result [that Wagner proposes] appears incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely." *See In re Mersho*, 6 F.4th at 901 n.3 (finding it "troubling" that the district court appointed a lead plaintiff whose losses were less than half or one-third of the losses suffered by the individuals comprising the movant group that was passed over).

12

1    reviewing the materials the Discovery Funds submitted in reply, as well as the supplemental
2    declaration filed after the hearing, the Court is satisfied that Kung and Wagner's arguments are not
3    sufficient to strip the Discovery Funds of their presumptive lead plaintiff status. The PSLRA's
4    presumption that the plaintiff with the largest stake in the litigation will be the lead "may be rebutted
5    only upon proof . . . that the presumptively most adequate plaintiff" does not meet the Rule 23
6    typicality or adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Such
7    proof is absent with regard to Kung and Wagner's remaining arguments.

8    For instance, movant Wagner argues that the trading strategy of the Discovery Funds will be
9    put at issue because the Discovery Funds are hedge funds. Wagner Resp. at 2. Wagner cites a case
10   in which the district court rejected a hedge fund as lead plaintiff based on the fund's "seemingly
11   unique trading strategy, which incorporates, among other things, an algorithmic trading approach,
12   complex mathematical formulae, and other mechanisms and methodologies that do not rely . . . on
13   information made available to the public intended to influence investor decision making." *See In
14   re InterClous Sys., Inc. Sec. Litig.*, No. 14-cv-01982 (PGS)(DEA), 2014 WL 12774917, at *1
15   (D.N.J. Nov. 5, 2014); *see also* Dkt. No. 54, Wagner Reply at 5 (citing *Smajlaj v. Brocade Comms.
16   Systems Inc.*, No. 05-cv-02042-CRB, 2006 WL 7348107, at *3 (N.D. Cal. Jan. 12, 2006) (declining
17   to appoint hedge fund as lead plaintiff where, after several rounds of briefing and two oral
18   arguments, the court continued to struggle "to determine the precise corporate structure of [the
19   movant], which of its hedge funds actually held stock in corporate defendant, who manages which
20   hedge funds, and who, if anyone, has authority and permission from limited partners to proceed with
21   this litigation")). Wagner provides no proof that the concerns raised in the cases he cites are at issue
22   here. The Discovery Funds state in their reply that they are "not a 'quant' fund or other type of
23   unique, algorithmic trader that does not read and rely on statements made to the market." Discovery
24   Funds Reply at 15. The Court will not disqualify the Discovery Funds solely on the basis of their
25   status as hedge funds. *See Feyko v. Yuhe Intern. Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL
26   682882, at *3 & n.4 (C.D. Cal. Mar. 2, 2012) (appointing hedge fund as lead plaintiff and rejecting
27   challenge by movant who failed to "provide[] concrete evidence that [the hedge fund] relied on non-
28   public information before either purchasing or selling Yuhe securities").

1    Movant Kung argues that it is unclear whether the Discovery Funds' manager can bind the
2    Discovery Funds. Kung argues that the Discovery Funds' certification is silent as to whether Adam
3    Schreck (general counsel of the Discovery Funds' investment manager, who signed the certification)
4    or even the manager generally can bind the Discovery Funds. In its reply, the Discovery Funds
5    rightly notes that Kung shows no proof in support of his argument. The Discovery Funds stated in
6    their reply brief, and confirmed through a supplemental declaration filed under penalty of perjury,
7    that Discovery Capital Management LLC is the investment manager of the funds and has legal
8    authority to bind the Discovery Funds in this litigation. *See* Discovery Funds Reply at 6; Dkt. No.
9    67, Schreck Suppl. Decl. ¶ 3.[5]

10   Similarly, Kung argues that it is unknown whether any other funds affiliated with the
11   Discovery Funds made gains off of Enovix's conduct. Kung Resp. at 5. Kung provides no proof,
12   but notes that the Discovery Funds' certification does not state that the affiliated funds "did not
13   transact in relevant securities during the Class Period." *Id.* In reply, the Discovery Funds filed a
14   declaration from its manager that, "[b]esides the two Discovery Funds moving for lead plaintiff, no
15   other investment fund affiliated with or managed by Discovery purchased, sold, or held any Enovix
16   securities during the Class Period." Dkt. No. 55-5, Schreck Reply Decl. ¶ 7. The Court finds that
17   Kung's concern is not valid here.

