COOLEY LLP
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
BRETT DE JARNETTE (292919)
(bdejarnette@cooley.com)
SAM BLANKENSHIP (339905)
(sblankenship@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

SARAH M. LIGHTDALE (*pro hac vice*)
(slightdale@cooley.com)
55 Hudson Yards
New York, New York 10001
Telephone:    + 212 479 6000
Facsimile:    + 212 479 6275

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke,
Cameron Dales, Thurman J. Rodgers, Emmanuel T.
Hernandez, Lisan Hung, Steven J. Gomo, John D.
McCranie, Joseph I. Malchow, Betsy Atkins, Pegah
Ebrahimi, and Gregory Reichow*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Civil Action No. 23-cv-00071-SI<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Date:    December 8, 2023<br>Time:    10:00 AM<br>Judge:   Hon. Susan Illston |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ........................................................................................................ 2

       A.    Plaintiffs Fail to Adequately Identify The Statements They Challenge ................ 2

       B.    Plaintiffs Fail to Adequately Plead Any False or Misleading Statement ............... 2

             1.    Plaintiffs Fail to Plead Particularized Facts Showing Enovix
                   "Admitted" That Its Prior Statements Were False or Misleading .............. 2

             2.    Plaintiffs Admit That Supposed "Waiver" of Testing Only Meant
                   that Enovix Engineers Did Not Travel to China Pursuant to an
                   Internal Protocol ...................................................................................... 6

             3.    Statements That Do Not Reference Factory and Site Acceptance
                   Testing Are Also Not False or Misleading. ................................................ 8

       C.    Plaintiffs Allege No Facts Giving Rise to a Strong Inference of Scienter ............ 10

       D.    Plaintiffs Fail to Plead Loss Causation for the January 3, 2023 Stock Drop ........ 15

III.   CONCLUSION .................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- i -

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Align Technology, Inc. Securities Litigation*,
2021 WL 1176642 (N.D. Cal. Mar. 29, 2021)............................................................................ 4

*In re Alphabet, Inc. Securities Litigation*,
1 F.4th 687 (9th Cir. 2021) ...................................................................................................... 10

*In re Apple Inc. Securities Litigation*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................................... 15

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)......................................................................... 13

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ................................................................................ 15

*In re BofI Holding, Inc. Seurities Litigation*,
977 F.3d 781 (9th Cir. 2020)................................................................................................... 15

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002)............................................................................................. 7, 8, 9

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
964 F.Supp.2d 1128 (N.D. Cal. 2013) ..................................................................................... 15

*In re Daou Systems, Inc.*,
411 F.3d 1006 (9th Cir. 2005).................................................................................................. 13

*In re Facebook, Inc. Securities Litigation*,
84 F.4th 844 (9th Cir. 2023) .............................................................................................. 10, 15

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ............................................................................. 6

*In re Immune Response Securities Litigation*,
375 F.Supp.2d 983 (S.D. Cal. 2005)................................................................................... 12, 15

*In re Intuitive Surgical Securities Litigation*,
65 F.Supp.3d 821 (N.D. Cal. 2014) ......................................................................................... 10

*Kovtun v. VIVUS, Inc.*,
2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) ........................................................................ 11

*In re Leapfrog Enterprises, Inc. Securities Litigation*,
237 F.Supp.3d 943 (N.D. Cal. 2017) ....................................................................................... 13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI**

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)................................................................................................ 14

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ...................................................................... 12

*In re MannKind Securities Actions*,
835 F.Supp.2d 797 (C.D. Cal. 2011)...................................................................................... 6

*Mendoza v. HF Food Group Inc.*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)....................................................................... 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)............................................................................................... 13

*Morgan v. AXT, Inc.*,
2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ...................................................................... 11

*Mulderrig v. Amyris, Inc.*,
492 F.Supp.3d 999 (N.D. Cal. 2020) ..................................................................................... 14

*In re Nektar Therapeutics Securities Litigation*,
34 F.4th 828 (9th Cir. 2022) .................................................................................................. 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)................................................................................................ 13

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)..................................................................................................... 7

*Pardi v. Tricida, Inc.*,
2022 WL 3018144 (N.D. Cal. July 29, 2022)......................................................................... 7

*In re Peregrine Systems, Inc. Securities Litigation*,
2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ................................................................. 11, 12

*Petrie v. Electronic Game Card, Inc.*,
2011 WL 13130015 (C.D. Cal. Oct. 19, 2011)................................................................. 11, 12

*In re Quality Systems, Inc. Securities Litigation*,
865 F.3d 1130 (9th Cir. 2017)................................................................................................ 13

*South Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008).................................................................................................. 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI**

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    840 F.3d 698 (9th Cir. 2016)................................................................................................ 9

*Senn v. Hickey*,
    2005 WL 3465657 (D.N.J. Dec. 19, 2005) ........................................................................ 13

*West v. Ehealth, Inc.*,
    2016 WL 948116 (N.D. Cal. Mar. 14, 2016) ...................................................................... 8

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)....................................................................................*passim*

*Zhou v. Faraday Future Intelligent Electric Inc.*,
    2022 WL 13800633 (C.D. Cal. Oct. 20, 2022) ............................................................... 5, 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).............................................................................................. 10

**Statutes**

15 U.S.C. 78j................................................................................................................................ 15

15 U.S.C. 78t................................................................................................................................ 15

**Other Authorities**

17 C.F.R. § 240.12b-23(e) ............................................................................................................ 5

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI**

## I.    INTRODUCTION

The Opposition highlights the fundamental flaws in the Complaint.  Plaintiffs' core theory – that Enovix committed fraud by telling investors in 2021 that it conducted factory and site acceptance tests of new manufacturing equipment, while admitting a year later that it did not conduct those tests – suffers from a number of fatal deficiencies.

