COOLEY LLP
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

SARAH M. LIGHTDALE (*pro hac vice*)
(slightdale@cooley.com)
55 Hudson Yards
New York, New York 10001
Telephone:    +1 212 479 6000
Facsimile:    +1 212 479 6275

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke,*
*Thurman J. Rodgers, Emmanuel T. Hernandez, Lisan*
*Hung, Steven J. Gomo, John D. McCranie, Joseph I.*
*Malchow, Betsy Atkins, Pegah Ebrahimi, and Gregory*
*Reichow*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION<br><br><br>This document relates to: All actions | Civil Action No. 23-cv-00071-SI<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:          July 19, 2024<br>Time:          10:00 AM<br>Courtroom:  1<br>Judge:         Hon. Susan Illston |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT ................................................................................................................... 2

        A.      Plaintiffs Fail to Adequately Plead Any False or Misleading Statement ................. 2

                1.      The February 2021 Presentation is Not Incorporated by Reference,
                        Nor Is It False or Misleading. ...................................................................... 3

                2.      The June 2021 Statements Did Not Imply Equipment "Performed to
                        Specification" or Delays Would Not Occur ................................................. 5

                3.      The August and September 2021 Statements Did Not Convey
                        Equipment was Performing at 550 UPH or No Delay Would Occur. ......... 7

                4.      The March 2022 Statements Did Not Imply Equipment Was
                        Producing at "Commercial Scale" ............................................................. 10

                5.      The November 2022 Statement is Inactionable ....................................... 11

        B.      Plaintiffs Allege No Facts Giving Rise to a Strong Inference of Scienter ............. 12

        C.      Plaintiffs Fail to Plead Loss Causation ................................................................. 15

III.    CONCLUSION .............................................................................................................. 15

**TABLE OF AUTHORITIES**

Pages

**Cases**

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) .................................................................. 13, 15

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ........................................................................ 15

*Berlinger v. Bienaime*,
2023 WL 322899 (N.D. Cal. Jan. 19, 2023), *aff'd sub nom. Loc. 282 Pension
Tr. Fund & Loc. 282 Annuity Tr. Fund Dist. No. 9 v. Biomarin Pharm., Inc.*,
2024 WL 637491 (9th Cir. Feb. 15, 2024).......................................................................... 6

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020)............................................................................................ 15

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002)...................................................................................*passim*

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)..................................................................... 7

*Buttonwood Tree Value Partners, LP v. Sweeney*,
2012 WL 13026910 (C.D. Cal. Dec. 10, 2012) ................................................................ 15

*Fadia v. FireEye, Inc.*,
2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)................................................................ 2, 13

*In re FibroGen, Inc., Securities Litigation*,
2022 WL 2793032 (N.D. Cal. July 15, 2022)................................................................... 14

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ..................................................................................... 3, 4, 7

*Huang v. Avalanche Biotechnologies, Inc.*,
2016 WL 6524401 (N.D. Cal. Nov. 3, 2016)....................................................................... 3

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
45 F.4th 1236 (10th Cir. 2022) ....................................................................................... 11

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023), *aff'd,* 2024 WL 1693340 (9th
Cir. Apr. 19, 2024) ...................................................................................................... 9, 13

COOLEY LLP
ATTORNEYS AT LAW

ii

**REPLY ISO DEFS' MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 23-CV-00071-SI**

*Kelley v. Rambus, Inc.*,
2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir. 2010) ............................................................................................................................ 4

*Kyung Cho v. UCBH Holdings, Inc.*,
890 F. Supp.2d 1190 (N.D. Cal. 2012) ........................................................................ 15

*In re Leapfrog Enter., Inc. Sec. Litig.*,
237 F.Supp.3d 943 (N.D. Cal. 2017) ........................................................................... 15

*Mendoza v. HF Food Grp. Inc.*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) ............................................................... 6

*Mulderrig v. Amyris, Inc.*,
492 F.Supp.3d 999 (N.D. Cal. 2020) ........................................................................... 14

*In re Nektar Therapeutic Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) .......................................................................... 2, 3, 5, 10

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ....................................................................................... 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ..................................................................................... 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..................................................................................... 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ....................................................................................... 12

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ....................................................................................... 14

*Schueneman v. Arena Pharmaceuticals, Inc*,
840 F.3d 698 (9th Cir. 2016) ......................................................................................... 9

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ....................................................................................... 12

*In re Textainer P'ship Sec. Litig.*,
2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) ............................................................... 9

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ....................................................................................................... 4

*Vernazza v. S.E.C.*,
335 F.3d 1096 (9th Cir. 2003) ..................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW

iii

**REPLY ISO DEFS' MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 23-CV-00071-SI**

*Weston Family P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) .................................................................................................. 3, 9

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021)................................................................................. 1, 6, 7, 10

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)................................................................................................. 12

**Statutes**

PSLRA ....................................................................................................................................... 7, 12

**Other Authorities**

17 CFR § 230.411 ............................................................................................................................ 4

17 CFR § 240.12b-23(e) .................................................................................................................. 4

COOLEY LLP
ATTORNEYS AT LAW

iv

## I.    INTRODUCTION

The Opposition highlights the fundamental flaws in the Complaint.  Plaintiffs' core theory – that Enovix misled investors by failing to disclose that equipment was not meeting "specifications" during testing in 2021 and 2022 – suffers from a number of fatal deficiencies.