18   In sum, the Court finds that the challenges Kung and Wagner bring regarding the Discovery
19   Funds' typicality are insufficient to rebut the presumption that the Discovery Funds should be
20   appointed lead plaintiff. Accordingly, the Court GRANTS the Discovery Funds' motion for
21   appointment as lead plaintiff.

### E.    Appointing Co-Lead Plaintiff

Nevertheless, as did the district court in *Christian v. BT Group PLC*, the Court finds it would be prudent here to appoint a co-lead plaintiff who held Enovix stock through the second disclosure.

---

[5] The Discovery Funds also confirmed that Adam Schreck, General Counsel of Discovery Management Capital, LLC, reviewed the allegations in the initial complaint in this case. Schreck Suppl. Decl. ¶ 4. This statement was lacking from the Discovery Funds' original certification. *See* Dkt. No. 49, Kung Resp. at 3 n.2 (citing 15 U.S.C. § 78u-4(a)(2)(A)(i)).

1   *See* 2017 WL 3705804, at *8. At the hearing, counsel for the Discovery Funds and for Kung
2   indicated that they were amenable to this arrangement and represented that they could work together
3   efficiently, so as not to increase the attorney expense to the class.

4         Gary Kung is the next in line for consideration as lead plaintiff, as Kung has the next-largest
5   financial stake in the litigation between the remaining movants and otherwise meets the adequacy
6   and typicality requirements of Rule 23. Kung alleges losses of $700,106.53. Kung Mot., Ex. 3,
7   Loss Chart at 7. Kung is typical because he "has suffered the same injuries as absent class members,
8   as a result of the same conduct by the defendants." *See In re Extreme Networks*, 2016 WL 3519283,
9   at *3. Although the Court has expressly not found the Discovery Funds atypical based on the timing
10  of their stock sales, it is significant that Kung retained some of his Enovix stock through both of the
11  two disclosures alleged in the complaint. *See* Kung Mot., Ex. 3, Loss Chart at 7 (showing 1,300
12  shares of stock retained). The addition of Kung as Co-Lead Plaintiff will protect the interests of the
13  class by ensuring that the Discovery Funds' selling of stock prior to the second disclosure does not
14  become the focus of the litigation down the line.

15        As to adequacy, the Court finds no conflicts of interest between Kung or his proposed
16  counsel and the other class members. *See Staton*, 327 F.3d at 957. The evidence indicates that
17  Kung and his counsel will "prosecute the action vigorously on behalf of the class." *See id.* Kung is
18  the president of a technology support company, holds a bachelor's degree in engineering and a
19  Master of Business Administration degree, and has over 25 years of investing experience. Kung
20  Mot. at 8. Moreover, Kung has retained counsel experienced in representing plaintiffs in numerous
21  securities fraud class action suits. *Id.* at 9 & Ex. 4. The Court finds Kung adequate under Rule 23
22  for purposes of lead plaintiff appointment.

23        Neither of the other movants attack Kung's adequacy or typicality. Rather, Wagner seeks
24  to position himself as having greater financial losses than Kung by presenting different loss
25  calculations in his (Wagner's) response brief than what Wagner presented in his motion. In his
26  motion, Wagner used the last-in-first-out (LIFO) calculation, which is often the preferred method
27  of calculating financial losses. *See* Dkt. No. 8-6, Wagner Loss Chart; *Nicolow v. Hewlett Packard*
28  *Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("The weight of authority

1    puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out
2    ('LIFO')['] methodology.") (citations omitted).  In his response brief, however, Wagner argues that
3    the Court should look at recoverable *Dura* losses, which would put Wagner higher than Kung on
4    the financial loss chart.[6]  Wagner Resp. at 2 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342
5    (2005)).  Other courts in this district have looked with disapproval on movants who present different
6    loss calculations in their subsequent briefing from what they presented in their motions.  *See, e.g.,*
7    *Bodri v. Gopro, Inc.*, Nos. 16-cv-00232-JST, 16-cv-00338-JST, 16-cv-00598-JST, 16-cv-00845-
8    JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016); *Nicolow*, 2013 WL 792642, at *4.  The
9    Court will thus utilize the LIFO calculations the movants presented in their opening briefs.
10   Accordingly, the Court appoints as Co-Lead Plaintiff Gary Kung, who has the next highest
11   financial losses and who otherwise meets the Rule 23 requirements of typicality and adequacy.