First, Plaintiffs *assume* Enovix "admitted" to fraud without substantiating that assumption with particularized facts.  Instead, Plaintiffs mischaracterize a November 2022 statement by Rodgers – nearly a year after the challenged statements were made – as an admission that Enovix lied about factory and site acceptance testing.  But that leap is based on speculation that Rodgers' references to "FAT" and "SAT," as defined in an "equipment procurement review" protocol, held the *same exact* meaning as general references to factory and site acceptance testing a year earlier.  There is no basis for such speculation.  Rodgers was referring to a specific aspect of an "equipment procurement review" protocol that required Enovix engineers to travel to and from China to test equipment at the vendor's factory.  (¶145.)[1]  But Plaintiffs fail to allege specific facts showing Enovix's prior and more generic mentions of testing also signaled travel, as opposed to some other manner of testing, such as remote or vendor testing in China.  (¶¶110, 114.)  Without facts to construe Rodgers' November 2022 statement as an "admission," Plaintiffs' entire theory falls apart.

Second, the Complaint alleges that supposed "waiver" of factory and site acceptance testing meant the equipment "was not tested at all." (¶101.)  Plaintiffs backtrack in their Opposition and no longer claim that Enovix conducted no acceptance testing at all.  (Opp. at 2, 14.)  They now argue that any "waiver" just meant Enovix and vendor engineers did not travel to and from China during a global pandemic.  (*Id.* at 14.)  In other words, Plaintiffs claim Enovix committed fraud by failing to disclose that it was not able to and did not send its engineers abroad.  (*Id.*)  But Plaintiffs fail to allege a single fact showing Enovix created the impression it would send its own engineers to China as a part of acceptance testing.  None of the challenged statements discussed or implied

---

[1] All "¶ __" references are to the Complaint (ECF No. 84).  All "Opp." references are to the Opposition (ECF No. 91).  All "Motion" or "Mot." references are to the Motion to Dismiss (ECF No. 89).  All "Ex." references are to the exhibits to the Blankenship Decl. (ECF No. 89-1).  All emphasis is added and all internal quotations are omitted, unless otherwise noted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

travel. Nor do Plaintiffs credibly explain how investors could have held such an expectation in light of COVID-19 travel restrictions and the emergence of virtual acceptance testing.

<u>Third</u>, Plaintiffs also fail to plead a strong inference of scienter. They do not plead contemporaneous facts showing that any defendant believed Enovix needed to send its engineers to China to successfully conduct factory acceptance testing. And Plaintiffs largely abandon their confidential witness allegations, as none of them address factory acceptance testing and many acknowledge Enovix conducted site acceptance testing.

<u>Finally</u>, Plaintiffs fail to plead loss causation for the January 2023 stock drop, as the announcement prompting that drop had nothing to do with the challenged statements.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Adequately Identify the Statements They Challenge

The Opposition ignores the Complaint's failure to adequately identify the challenged statements. (*See* Mot. at 12.) Plaintiffs quote nine paragraphs that contain bolded and italicized language. (¶¶100, 105, 107, 110, 112, 114, 116, 118, 125, 127.) For five of those paragraphs, Plaintiffs state they are challenging the "highlighted statements." (¶¶106, 108, 115, 126, 128.) The remaining four paragraphs do not say that. Instead, Plaintiffs claim to challenge "these statements," creating confusion about which language is challenged, and what the emphasis means. (¶¶101, 111, 113, 117, 119.) Not surprisingly, Plaintiffs still fail to explain why they reference "highlighted language" in some paragraphs, but not in others, which is insufficient. (*See* Mot. at 12.)

### B.    Plaintiffs Fail to Adequately Plead Any False or Misleading Statement

#### 1.    Plaintiffs Fail to Plead Particularized Facts Showing Enovix "Admitted" That Its Prior Statements Were False or Misleading

Plaintiffs' core theory – that Enovix "assured investors that [it] conducted a FAT and SAT, specifically, when in fact [it] had waived those tests" – is wrong. (*See* Opp. at 2.) Here, Plaintiffs challenge Enovix's statements from February, August, and September 2021, telling investors about factory and site acceptance testing. (¶¶100, 102, 110, 114.) They claim these "assurances" were false because Rodgers disclosed *a year later*, in November 2022, that Enovix had waived "FAT" and "SAT" under an "Equipment Procurement Review (EPR) specification . . . requir[ing] that a

Cooley LLP
Attorneys at Law
Palo Alto

2

Defendants' Reply In Support
of Motion to Dismiss
23-cv-00071-SI

team of Enovix engineers fly to multiple Chinese factories." (¶145.)  But they fail to plead a single particularized fact showing that Rodgers' reference to FAT and SAT, under an equipment procurement review protocol, admitted that prior and more generic statements about performing factory and site acceptance testing were false.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) ("Plaintiffs ha[ve] to plead sufficient facts to establish that the actual term[s] used had the distinctive, and false, meaning that Plaintiffs claim.").