First, the Complaint fails to define "specification," demonstrating its lack of particularity.  Attempting to fix the issue, Plaintiffs now *assume* in their Opposition that the "specification" to "pass" factory acceptance testing was producing "batteries at a rate of 550 UPH" (units per hour).  (Opp. at 8.)[1]  Not surprisingly, they fail to substantiate that assumption with any particularized facts.  Instead, they mischaracterize a projection from February 2021 – four months before the class period started – as requiring individual pieces of equipment to perform at 550 UPH at *all* relevant times.  But that leap is based on speculation that the equipment was supposed to perform at Enovix's ultimate goal of 550 UPH from the start, as opposed to improving over time.  Indeed, Plaintiffs' argument ignores this Court's previous holding that they cannot assume a term has a "special or nuanced meaning" without pleading facts that "support this crucial premise."  (Order Granting Motion to Dismiss ("Order") at 16-17, ECF No. 97) (quoting *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021)).  Without specific facts to construe Enovix's long-term projection as a day one "specification" or requirement, the Complaint's entire theory falls apart.

Second, Plaintiffs do not allege a single fact showing Enovix created the impression that its equipment would perform at 550 UPH during each phase of testing or by any specific date.  None of the challenged statements discussed or implied any production volume, let alone 550 UPH.  Nor do Plaintiffs explain how investors could have held such an expectation in light of Enovix's repeated warnings that it may experience delays, had not achieved all specifications, and was not qualified for large-scale manufacturing volumes.  (¶¶135, 151; Mot. at 16-18.)

Third, Plaintiffs also fail to plead a strong inference of scienter. They do not plead contemporaneous facts showing any defendant believed the equipment would be delayed, could

---

[1] All abbreviations and references are the same as used in Defendants' Motion to Dismiss ("Mot") ECF No. 105 and Plaintiffs' Opposition ("Opp.") ECF No. 109.  Unless otherwise noted, all emphasis is added, and citations and internal quotation marks are omitted.

never reach 550 UPH, or that they were misleading investors. Nor do they allege that any defendant sold stock during the class period, which cuts against any inference of scienter.

Finally, Plaintiffs fail to plead loss causation for the January and October 2023 stock drops, as the announcements prompting those drops had nothing to do with the challenged statements.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Adequately Plead Any False or Misleading Statement

Plaintiffs' core theory – that Enovix misled investors by failing to disclose that equipment was not meeting "specifications" during factory acceptance testing and concealing the risk that the Fab-1 equipment would not perform to undefined "specifications" on an undefined "timeline" – is wrong. (*See* ¶¶16, 130-34.) Recognizing the deficiencies in the Complaint, Plaintiffs now argue that the "specification" required to pass the FAT was producing "usable batteries at a rate of 550 UPH." (Opp. at 8.) But Plaintiffs fail to plead a single fact to support this assumption. There are no emails, meetings, statements, conversations, reports, analyses, contracts, checklists, or any other documents showing that the "specification" to "pass" the FAT was 550 UPH. *In re Nektar Therapeutic Sec. Litig.*, 34 F.4th 828, 832 (9th Cir. 2022) (rejecting plaintiffs' theory "without specific allegations to connect the dots"). And while Plaintiffs boast about having nine confidential witnesses, none of them says the FAT required 550 UPH to be successful; nor do they identify a specific date when 550 UPH needed to be reached.[2] (Opp. at 8-10; ¶¶98-104, 111, 120-24.) Instead, Plaintiffs mischaracterize a projection from the February 2021 presentation to have "4 lines running 900 Wh/l cell batteries @ 80% OEE on **550 uph lines**"[3] – as the definitive "specification" to pass the FAT – as opposed to a long-term goal. (Opp. at 8; Ex. 2 at 37-38.) Ironically, Plaintiffs' original complaint referred to 550 UPH as a "projection," not a definitive specification or requirement. (Consol. Complaint ¶7, ECF No. 84 ("Enovix *projected* it would manufacture one battery every two seconds, which would require four manufacturing lines capable of producing 550

---

[2] The only Former Employee who mentions 550 UPH is FE 6, but FE 6 did not state 550 UPH was required at the FAT or any timeline for meeting that goal. (¶122.)

[3] The statement in the slide is a "forward-looking statement' … because it is a 'plan[ ]' or 'objective[ ] of management for future operations…" *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *11 (N.D. Cal. Nov. 14, 2016) ("the phrase 'We will,' [ ] indicates that Defendants will, at some point in the future, deliver integrated products and services to its customers").

units per hour").)  This Court similarly acknowledged that 550 UPH was a "forecast."[4]  In the end, Plaintiffs simply assume that "specification" has a "special or nuanced meaning" of 550 UPH without pleading facts that "support this crucial premise." (Order at 17-18.)  The Court has already rejected this flawed approach, where Plaintiffs improperly assumed that references to "FAT" and "SAT" in the November 2022 press release held the same meaning as earlier statements. (*Id.* at 16-17.)  The Court should do the same here.