### III.    Lead Counsel

Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  In appointing lead counsel, the court considers the competency of class counsel as a part of the lead plaintiff's adequacy assessment.  *Casden v. HPL Techs., Inc.*, No. C-02-3510 VRW, 2003 WL 27164914 (N.D. Cal. Sept. 29, 2003).  The Ninth Circuit has explained that "the district court does not select class counsel at all." *In Re Cavanaugh*, 306 F.3d at 732.  Instead, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).

The Court hereby appoints Rolnick Kramer Sadighi LLP and The Rosen Law Firm, P.A. as

---

[6] Wagner calculates Kung's losses under the latter method to be $400,734.41 (as opposed to more than $700,000) and that Wagner's losses would be $519,219.40.  Wagner Resp. at 2.  Kung argues in reply that it is unclear how Wagner calculated the new loss figures for both Kung and for Wagner that Wagner presents in his response brief.  Dkt. No. 53, Kung Reply at 4 n.2.
In his reply brief, Wagner actually presents two different figures for his own loss calculation. *Compare* Wagner Reply at 6 (citing losses of $519,219.40) *with* Dkt. No. 54-1, Wagner Reply Loss Analysis at 1 (citing losses of $520,589.61).

16

1  Co-Lead Counsel, and Sawyer & Labar LLP as Liaison Counsel. Co-Lead Counsel is to avoid
2  duplicative or unproductive activities. Co-Lead Counsel shall have the authority to speak for all
3  Lead Plaintiffs and all Class members in matters regarding the litigation, including, but not limited
4  to, pretrial proceedings, motion practice, trial, and settlement. Additionally, Co-Lead Counsel shall
5  have the following responsibilities and duties, *inter alia*:

6      (a) to prepare all pleadings;

7      (b) to direct and coordinate the briefing and arguing of motions in accordance with the
8      schedules set by the orders and rules of this Court;

9      (c) to initiate and conduct discovery, including, but not limited to, coordination of discovery
10     with Defendants' counsel, and the preparation of written interrogatories, requests for
11     admissions, and requests for production of documents;

12     (d) to initiate and conduct any settlement negotiations with Defendants' counsel;

13     (e) to consult with and employ experts;

14     (f) to prepare the case for trial; and

15     (g) to perform such other duties as may be expressly authorized by further order of this
16     Court.

17 No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by
18 any plaintiffs without the approval of Co-Lead Plaintiffs and Co-Lead Counsel, so as to prevent
19 duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted
20 without the approval of Co-Lead Plaintiffs and Co-Lead Counsel.

21 Counsel in any related action that is consolidated with the Consolidated Action shall be
22 bound by the organization of plaintiffs' counsel set forth herein. Co-Lead Counsel shall be the
23 contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs'
24 counsel.

## CONCLUSION

27 For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions
28 to consolidate. The Court GRANTS the motions of the Discovery Funds and Gary Kung, appointing

them as Co-Lead Plaintiffs (Dkt. Nos. 7, 17 in Case No. 23-cv-00071-SI; Dkt. No. 6 in Case No. 23-cv-00372-SI).  The Court further APPOINTS Rolnick Kramer Sadighi LLP and The Rosen Law Firm, P.A., as Co-Lead Counsel, and Sawyer & Labar LLP as Liaison Counsel.  The remaining motions for appointment of lead plaintiff and lead counsel are DENIED.

**IT IS SO ORDERED**.

Dated: April 28, 2023

_____
SUSAN ILLSTON
United States District Judge