Indeed, none of the challenged statements addressed factory or site acceptance testing in the context of an "equipment procurement review" protocol.  (*See, e.g.,* ¶¶110, 114.)  Nor did the statements discuss engineers travelling to China.  (*Id*.)  Nor do Plaintiffs allege facts explaining what "equipment procurement review" is, when it was enacted, by who, whether it was just internal or agreed to with the vendor, whether the specifications changed, whether it applied to each piece of equipment, or whether the Company performed tests outside of the protocol.

Ironically, Plaintiffs' own definition of factory acceptance testing does not require company engineers to travel to vendor facilities.  (¶86.)  They concede that such testing is usually performed by the vendor, not company engineers: "The new manufacturing equipment is set up at the vendor's factory and ***then tested by the vendor's engineers* . . .**"  (*Id*.)  And documents cited in the Complaint make clear that factory and site acceptance testing can be done without travel.  For example, a General Electric article, titled "Remote Testing Offering for FAT and SAT," notes: "Running FAT and SAT in the vendor's environment or on site with the customer can be complicated to organize. Even before the COVID-19 Pandemic, travel could be held up by budget, availability, Visa delays, or security concerns. Enabling secure, reliable FAT and SAT remote testing supports project timelines and can reduce development costs."  (Ex. 2 at 2; ¶93.)  Plaintiffs fail to explain how references to testing in 2021 meant anything other than testing by vendors or remote processes.

Not surprisingly, Plaintiffs fail to cite a single case standing for the proposition that similar words used at different times, in different contexts, necessarily mean the same thing.  Nor do they credibly distinguish the Ninth Circuit's decision in *Wochos*, 985 F.3d at 1193.[2]  There, the court

---

[2] Plaintiffs incorrectly claim *Wochos* is distinguishable because they "are not challenging the literal meaning of FAT or SAT" because Defendants defined those terms.  (Opp. at 14 n.4 (emphasis removed).)  Plaintiffs ignore their failure to plead facts showing Rodgers' reference to FAT and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

declined to assume that "production car" indicated automatic manufacturing processes, or that installation of "manufacturing equipment" meant "automatic manufacturing equipment." *Id*. at 1193, 1194. The court explained that where "a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise." *Id*. Plaintiffs also completely ignore *In re Align Technology, Inc. Securities Litigation*, 2021 WL 1176642, at *3-4 (N.D. Cal. Mar. 29, 2021). In that case, the court held that "tremendous growth" did not mean a "70% growth rate," despite 70% growth in a prior quarter. *Id*. As in *Wochos* and *Align Technology*, Plaintiffs fail to allege facts showing Rodgers admitted that prior statements about acceptance testing were false or misleading. This becomes readily apparent when analyzing the few challenged statements that actually mention factory and site acceptance testing.

### a.    February 2021 Statements

The only challenged statements that reference the terms used by Rodgers – "FAT" and "SAT" – were made in a February 2021 presentation, four months ***before*** the class period started, and before the Company allegedly waived any testing. These include:

- A slide indicating that "Fab-1 Equipment" was **"At Vendor Factory Acceptance Test (FAT)"** and in a footnote explaining that "Equipment must perform to specification at the vendor's factory before shipment to Enovix and must pass another test after installation at the Enovix site." (¶100; Ex. 4 at Slide 41.)

- A slide showing the "Fab 1 Schedule" with planned date ranges for FAT and SAT for each manufacturing function, and which explained that "First Revenue" was expected in Q2 2022. (¶102; Ex. 4 at Slide 48.)

These statements do not suggest testing involved sending Enovix engineers to China. Nor do they mention any equipment review protocol. Enovix only said "equipment must perform to specification ***at the vendor's*** factory." (¶100.) Plaintiffs plead no facts showing this did not happen. Specifically, there are no particularized facts showing that the Company did not hire vendors to conduct the factory acceptance test, observe equipment performing at specification, or communicate with the Company regularly about the equipment's performance.

---

SAT in November 2022 under an equipment review protocol meant the same thing as prior references to testing.

Cooley LLP
Attorneys at Law
Palo Alto

4

Defendants' Reply In Support
of Motion to Dismiss
23-cv-00071-SI

***The statements are not incorporated by reference into the June 2021 proxy statement***. Plaintiffs do not claim the February presentation was false or misleading at the time it was made. Instead, Plaintiffs contend that this presentation was incorporated by reference four months later into Enovix's June 24, 2021 proxy statement, by noting that previous SEC filings are a place "where [investors] can find more information." (Opp. at 15.) Plaintiffs do not cite a single case holding this is adequate. Nor can they avoid the plain text of 17 C.F.R. § 240.12b-23(e). Under that rule, to incorporate a document by reference, an SEC filing must identify, among other things, the "specific location" of the information incorporated by reference and the document where the information was originally filed. 17 C.F.R. § 240.12b-23(e). The statement: "Where you can find more information" does not incorporate any document by reference. (*See* ¶97.) It does not describe the "specific location" of the February 2021 presentation, identify where it was originally filed, or the location of any information therein. *Id.*; 17 C.F.R. § 240.12b-23(e). "Federal courts do not find incorporation of documents by reference into proxy statements based on general references to the documents but rather require a 'specific[ ] request[ ] that they be treated as part of the proxy material or incorporated [ ] into the materials by reference.'"[3] *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *14 (C.D. Cal. Oct. 20, 2022).