Nonetheless, Plaintiffs attempt to lessen the PSLRA's heightened pleading standard by misstating the Ninth Circuit's holding in *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 778 (9th Cir. 2023).  Specifically, they use brackets to manipulate a quote from *Glazer* to say that "'Falsity is subject *[only]* to … the reasonable inference standard of plausibility.' *Glazer*, 63 F.4th at 766." (Opp. at 8.)  In doing so, they deleted the particularity requirement.  The full and accurate quote states: "Falsity is subject ***to a particularity requirement*** and the reasonable inference standard of plausibility set out in *Twombly* and *Iqbal*, and scienter is subject to a particularity requirement and a strong inference standard of plausibility." *Id.* at 778.  In other words, Plaintiffs must substantiate plausible theories of falsity with particularized factual allegations.  *See Nektar*, 34 F.4th at 832; *Huang v. Avalanche Biotechnologies, Inc.*, 2016 WL 6524401, at *6 (N.D. Cal. Nov. 3, 2016) (finding a "possible correlation" insufficient to "connect[] the dots" to support a "plausible inference"); *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022) (declining to "assume or implausibly infer" that defendants had knowledge based on later developed facts).  Accordingly, even if it is "plausible" that the FAT required 550 UPH (it is not), Plaintiffs fail to substantiate their theory with particularized facts.  *Glazer*, 63 F.4th at 778.  This deficiency becomes even more apparent when evaluating each challenged statement.

### 1.  The February 2021 Presentation is Not Incorporated by Reference, Nor Is It False or Misleading.

Plaintiffs do not dispute that the only challenged statement that uses the term "specification" is a footnote in the February 2021 presentation, four months before the class period started.  (¶129.)  The footnote states: "Equipment must perform to specification at the vendor's factory before

---

[4] Plaintiffs also cite Rodgers' January 2023 statement referring to 550 UPH as "rated capacity," which is the units a factory could theoretically produce at maximum levels.  (Opp. at 8; ¶¶176-78.)

shipment to Enovix and must pass another test after installation at the Enovix site." (*Id*.) Plaintiffs confirm that they do not claim this statement was false or misleading when made. (Opp. at 10-12.) Rather, they improperly argue that the presentation was incorporated into the June 2021 proxy and was false or misleading at that time. (*Id.*)

*Statement 1a was not incorporated by reference into the June 2021 proxy.* Plaintiffs do not dispute that to incorporate a document by reference, the Ninth Circuit and the SEC require a "specific request that [documents] be treated as part of the proxy material or incorporated into the materials by reference." *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *5 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir. 2010) (cleaned up); 17 C.F.R. § 240.12b-23(e). Plaintiffs do not claim the proxy even mentioned the February presentation by name, let alone attached or linked to it. Nor do Plaintiffs contest that the proxy expressly incorporates a different document – the merger agreement: ". . . the Merger Agreement, a copy of which is attached as Annex A hereto, *which is incorporated herein by reference*." (Ex. 2 at 111.) And they do not dispute that the proxy makes no similar "specific request" to incorporate the presentation, unlike the merger agreement.

Instead, Plaintiffs argue, without authority,[5] that "the statements in the Proxy are 'qualified' by the information contained in RSVAC's other public filings." (Opp. at 11.) This makes no sense; nor is it the law. Plaintiffs fail to explain how "qualif[ication]" of the proxy is a "specific request" to incorporate "public filings," much less a footnote from the February presentation. Nor do they explain how the presentation "qualifies" any statement from the June 2021 proxy. Next, Plaintiffs improperly argue that general references to "Parent SEC Documents" in the merger agreement incorporate the February 2021 presentation into the merger agreement, which is then incorporated into the proxy.[6] (Opp. at 11.) Not so. Plaintiffs ignore that SEC regulations prohibit multiple levels of incorporation by reference. 17 CFR § 230.411 ("disclosure must not be incorporated by reference from a second document if that second document incorporates information pertinent to

---

[5] Plaintiffs do not cite any SEC rules, regulations, or any of their own cases that evaluated whether a document was incorporated by reference. Instead, Plaintiffs cite a materiality decision from the 1970s, which has nothing to do with whether the February presentation is incorporated into the June proxy. (Opp. at 11.) *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).
[6] The February presentation is not listed as a "Parent SEC Document." Nor do Plaintiffs plead particularized facts showing that the presentation is a Parent SEC document.

such disclosure by reference to a third document.")  Accordingly, even if the presentation was incorporated into the merger agreement, the presentation was not incorporated into the proxy.

Finally, Plaintiffs do not credibly distinguish Defendants' cases which rejected identical or stronger incorporation by reference arguments.  (*See* Mot. at 11-12.)

***Even if incorporated by reference, Statement 1a is not false or misleading.***  Plaintiffs claim this footnote was false and misleading by failing to disclose that "Enovix had already waived that very requirement and shipped the Fab-1 equipment even though it never performed to specification." (Opp. at 10-11.)  But as discussed above, Plaintiffs fail to plead particularized facts showing "specification" in this statement meant 550 UPH, which is the linchpin of their theory.