### b.    August and September 2021 Statements

Enovix's only other references to factory and site acceptance testing during the class period were made in August and September 2021:

- August 2021, 8-K signed by Rust and Prietzke: "With the equipment for Line 1 installed, our factory is now undergoing qualification. ***The first step in this process is a site acceptance test to confirm the individual pieces of equipment are meeting performance requirements.   This follows factory acceptance testing already performed at the vendor's facility before taking delivery.***" (¶110 (emphasis in original).)

- August 2021, Rust: "I think we're pleased overall in terms of the equipment and its ability to do its intended function…***We have a pretty rigorous set of both factory and site acceptance things we have to go through and I would say there's no red flags there***." (¶114 (emphasis in original).)

- September 2021, Rust: "***We're in the middle of qualifying, which means basically***

---

[3] Plaintiffs ignore that when the Company incorporated a document by reference in SEC filings, it did so specifically, in compliance with the applicable regulations. (Ex. 16 at 14 (saying "please refer to" the "Risk Factors [in the] recently filed annual report.").)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

***testing out of each piece of equipment, making sure it's operating as optimum operating point, making sure we understand where the process windows are. That's going on quite well.*** We expect that work will take us into the fourth quarter, to finish that work." (¶116 (emphasis in original).)

These statements do not use the terms "FAT" or "SAT," mention equipment procurement review protocols, suggest that Enovix engineers traveled to China, or otherwise imply that the testing involved in-person vendor assistance or international travel. (*Id.*) By claiming that these statements have the same exact meaning as Rodgers' statements in November 2022 (Opp. at 14), Plaintiffs are asking the Court to give these words a different meaning "from what the literal words suggest" – something the Ninth Circuit has disavowed. *Wochos*, 985 F.3d at 1193.

## 2. Plaintiffs Admit That Supposed "Waiver" of Testing Only Meant that Enovix Engineers Did Not Travel to China Pursuant to an Internal Protocol

The Complaint alleges that Enovix misled investors by failing to disclose it had "waived" FAT and SAT, meaning that the equipment "was not tested at all." (¶¶22, 101, 115, 117.) In opposition, Plaintiffs abandon this theory, no longer claiming that Enovix did no testing at all. They now argue that the Company "waived" international travel pursuant to an internal equipment procurement review protocol – "Enovix did not ***send its engineers to China*** for the FAT, and it did not ***bring its Chinese vendors' engineers to Fremont*** to help install and configure Fab-1 or to conduct the SAT." (Opp. at 13.) But the fact that Company engineers did not travel to China and its vendor did not travel to the U.S. does not contradict the challenged statements or render them materially misleading.[4] (Opp. at 14.) Under Plaintiffs' theory, Enovix and its vendor could have conducted every possible factory and site acceptance test that did not require travel.

Moreover, Enovix never created the impression that factory and site acceptance testing

---

[4] Plaintiffs' cases on this point are inapposite. Plaintiffs have not alleged that the decision not to send engineers internationally to a vendor during COVID "differed dramatically" from public statements that testing was conducted. *Zhou*, 2022 WL 13800633. Nor have Plaintiffs alleged facts that directly contradict the company's statements. *In re MannKind Sec. Actions*, 836 F.Supp.2d 797, 811-12 (C.D. Cal. 2011) (scienter alleged where defendants knew FDA had not pre-approved a methodology but represented that it had the FDA's "blessing"); *Hsingching Hsu v. Puma Biotech., Inc.*, 2018 WL 4945703, at *8 (C.D. Cal. Oct. 5, 2018) (triable issue of fact where trial data showed higher incidence rate of adverse event and defendants stated safety results were expected to align with prior results).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

involved international travel or was completed pursuant to the Company's internal equipment procurement review protocols. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (to be actionable, an "omission must . . . affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists"); (*see, e.g.*, ¶¶110, 114.) To the contrary, Defendants told investors that COVID-19 "travel bans and restrictions" "***have and may continue to adversely impact*** Enovix's employees," and "the operations of its [] vendors." (Ex. 8 at 41.) And when Rodgers disclosed that Enovix engineers did not travel to China, the stock price actually increased – suggesting that investors did not expect Enovix engineers to travel, nor consider this decision significant. Notably, Plaintiffs do not address *Oran v. Stafford*, 226 F.3d 275, 283 (3d Cir. 2000), which held that a stock price increase after the allege fraud is revealed defeats fraud claims. (*See* Mot. at 17.)

Nor do Plaintiffs address Defendants' argument that the omission of internal "milestones" under an equipment procurement review protocol is not securities fraud. (Mot. at 16, n.5.) They ignore *Mendoza v. HF Food Group Inc.*, where the court rejected allegations that filings "were false because they did not disclose that the Company was violating its own internal policy." 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021). They also disregard *Pardi v. Tricida, Inc.*, where the omission of internal target enrollment of 4,000 patients in a trial did not render statements about proceeding with 1,600 patients false or misleading. 2022 WL 3018144, at *11-12 (N.D. Cal. July 29, 2022). As in *Mendoza* and *Pardi*, Enovix's generic statements about testing were not rendered misleading by the omission of an internal equipment procurement review protocol.