Plaintiffs' allegations that equipment did not "pass" the FAT similarly fail.  Plaintiffs do not dispute that their only support for this allegation is FE 2.  But FE 2 does not detail the requirements to pass or fail the FAT, other than to vaguely state that yield was "low" and not every item on the checklist was completed.  *See Nektar*, 34 F.4th at 837 ("conclusory adjectives do not meet the PSLRA's heightened requirements.")  Plaintiffs insist that FE 2 had "firsthand knowledge" of the FAT, but do not address Defendants' argument that FE 2's allegations lack particularity. (Mot. at 12-13.)  Plaintiffs also fail to address Defendants' argument that the Complaint contains no quotes from FE 2, so it is unclear what FE 2 told Plaintiffs' counsel. (*See* Mot. at 14 n.2.)  Nor do they contend that FE 2 ever reviewed the equipment procurement review protocol or any vendor contract containing the FAT requirements.  (Mot. at 12-13.)  And only one other Former Employee that Plaintiffs claim corroborated FE 2 even worked at Enovix in June 2021 (FE 7) and is not alleged to know about the FAT.  (*Id.*; Opp. at 10; ¶¶56, 121.)

### 2.    The June 2021 Statements Did Not Imply Equipment "Performed to Specification" or Delays Would Not Occur

Plaintiffs argue that three statements from the proxy were misleading for failing to disclose that the equipment "never performed to specification." (¶¶134, 136.)  They are wrong.  Plaintiffs do not contend that any of those statements referred to factory or site acceptance testing. (Mot. at 14-16; Opp. at 11-12, 16.)  And because those statements "neither stated nor implied anything" regarding testing or equipment performance, they are not false or misleading.  *Brody v. Transitional*

*Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (an "omission must . . . affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.")

      *Statement 1b.*  Plaintiffs do not dispute that if Statement 1a is not actionable, then Statement 1b is necessarily not actionable (it is not).  Nonetheless, Plaintiffs argue that Statement 1b's update that "[a]ll critical equipment for fabrication has arrived and is currently assembled," "gave [ ] the false impression that [ ] it must have performed to specification during the FAT," when read with Statement 1a.  (Opp. at 10-12; ¶131.)  Not so.  A footnote from an earlier February 2021 presentation saying that the equipment must meet some alleged "specification" does not mean that Enovix achieved that goal four months later.  *See Berlinger v. Bienaime*, 2023 WL 322899, at *4 (N.D. Cal. Jan. 19, 2023), *aff'd sub nom. Loc. 282 Pension Tr. Fund & Loc. 282 Annuity Tr. Fund Dist. No. 9 v. Biomarin Pharm., Inc.*, 2024 WL 637491 (9th Cir. Feb. 15, 2024).  While Plaintiffs disagree in a conclusory fashion, they cite no cases or authority in support.  Nor do they acknowledge that falling short of an internal goal or requirement is insufficient to plead a securities fraud claim.  (Opp. at 12; *see* Mot. at 17-18.)  *See Mendoza v. HF Food Grp. Inc.,* 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021) (allegation that filings "were false because they did not disclose that the Company was violating its own internal policy" was not securities fraud).

- **Statement 2:** "Enovix expects Fab-1 to be fully operational by the end of 2021 and to begin production by Q1 2022, with first production revenue in Q2 2022." (¶133.)

      Plaintiffs incorrectly argue that "Statement 2 was misleading because 'fully operational' implied that Fab-1 would be ready for commercial scale production by the end of 2021." (Opp. at 16.)  Again, Plaintiffs fail to plead particularized facts that "fully operational" meant "commercial scale production" (which is also undefined).  Instead, they appear to improperly assume that "fully operational" means producing batteries at 550 UPH, as opposed to simply producing batteries.  *Wochos*, 985 F.3d at 1193 (rejecting that "manufacturing equipment" meant "automatic manufacturing equipment" absent particularized facts).[7]  Regardless, Plaintiffs do not dispute that Statement 2 is forward-looking.  (Opp. at 16.)  Nor do they credibly contest that Statement 2 was accompanied by meaningful cautionary language.  Rather, they argue that Enovix's risk factors had

---

[7] In fact, Rust told investors that production would be "automated" by the end of 2021, not that it would be operating at 550 UPH.  (Ex. 3 at 6.)

"materialized," which fails for the reasons discussed below regarding Statement 3. Nor do Plaintiffs argue that any defendant knew Enovix's projections were "impossible" to meet, which effectively concedes their failure to plead actual knowledge under the second prong of the PSLRA safe harbor. *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *10 (N.D. Cal. Mar. 24, 2014) (no knowledge that production was unattainable despite "failed test runs"); *Wochos*, 985 F.3d at 1194.

- **Statement 3:** "It may take longer than expected to install, qualify and release this line and require modifications to the equipment to achieve its goals for through put and yield. ... This integration work will involve a significant degree of uncertainty and risk and may result in the delay in the scaling up of production (¶135.)