In an attempt to salvage their claims, Plaintiffs improperly speculate that "investors could reasonably believe that Enovix would fly a team of engineers to China for the FAT because the Company boasted that it had spent $1.4 million to charter 'the world's largest airplane' to 'fly over 55 tons of Fab-1 equipment' from China to Fremont 'in one shot.'" (Opp. at 15.) This is nonsense. Chartering a cargo plane to ship equipment to avoid supply chain issues says nothing about and does not imply that Enovix engineers would travel to vendor facilities to conduct testing. Next, Plaintiffs argue that investors would reasonably understand that references to "factory and site acceptance testing" and "things" had the same exact meaning as Rodgers' statements in November

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

2022 about "FAT" and SAT" pursuant to the equipment procurement review protocol. (Opp. at 14-15.) They allege no facts whatsoever in support of this argument. And they ignore that Rodgers made his statement *after* all the challenged statements were made. As a result, it was impossible for Rodgers' statement to impact investor impressions at the time the challenged statements were made. (¶¶110, 114, 145.) This court need not accept such unreasonable inferences. *West v. Ehealth, Inc.*, 2016 WL 948116, at *5 (N.D. Cal. Mar. 14, 2016) ("The Court will not accept interpretations of the statements that are taken out of context and are not plausible on its face.")

Plaintiffs fail to adequately allege Enovix lied about factory or site acceptance testing.

### 3. Statements That Do Not Reference Factory and Site Acceptance Testing Are Also Not False or Misleading.

Plaintiffs also challenge statements related to (1) the Company's efforts to overcome obstacles with the global supply chain (¶¶112, 118) and (2) disclosures that it "may" take longer to qualify equipment and produce batteries, though they say nothing about factory or site acceptance testing. (*See, e.g.*, ¶107.) Because they are unrelated, they are not misleading by omitting Enovix's decision against sending its engineers to China. *See Brody*, 280 F.3d at 1006. Plaintiffs' attempts to assert otherwise fail.

First, Plaintiffs do not dispute that Defendants' statements about its efforts to overcome global supply chain shipping delays are literally true. (Mot. at 20; Opp. at 17.) They include:

- August 10, 2021: "***Last quarter, we were able to navigate the global supply chain constraints and receive all key equipment for our first production line. This required heroic efforts, including a critical decision to charter Antonov An-124, one of the world's largest cargo planes***, *to fly over 60 tons of manufacturing equipment from Asia to San Francisco. We managed industry-wide supply chain issues and installed and started qualifying our equipment in the midst of a global pandemic*." (¶112 (emphasis in original).)

- March 3, 2022: "We have commenced deliveries from Fab-1 to our lead customers. Getting to this point was not easy. ***We have overcome obstacles such as extended shipping times and intermittent vendor support during equipment bring-up resulting from COVID travel restrictions to/from Asia.*** Fab-1 features a first-of-its-kind line for battery production. As a result, every day we solve problems needed to improve yield and output." (¶118 (emphasis in original).)

Plaintiffs claim the discussion of "obstacles" was misleading without disclosing Enovix's decision to not send Enovix engineers to the vendor's factory. (Opp. at 17-18; ¶¶113, 117, 119.) But none

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

of these statements created the impression Enovix would send its engineers to China as a part of acceptance testing.  Nor did the statements reference testing at all.

Tellingly, Plaintiffs do not address the Ninth Circuit's decision in *Brody* on this point.  In that case, the defendant disclosed plans to repurchase shares from investors, but did not disclose that it had received an offer to buy the company at a higher price per share.  *Brody*, 280 F.3d at 1006.  The plaintiff sued, claiming that the omission of the higher per-share offer constituted fraud.  The court disagreed, finding that the company had no duty to disclose the offer or pending merger negotiations and explaining that, "[i]f the press release had affirmatively intimated that no merger was imminent, it may well have been misleading.  The actual press release, however, neither stated nor implied anything regarding a merger."  *Id*.  As in *Brody*, Enovix's statements "neither stated nor implied" anything about sending Enovix engineers to China for testing.

Plaintiffs' citation to *Schueneman v. Arena Pharmaceuticals, Inc.* only reinforces this point, as the challenged statements at issue directly contradicted the purportedly omitted information.  840 F.3d 698, 708 (9th Cir. 2016); (Opp. at 17.)  The *Arena* defendants stated "everything that they had compiled" was favorable and "all animal studies demonstrated the long-term safety," while allegedly failing to disclose the existence of unfavorable data from a completed rat study suggesting the drug could cause cancer.  *Arena*, 840 F.3d at 708.  Unlike *Arena*, the purportedly omitted information – not sending engineers to China – did not directly contradict Enovix's statements.