Plaintiffs claim that this disclosure was misleading because "these risks had already begun to materialize due to Enovix's repeated and continuing failures to get the Fab-1 equipment up to speed."[8] (Opp. at 16.) But Plaintiffs fail to plead particularized facts that it was taking "longer than expected." Indeed, the Opposition does not remedy the fact that the Complaint fails to plead facts showing when the equipment was supposed to reach 550 UPH, any internal timelines, or how the equipment was tracking against those timelines. (Mot. at 16.) Instead, they claim that "it is ***reasonable to infer*** that qualifying the Fab-1 equipment and scaling up production were already substantially delayed." (Opp. at 17 n.11.) But even if Plaintiffs' theory is "reasonable to infer" (it is not), they must plead specific facts in support, which they fail to do. *Glazer*, 63 F.4th at 778.

### 3. The August and September 2021 Statements Did Not Convey Equipment was Performing at 550 UPH or No Delay Would Occur.

Plaintiffs also fail to allege that Enovix's August-September 2021 statements were false or misleading because they did not disclose that the equipment was not "meeting performance requirements" and "failed the FAT." (Mot. at 17; Opp. at 12-14.) First, as discussed above, Plaintiffs have not pled that the equipment was required to perform to 550 UPH at the FAT or any other internal expectations for the equipment's performance.

Second, none of the statements implied that the equipment was performing at 550 UPH.[9]

- **Statement 4:** "The first step in this process is a site acceptance test to confirm the individual pieces of equipment are meeting performance requirements. This follows

---

[8] Plaintiffs also cite FE 4, who was not employed at Enovix at the time of the proxy. (¶¶53, 123.)
[9] Plaintiffs do not claim Statement 5 related to testing or equipment performance. (Opp. at 14-15.) *Brody*, 280 F.3d at 1006.

factory acceptance testing already performed at the vendor's facility before taking delivery.…" (¶138.)

- **Statement 6**: "We have a pretty rigorous set of both factory and site acceptance things we have to go through and I would say there's no red flags there." (¶142.)
- **Statement 7**: "We're in the middle of qualifying, which means basically testing out each piece of equipment, making sure it's operating as optimum operating point, making sure we understand where the process windows are. That's going on quite well." (¶144.)

Plaintiffs incorrectly claim Statement 4 implied that the equipment met "performance requirements" at the FAT because the description of site acceptance testing used the word "confirm." (Opp. at 12.) But this statement goes to the purpose of the SAT and does not comment on the results of any factory acceptance testing, let alone imply the equipment performed at the ultimate goal of 550 UPH. The same is true of Rust's opinions that there were "no red flags" and it's "going on quite well." (¶¶142, 144.) Statement 6 was part of an exchange with an analyst who understood the line was not operational and testing was ongoing:

> Analyst: So it sounds like ***you guys haven't been able to do sort of a full dry run of production yet, but I guess, you've probably been testing you know the individual steps on the production line I guess as you look at the latest capacity test, how is your proprietary equipment sort of stacking up against your expectations on capacity.*** You know for better or worse any detail around that would be great.
>
> Rust: ***I think we're pleased overall in terms of the equipment and its ability to do its intended function . . . And I think in general the tools that perform to specifications you know*** we have a pretty rigorous set of both factory and site acceptance things we have to go through. And you know I would say there's no red flags there."

(Ex. 3 at 6-7; ¶142.) While Plaintiffs claim this question related to "capacity," they have not alleged particularized facts showing that the exchange referenced production capacity (the number of batteries the factory could produce), when other discussions on that call related to battery capacity (the amount of energy a battery can produce). (Opp. at 13; Ex. 3 at 6-8) (discussing "higher capacity battery for military applications" involving batteries with "higher energy density"). Moreover, Rust did not comment on UPH or production volume – he was happy "overall in terms of the equipment and its ability to do its ***intended function***," saw no "red flags" with "factory and site acceptance things," and implied not all equipment was performing to specification, noting that there were only some "tools that perform to specifications…" (Ex. 3 at 6.)

Tellingly, Plaintiffs do not address the Ninth Circuit's decision in *Brody*. In that case, the plaintiff alleged that the company misled investors by not disclosing a merger was imminent. *Brody*, 280 F.3d at 1006. The court disagreed, finding that the company had no duty to disclose the offer or pending merger negotiations and explaining that, "[i]f the press release had affirmatively intimated that no merger was imminent, it may well have been misleading. The actual press release, however, "neither stated nor implied anything regarding a merger." *Id*. Similarly, the Ninth Circuit in *Weston* held that "companies do not have an obligation to offer an instantaneous update of every internal development, especially when it involves the oft-tortuous path of product development." *Weston*, 29 F.4th at 620. As in *Brody* and *Weston*, Enovix's statements "neither stated nor implied" anything about UPH, let alone 550 UPH.

To the contrary, Enovix disclosed in June 2021 that "[i]t may take longer than expected … to achieve its goals for through put and yield." (¶135.) It also warned that "***Enovix has not achieved every specification*** for the products we plan to produce in our first year of production." (Ex. 2 at 35.) Rust's opinions about the testing process cannot be misleading in light of these disclosures. Plaintiffs claim this disclosure is not relevant because it was under a heading related to "energy density," but this language is broad and not limited to any specification. (Opp. at 10.) This district recently rejected a similar argument, explaining "the method by which Intel organizes and labels its risk factors has no impact on whether the cautionary language is meaningful." *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *12 (N.D. Cal. Mar. 31, 2023), *aff'd,* 2024 WL 1693340 (9th Cir. Apr. 19, 2024); *In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *5 (N.D. Cal. Dec. 12, 2005) ("the heading of a section cannot limit the plain meaning of the text"). The risk factor is "clearly relevant," as it warns of the precise risk that "the failure of Enovix to achieve ***all*** of these specifications" could delay production. *Intel*, 2023 WL 2767779, at *12; (Ex. 2 at 35).