Second, Plaintiffs' challenge of risk warnings in the June 2021 proxy statement and March 2022 Form 10-K, cautioning that it "may take longer than expected to install, qualify and release [Fab-1] and require modifications to the equipment to achieve its goals for through put and yield"; "[t]he work required to develop this process and integrate equipment . . . is time intensive and requires Enovix to work closely with developers and equipment providers to ensure that it works properly for Enovix's unique battery technology"; and "[t]his integration work will involve a significant degree of uncertainty and risk and may result in the delay in the scaling up of production or result in additional cost to Enovix's battery cells," gets them nowhere.  (¶¶107, 125.)

Plaintiffs incorrectly argue these risks already "materialized" because of the supposed waiver of FAT and SAT.  (Opp. at 16; ¶¶108, 126.)  They fail to allege any particularized facts

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

showing that as of June 2021 or March 2022, any manufacturing timelines had been delayed or that Enovix was not working closely with developers and equipment providers. Instead, Plaintiffs claim that Enovix's decision not to send its engineers to China "created material risks" of delays – risks that were already disclosed by Enovix. (Opp. at 16.) Plaintiffs' argument amounts to the notion that Enovix should have provided more detail about those risks. But this District made clear in *In re Intuitive Surgical Securities Litigation* that there is no liability where "the information the company did provide was entirely consistent with the more detailed explanation [] that the plaintiffs argued [] should have [been] included." 65 F.Supp.3d 821, 836 (N.D. Cal. 2014). As in *Intuitive Surgical*, Enovix's risk warnings about potential delays and the COVID-19 pandemic were "entirely consistent" with the possibility that Enovix could make adjustments from protocols.

Plaintiffs' cases prove Defendants' point – in each, the risks disclosed had already materialized. For example, in *In re Facebook, Inc. Securities Litigation*, the company warned that data could be lost or misused, while concealing an alleged data breach involving misused data. 84 F.4th 844, 859-60 (9th Cir. 2023). Similarly, in *In re Alphabet, Inc. Securities Litigation*, the company warned that there could be a breach of security measures, while not disclosing an alleged security glitch that exposed user data for three years. 1 F.4th 687, 693, 705-06 (9th Cir. 2021). Unlike *Facebook* and *Alphabet*, Plaintiffs fail to plead that the risks warned of – manufacturing delays – had already materialized in June 2021 or March 2022.[5]

**C.      Plaintiffs Allege No Facts Giving Rise to a Strong Inference of Scienter**

The Complaint fails to plead that Defendants acted either intentionally or with deliberate recklessness, constituting "an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Plaintiffs offer five insufficient scienter theories: (1) Rodgers admitted to fraud,

---

[5] Plaintiffs also claim it was "misleading for Enovix to say that quality assurance testing with its equipment providers could cause delay when Defendants decided not to work with those providers," which gave investors "the false impression that the Company would not cut corners." (Opp. at 16-17.) But Plaintiffs have not alleged that Defendants did not work with their vendor, only that their employees did not travel to the vendor's facilities, and vice versa. (*See* Opp. at 14.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

(2) Rodgers' desire to improve investor communications, (3) the core operations doctrine, (4) Dales' stock sales, and (5) financial motive. Plaintiffs do not plead any of these with particularity.

First, Plaintiffs are wrong that Rodgers "admitted" to fraud in 2022 – nearly a year after the challenged statements were made. As discussed above, they fail to plead particularized facts showing that Rodgers' November 2022 reference to FAT and SAT, under an internal equipment procurement review protocol, made prior statements about factory and site acceptance testing false, much less admitted as much. *Wochos*, 985 F.3d at 1194; *see Morgan v. AXT, Inc.*, 2005 WL 2347125, at *12 (N.D. Cal. Sept. 23, 2005) (finding after-the-fact statement that "certain shipments" were non-conforming was not an admission that earlier statements about general product quality were misleading). Indeed, there are no emails, reports, witness accounts,[6] meetings or documents showing that when defendants discussed factory and site acceptance testing in 2021, they intended to use Rodgers' definition of "FAT" and "SAT" under an equipment procurement review protocol. *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *19 (N.D. Cal. Sept. 27, 2012) ("the PSLRA requires 'particular allegations which strongly imply [d]efendant[s'] contemporaneous knowledge that the statement was false when made'"). In fact, Plaintiffs plead no specific facts showing what any defendant knew or believed at the time each challenged statement was made. Plaintiffs do not negate the possibility that Enovix received frequent testing reports from its vendor and videos showing the equipment performing at specification with no issues.[7] At most, Plaintiffs have alleged that Enovix could not and did not send its employees to China during a global pandemic. But Plaintiffs cannot plead scienter by simply alleging that Defendants were aware of this decision. *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) ("[A]llegations that a Defendant was generally aware of facts . . . by itself, is not sufficient to show scienter"). Instead, they must plead with particularity that Defendants believed or were deliberately reckless that they were misleading investors, as held by *Petrie v. Electronic Game*

---

[6] Plaintiffs do not acknowledge, address, or even contest the deficiencies in their former employee allegations. (Mot. at 23; *cf.* Opp. at 21-25.) Specifically, none of the former employees ever allegedly interacted with the defendants, and only one is alleged to have attended the meetings that Rust and Dales allegedly attended. (¶¶179-80.) Nor do the former employees claim that FAT or SAT was discussed at the meetings. (*Id.*)

[7] Plaintiffs fail to allege any facts about what Defendants knew about site acceptance testing at any point in time, other than the equipment was installed and tested in-house. (¶17.)