Further, Plaintiffs' citation to *Schueneman v. Arena Pharmaceuticals, Inc.*, does not help them. 840 F.3d 698, 708 (9th Cir. 2016); (Opp. at 13). There, the defendants stated that "everything that they had compiled" was favorable and "all animal studies demonstrated [ ] long-term safety," while allegedly failing to disclose the existence of unfavorable data from a rat study suggesting their drug could cause cancer. *Arena*, 840 F.3d at 708. Unlike *Arena*, Enovix did not claim that

all the testing was favorable, there were no issues, or the equipment performed at 550 UPH.[10]

### 4.    The March 2022 Statements Did Not Imply Equipment Was Producing at "Commercial Scale"

Plaintiffs fail to allege that Enovix's March 2022 statements were misleading for failing to disclose that the equipment was not performing at 550 UPH.

<u>First</u>, Plaintiffs have not alleged how the equipment was performing in March 2022 relative to the Company's expectations. (Mot. at 19; Opp. at 14-15.)  Instead, Plaintiffs rely on FE 6, who was not employed at Enovix in March 2022.  (¶55.)  While FE 6 reported that in June 2022, equipment in one of the four zones produced at 30-40 UPH, the Complaint does not describe the Company's expectations for production in March 2022, or how any other zone of equipment was performing.  (¶122.)  *See Nektar*, 34 F.4th at 838 ("the complaint has failed to plead sufficient facts to provide context that would allow us to assess the alleged falsity of Nektar's statements.").

<u>Second</u>, the March 2022 statements did not create the impression that equipment was performing at 550 UPH.  *Brody*, 280 F.3d at 1006.

- **Statement 9**: "<u>[w]e made significant progress in 2021 by equipping our first factory, allowing us to start commercial production and remain on track for our first product revenue by Q2 2022</u>." (¶148.)

- **Statement 10**: "<u>It may take longer than expected to install, qualify and release this line and require modifications to the equipment to achieve our goals for throughput and yield . . . This integration work will involve a significant degree of uncertainty and risk and may result in the delay in the scaling up of production or result in additional cost to our battery cells.</u>" (¶151.)

Plaintiffs argue that Statement 9 "gave investors the false impression" that the Company would generate "commercial-scale revenues."  (Opp. at 15.)  Not so.  The Company repeatedly told investors that it would start production in Q1 2022 by shipping "customer qualification samples." (Ex. 3 at 6; ¶¶83-84, 94, 146, 160.)  Plaintiffs do not dispute that Enovix met this goal, but quibble that the amount of revenue was "nominal." (Opp. at 15; ¶149.)  But shipping "samples" and receiving "first product revenue" does not imply "commercial-scale revenues" or that the line would be operating at 550 UPH.  In fact, Plaintiffs ignore that the statement immediately preceding

---

[10] Plaintiffs fail to distinguish Tesla's statement in *Wochos* that it was making "great progress" on battery production, which they admit was subjective, from Enovix's statements that the testing was "going quite well" and saw "no red flags."  985 F.3d at 1196; (Mot. at 17-18; Opp. at 14.)

Statement 10 states the equipment "has not yet been developed or qualified to operate at large-scale manufacturing volumes." (¶151.)   *See Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1256 (10th Cir. 2022) ("even if Pluralsight had already fallen behind its sales ramp capacity plan … that problem could still be remedied at the time Pluralsight disclosed the risk to investors"). Plaintiffs do not dispute that Enovix started production and generated revenue in Q2 2022, meaning the harm was not "virtually certain." *Id.* at 1256-57.

The remaining March 2022 challenged statements did not reference testing or production:

- **Statement 8**: "We have commenced deliveries from Fab-1 to our lead customers.  Getting to this point is not easy. We have overcome obstacles such as extended shipping times and intermittent vendor support during equipment bring-up resulting from COVID travel restrictions to/from Asia." (¶146.)
- **Statement 11**: "Challenges associated with building out Fab-1 include extended shipping times, supply chain constraints and intermittent vendor support during equipment bring-up resulting from COVID travel restrictions imposed on certain countries in Asia." (¶153.)

Plaintiffs argue that these statements were misleading because they failed to disclose other obstacles and challenges.  (Opp. at 14-15.)  But none of these statements created the impression that Enovix had overcome all challenges, or that the equipment was performing at 550 UPH.  *Brody*, 280 F.3d at 1006; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) ("no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.")  Further, the obstacles in Statement 8 specifically relate to "commenc[ing] deliveries" to "lead customers."  (¶146.)