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

*Card, Inc.*, 2011 WL 13130015, at \*7 (C.D. Cal. Oct. 19, 2011). Tellingly, Plaintiffs do not address *Peregrine* or *Petrie*.[8] Nor do they allege facts showing any defendant believed that shipping certain equipment from China before sending its own employees to the vendor's facilities would create a "material risk that the Fab-1 equipment would not perform to the Company's specifications." (*See e.g.*, ¶115.) Plaintiffs do not contest their failure to allege facts showing any defendant believed at the time each challenged statement was made that (1) Enovix's testing was inadequate, (2) Fab-1 would not produce as many batteries as intended, or (3) they misled investors. This is fatal.

Second, Plaintiffs distort two of Rodgers' statements about investor communications – each irrelevant to the scienter analysis. (Opp. at 2, 8-9, 14, 19, 23.) Plaintiffs mischaracterize a November 2022 statement by Rodgers, noting that Enovix "poorly communicated on the status of Fab-1." (Opp. at 8.) They do not plead any facts explaining what Rodgers meant, let alone that he was referring to any of the challenged statements – which were all made nearly a year earlier. *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at \*11 (N.D. Cal. Mar. 23, 2020) (an admission must "contradict[ ] the substance of an earlier statement and essentially state[ ] 'I knew it all along.'"). To the contrary, Rodgers explains that some investors interpreted some prior statements as reporting technology problems with the batteries themselves – not that there was poor communication about factory or site acceptance testing. (¶145.) Plaintiffs are also wrong that "Rodgers conceded [in January 2023] that investors 'were reasonably misled' by Defendants' statements about the status and capability of Fab-1." (Opp. at 13.) They incorrectly assume that Rodgers referred to the challenged statements without substantiating that assumption with particularized facts. *Wochos*, 985 F.3d at 1194. And they selectively omit the immediately surrounding language, noting that Enovix has "always been honest," and any issue was "[not] deliberate." (Ex. 18 at 5.)

Third, Plaintiffs' reliance on the core operations inference is misplaced. They do not dispute that the core operations inference applies in "exceedingly rare" circumstances. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). Nor do they contest that the doctrine only helps

---

[8] Plaintiffs cite one case, *In re Immune Response Securities Litigation*, which does not help them. 375 F.Supp.2d 983 (S.D. Cal. 2005). There, the company made positive statements about its HIV treatment, while not disclosing data showing the treatment was ineffective, as substantiated at meetings, by documents, and by testimonial evidence. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

them if Enovix possessed facts that rendered Defendants' public statements false or misleading when made (it did not).  Regardless, Plaintiffs do not claim that Defendants had "actual access to the disputed information." (Opp. at 22-23.)  They claim Rust and Dales were involved in "day-to-day operations" of Fab-1, according to former employees who never allegedly interacted with them. (*Id.*; ¶¶179-80.)  But "[g]eneral allegations" of involvement are insufficient.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005).  Nor do Plaintiffs credibly explain how it would be "absurd to suggest" that defendants would not know about issues with Enovix's "core product." (Opp. at 22-23.)  They ignore that it is insufficient to impute knowledge simply because statements concern a "flagship product." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014).

Fourth, Dales' stock sales were all pursuant to 10b5-1 plans, which rebuts an inference of scienter. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008). While Plaintiffs claim that insiders can "game 10b5-1 plans," the Complaint does not allege that was the case here.  (Opp. at 21; ¶173.)  Nor is it suspicious that Dales sold 15% of his holdings over several months.  (*Id.*)  *Metzler*, 540 F.3d at 1067 (37% insufficient to infer scienter); *see also Azar v. Yelp, Inc.*, 2018 WL 6182756, at *19 (N.D. Cal. Nov. 27, 2018) (sales of 20% of a defendant's holdings "is not alone sufficient to infer scienter").  Plaintiffs' cases hold no different, as they involved greater amounts with no trading plans.  (Opp. at 21.)  *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017) (sold 87% of holdings); *Senn v. Hickey*, 2005 WL 3465657 (D.N.J. Dec. 19, 2005) (sold $4 million over three days).

Further, Rodgers purchased $3.5 million of Enovix stock during the class period, which "strongly weigh[s] against scienter."  (Blankenship Decl., ¶25); *In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F.Supp.3d 943, 952 (N.D. Cal. 2017).  Plaintiffs fail to explain why Rodgers would buy shares in May 2022 – just months before an alleged corrective disclosure – when he allegedly knew bad news was coming.  (*See* Ex. 13.)  Instead, they speculate that Rodgers believed he "could have continued to hide the fraud." (Opp. at 22.)  Plaintiffs do not substantiate their speculation with particularized facts.  Nor does this theory make any sense given Rodgers voluntarily disclosed in November 2022 that Enovix engineers did not travel to China when he was not obligated to make such a disclosure.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI

Fifth, Plaintiffs are wrong that Enovix concealed the purported waiver of factory and site acceptance testing to ensure the merger closed.  Plaintiffs disregard Ninth Circuit precedent that "routine business objectives," such as motive to close a transaction and raise money, without more, do not support scienter.  (Opp. at 20); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).  Nor do they explain how their theory makes any sense given the merger closed just one month into the 19-month class period, meaning that Plaintiffs do not address 95% of the class period.  Regardless, none of the statements Plaintiffs challenged from before the merger closed even mention factory of site acceptance testing at all.  Plaintiffs' citation to *Mulderrig v. Amyris, Inc.*, 492 F.Supp.3d 999, 1028-29 (N.D. Cal. 2020), proves the point, because there, the company made *all* of the challenged statements before the merger closed.