### 5.    The November 2022 Statement is Inactionable

Statement 12 says "Fab-1 is going to work and ship a lot of batteries to our customers-period."  (¶169.)  This is quintessential puffery.  *See Indiana Pub. Ret. Sys.*, 45 F.4th at 1251-52 (affirming that Pluralsight "had ***a lot of*** great sales reps. They're killing it" was inactionable). Plaintiffs' argument that "a lot" is objectively verifiable to mean 550 UPH makes no sense.  (Opp. at 18.)  Further, Plaintiffs claim that Rodgers failed to disclose that the equipment was "producing less than 10% of the expected production rate" but concede that Enovix had disclosed this information days earlier.  (¶¶162, 170.)  Nor do they substantively explain how the statement was not forward-looking, nor accompanied by meaningful cautionary language under the first prong of

the safe harbor. (Mot. at 20.) And they do not contend that Rodgers knew that it was "impossible" Fab-1 would not "work," or "ship a lot of batteries," under the second prong of the safe harbor. (¶170.) (*See* Mot. at 20.) Grasping at straws, Plaintiffs claim that because Rodgers stated in January 2023 that the equipment was "doing less than [ ] it should be," he knew two months earlier that the equipment would not improve. (Opp. at 6, 17.) This an improper attempt to plead fraud by hindsight. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999).

### B.   Plaintiffs Allege No Facts Giving Rise to a Strong Inference of Scienter

The Complaint fails to plead that Defendants acted either intentionally or with deliberate recklessness, constituting "an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Plaintiffs' primary argument is that Enovix knew that the equipment was performing at a low UPH and only reached "18%" of its 550 UPH goal. (Opp. at 19-22.) But they ignore that knowledge of a purportedly omitted fact "is not sufficient to demonstrate that the defendant *intentionally withheld* those facts from, or *recklessly disregarded* the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud."[11]   *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (no scienter because there were no allegations that defendants believed they were misleading investors).

As an initial matter, Plaintiffs' scienter argument is premised on the assumption that Enovix was required to perform at 550 UPH at the FAT and throughout the class period. (Opp. at 18.) But Plaintiffs fail to substantiate that assumption with any particularized facts, which dooms their scienter theory. Similarly, Plaintiffs improperly assume that each defendant knew that Enovix had a "fundamental inability to produce a viable product." (Opp. at 20-21.) But the Complaint contains no facts indicating any Defendant knew or believed that Enovix could not produce a viable product. To the contrary, Plaintiffs concede that Enovix generated revenue during the class period by selling batteries it produced. (¶157.) And Plaintiffs claim that it was apparent the equipment would not

---

[11] Plaintiffs cite *Vernazza v. S.E.C.*, 335 F.3d 1096 (9th Cir. 2003) to suggest that "knowing or reckless conduct" is sufficient, but *Vernazza* did not discuss the PSLRA pleading standard.

COOLEY LLP
ATTORNEYS AT LAW

REPLY ISO DEFS' MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 23-CV-00071-SI

exceed 200 UPH in December 2022 – *after every challenged statement was made*. (¶122.)

Most importantly, Plaintiffs plead no particularized facts showing that knowledge of allegedly "low" UPH means that each defendant knew their statements were false or were deliberately reckless in making the challenged statements. Indeed, Plaintiffs fail to plead specific facts showing when Enovix expected to achieve 550 UPH, any internal milestones or timelines, or how Enovix was tracking against any internal timelines. Nor do they dispute their failure to allege facts showing that any defendant believed there would be delays, equipment could not reach 550 UPH, or that they were misleading investors. Plaintiffs fail to meaningfully distinguish *Revance*, where the court explained that "knowledge of manufacturing issues alone is insufficient to show intent to deceive or that Defendants were deliberately reckless." *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *13 (N.D. Cal. Apr. 2, 2024). The Ninth Circuit also recently affirmed this district's holding in *Intel* – that awareness of chip development problems did not create a strong inference that the defendants acted with scienter in "announcing and affirming [chip] product release dates." 2024 WL 1693340, at *1. As in *Revance* and *Intel*, Plaintiffs fail to plead facts showing that knowledge of alleged internal testing created a strong inference of scienter.

Ultimately, "[n]one of the facts alleged in the [Complaint] relate to the Defendants' state of mind." *Revance*, 2024 WL 1354503, at *14. The only allegation that arguably touches on Defendants' mental state is FE 9's vague statement that "'Rust was not happy' with the equipment problems," which is insufficient. (¶118.) FE 9 does not describe what Rust said, what data he reviewed, when he was "not happy," or any other information relating to Rust's beliefs or expectations about the equipment. Nor do Plaintiffs attempt to distinguish *Fadia*'s holding that "[a]t a minimum, [p]laintiffs needed to have provided information about *precisely* what was said by the parties in these meetings, which facts the [d]efendants were exposed to, and why this exposure supports an inference of scienter." 2016 WL 6679806, at *16. The "bare allegation that there were yield problems" without "any detail on when those yield issues were observed or how they would affect the [Fab-1] schedule…does not support an inference that any Individual Defendant knew of delays or was deliberately reckless." *Intel*, 2023 WL 2767779, at *23. Like the last complaint, this Complaint is "so devoid of allegations" as to whether any defendant "knew"

any challenged statement was false or believed they were misleading investors.  (Order at 25.)  Plaintiffs' remaining theories – "waiver," core operations, and financial motive – similarly fail.