***Holistic Review.***    Plaintiffs fail to credibly address the most compelling inference – that Enovix conducted robust factory and site acceptance testing to mitigate risks – and Defendants believed such measures were more than sufficient.  In February 2021 – before the class period even started – Enovix provided investors with a "Fab-1 Schedule" showing that *all* factory acceptance tests were underway.  (Ex. 4 at Slide 48; ¶102.)  One slide even showed two pictures of "Fab-1 Equipment At Vendor Factory Acceptance Test (FAT)."  (Ex. 4 at Slide 41; ¶100.)  Plaintiffs do not claim any of these statements or slides were false or misleading in February 2021.  Nor do they dispute that the COVID-19 pandemic prompted many companies to perform factory and site acceptance testing remotely.  (Ex 2 at 2-3.)  And their Complaint concedes that factory acceptance testing is conducted "by the ***vendor's engineers***," not the Company's engineers.  (¶86.)  There are no facts showing that acceptance testing was not performed by Enovix's vendor or done remotely.  Plaintiffs' theory that Defendants went out of their way to conceal that Enovix did not send its own engineers to China during a pandemic makes no sense.  This is especially so in light of Enovix's repeated risk warnings about COVID-19 and travel restrictions: "Enovix has been, and may in the future be, adversely affected by the global COVID-19 pandemic […] The pandemic has resulted in government authorities implementing numerous measures to try to contain the virus, ***such as travel bans and restrictions***."  (Ex. 8 at 41.)  Plaintiffs have not alleged a single fact to undermine the inference of good faith, and the Complaint does not plead a compelling inference of fraud.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI**

**D.      Plaintiffs Fail to Plead Loss Causation for the January 3, 2023 Stock Drop**

Plaintiffs fail to plead loss causation for the January 3, 2023 stock drop.  To plead loss causation, the alleged corrective disclosure must reveal "new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).  Manufacturing delays surrounding Fab-1 had already been disclosed in November 2022.  (¶¶136-38, 140-45.)  *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *27 (N.D. Cal. June 2, 2020) (no loss causation where information previously disclosed).[9]

Indeed, the new information that Enovix disclosed in January 2023 related to the delay of Gen2, which Plaintiffs do not claim was corrective.  (Opp. at 23.)  Loss causation is not alleged where the loss is caused by the disclosure of information unrelated to the alleged fraud.  *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022) (concluding plaintiffs' allegations "most plausibly suggest that relatively disappointing test results, not any revelation of earlier falsehoods, caused Nektar's share price to plunge").  It is undisputed that the Gen2 line was for a different factory (Fab-2), in a different location (southeast Asia), and for different types of batteries (laptop and cell phone) than Fab-1 (watch and sample cell phone). (Ex. 5 at 6; Ex. 4 at Slide 51-52; Ex. 18 at 11.)  And there is no allegation that waiver of FAT/SAT related to or delayed Gen2.  (*See* Opp. at 23-24.)  Thus, the January 2023 stock drop should be dismissed from this case.

**III.      CONCLUSION**

For the foregoing reasons and those set forth in the Motion, the Complaint should be dismissed with prejudice.[10]

---

[9] The cases Plaintiffs cite are distinguishable, as they involved the disclosure of *new* information linked to the alleged fraud.  Opp. at 24; *See Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F.Supp.2d 1128 (N.D. Cal. 2013) (executive resigned due to alleged unethical conduct); *Facebook*, 84 F.4th at 866-67 (company announced low revenue growth allegedly caused by data breaches).

[10] Plaintiffs' Section 20(a) claim should be dismissed because they have alleged no primary violation under Section 10(b).  Plaintiffs have also failed to allege any facts about the defendants' "responsibilities within the company" to "demonstrate [their] involvement in the day-to-day affairs of the company."  *Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016) (holding 20(a) allegations "f[e]ll short" where plaintiffs alleged Musk was Chairman of the Board, signed certain SolarCity financial statements, and was a member of the "executive management team" "involved in SolarCity's operations and decisions"); *cf. Immune Response*, 375 F.Supp.2d at 1031 (alleging involvement in preparation of allegedly misleading press releases and describing roles).  Indeed, many of the Individual Defendants were not even members of Enovix's board for the vast majority of the class period.  (*See* ¶¶48-49, 51, 53.)

Cooley LLP
Attorneys at Law
Palo Alto

15

Defendants' Reply In Support
of Motion to Dismiss
23-cv-00071-SI

Dated: November 21, 2023

COOLEY LLP


By:    _/s/ Shannon M. Eagan_
                Shannon M. Eagan

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke, Cameron Dales, Thurman J. Rodgers, Emmanuel T. Hernandez, Lisan Hung, Steven J. Gomo, John D. McCranie, Joseph I. Malchow, Betsy Atkins, Pegah Ebrahimi, and Gregory Reichow*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO DISMISS
23-CV-00071-SI