***Alleged "waiver" of the FAT***.  Plaintiffs claim that Rodgers and Rust must have known that the equipment "repeatedly failed the FAT" because Rodgers told investors in November 2022 that he and Rust "waived the FAT." (Opp. at 19.)  But this court already determined this statement only referred to waiving the travel requirement.  (Order at 15.)  And even if Defendants knew the equipment did not perform at 550 UPH at the FAT, Plaintiffs have not alleged specific facts regarding what any Defendant believed or expected regarding that goal.

***Core Operations.***  Plaintiffs' allegations are insufficient to invoke the core operations inference, which only applies in "exceedingly rare" circumstances, *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008), not merely because Fab-1 was in "the same facility as the Company's executive offices," or the allegations concern a "flagship product."  (Opp. at 21); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (rejecting core operations where problems concerned flagship product). This case is readily distinguishable from *In re FibroGen, Inc., Securities Litigation*, where "the crux of the complaint [was] that [d]efendants actively *manipulated* [clinical trial] data post-hoc."  2022 WL 2793032, at *11 (N.D. Cal. July 15, 2022) (emphasis in original).  In any event, the core operations doctrine does not help Plaintiffs if invoked, given their failure to plead that anyone at Enovix knew information that could be imputed to Defendants to raise a strong inference of scienter.

***Financial Motive.*** Plaintiffs incorrectly claim that Defendants did not disclose that the equipment allegedly "failed the FAT" because this information "would have jeopardized the consummation of the Merger," but they provide no particularized facts to support this allegation. (Opp. at 22.)  Plaintiffs continue to ignore that the vast majority of the challenged statements were made after the merger closed.  (Mot. at 24.)  Thus, this case is unlike *Mulderrig v. Amyris, Inc.*, 492 F.Supp.3d 999, 1028-29 (N.D. Cal. 2020), where the company made ***all*** of the challenged statements ***before*** the merger closed.

Further, Plaintiffs' argument that Rodgers was motivated to "monetize his privately-owned shares" fails because he did not sell a single share of stock during the class period.  (*See* Mot. at

24.) Plaintiffs "fail to acknowledge that the Ninth Circuit has recognized that a lack of stock sales can detract from a scienter finding." *Revance*, 2024 WL 1354503, at *15. And they do not dispute that Rodgers affirmatively purchased stock, which "strongly weigh[s] against scienter."[12] (Ex. 8); *In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F.Supp.3d 943, 952 (N.D. Cal. 2017).

***Holistic Analysis.*** Any inference of scienter is weak in light of the Company's warnings that it was working on improving the equipment, it was not qualified for large-scale production, not all specifications had been met, and there may be delays. (*See, e.g.,* Ex. 3 at 35.) The most compelling inference is that Enovix sought to increase UPH over time to its ultimate goal of 550 UPH, as opposed to requiring equipment to perform at 550 UPH from the start. An inference of good faith is supported by Enovix's pre-class period projections that Fab-1 revenue would increase from $11 million in 2022 to $220 million in 2025 – ***20 times more***. (Ex. 1 at 51, 55.) In any event, even if Defendants knew the equipment performing at a "low" UPH during testing, they "simply may have been confident that they could overcome [those] problems." *Revance*, 2024 WL 1354503, at *6, 14 ("Defendants may have reasonably believed that they could fix any deficiencies by the timeline they predicted.") Plaintiffs fail to plead a single fact that suggests the opposite.

### C.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs fail to plead loss causation for the January and October 2023 stock drops because they do not identify facts tying the stock drops to the challenged statements, as opposed to other reasons or equipment lines. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).

### III.    CONCLUSION

The Complaint should be dismissed with prejudice.[13]

---

[12] Plaintiffs' cases do not hold otherwise. (Opp. at 24.) For example, in *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938-41 (9th Cir. 2003), the defendants were tied to controlling shareholders who had engaged in "massive insider trading." In *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp.2d 1190, 1202 (N.D. Cal. 2012), the court noted stock purchases were "not [] inconsistent with his scienter." *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 13026910, at *2 (C.D. Cal. Dec. 10, 2012) (similar).

[13] Plaintiffs' Section 20(a) claim should be dismissed because they have alleged no primary violation under Section 10(b). Plaintiffs have also failed to allege any facts about the defendants' "responsibilities within the company" to "demonstrate [their] involvement in the day-to-day affairs of the company." *Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016). Many of the Individual Defendants were not even members of Enovix's board for the majority of the class period. (*See* ¶¶41-42, 44, 45-46.)

COOLEY LLP
ATTORNEYS AT LAW

15

REPLY ISO DEFS' MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 23-CV-00071-SI

Dated: July 2, 2024

COOLEY LLP


By:   /s/ Shannon M. Eagan
         Shannon M. Eagan

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke, Thurman J. Rodgers, Emmanuel T. Hernandez, Lisan Hung, Steven J. Gomo, John D. McCranie, Joseph I. Malchow, Betsy Atkins, Pegah Ebrahimi, and Gregory Reichow*