

**Lawrence Rolnick**
Partner

PENN 1
1 Pennsylvania Plaza
New York, NY 10119
212.597.2838
lrolnick@rksllp.com

June 6, 2025

**<u>Via ECF</u>**

Honorable Susan Illston,
United States District Court for the Northern District of California
450 Golden Gate Avenue San Francisco, CA 94102

Re: *In re Enovix Corporation Securities Litigation*, No. 3:23-cv-00071-SI

Dear Judge Illston:

Defendants' paper-thin Rule 11 accusations cannot justify piercing Plaintiffs' core work product protections, especially while Defendants shirk their own discovery obligations.[1]

Contrary to Defendants' exaggerations, the "disavowing" FE declarations underpinning their putative Rule 11 motion do not contradict the complaint in any material way. Defendants' "bombshell" is that they apparently cajoled FE2—a non-native English speaker whom Enovix has since hired—to sign a declaration qualifying his prior statements that Enovix's equipment did not pass the FAT. He now says the FAT results were rated as "pass," "fail," or "conditionally pass," and that "it would be more accurate to say the equipment 'conditionally passed the FAT.'" Even under FE2's new recharacterization (which Plaintiffs dispute), "conditionally pass" still does not mean "pass." *FE2 still does not refute that the equipment needed to, but did not, "pass" the FAT* before Defendants waived that requirement. These semantic games (drafted by Defendants' lawyers) *at best* suggest a question of fact that will be borne out in the normal course of discovery. The Court must not permit Defendants to weaponize these cherry-picked, self-serving declarations to vitiate Plaintiffs' counsel's core work product protections in an attempt to impugn reputable counsel on trumped-up Rule 11 accusations.[2]

Defendants' counsel first contacted FE2 in August 2024. Enovix hired FE2 to a full-time position in November 2024. Defendants' counsel spoke with him again in December 2024 and finally secured his declaration in March 2025—after obtaining other "disavowing" FE declarations in January 2025. On March 14, with declarations in hand, Defendants told the Court that they would abide by the May 23 substantial completion deadline. (Dkt. 161.) But Defendants did not proffer any FE declarations until May 7. Nor did Defendants apprise Plaintiffs until May 20—just three days before the substantial completion deadline—of Defendants' (incorrect) view that the FE

---

[1] *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *2-3 (N.D. Cal. May 6, 2016) ("Interview notes and witness summaries drafted by counsel are subject to attorney work product protection . . . [and] the doctrine applies to investigators and consultants working for attorneys.").

[2] Like FE2's, none of the other the FE declarations actually disavow the allegations in the SAC in any material way; they merely qualify some of their prior statements or quibble with immaterial details—conspicuously ***not*** disputing the vast majority of allegations attributed to them. They also take issue with the manner in which Plaintiffs' investigator approached them—accusing her of deception—but Plaintiffs have proffered a declaration from the investigator directly refuting those accusations.

June 6, 2025
Page 2

declarations warranted a stay of the entire case. When Plaintiffs refused to agree to a stay, Defendants helped themselves to one anyway: staying mum as Plaintiffs completed substantial production by May 23 while making no attempt to meet their own substantial production obligations. Only after the fact did Defendants explain that not only were they refusing to produce any further documents pending resolution of their Rule 11 accusations, but they *were not even close to* completing production because they had unilaterally arrested their review and production efforts in anticipation of *seeking* a stay based on their *anticipated* Rule 11 motion. This culminated Defendants' long-running gambit to avoid producing discovery (that will confirm the FAT was not passed) by manufacturing a Rule 11 issue on the eve of their production deadline.[3]

As a threshold matter, Defendants overstate the factual bases for their Rule 11 allegations and far-reaching discovery demands. The FE declarations are barely repudiations at all, but even *if accepted as true*, they would not establish a Rule 11 violation because they are immaterial and a "witness's subsequent repudiation of those statements is not dispositive of whether the plaintiff's counsel met their Rule 11 obligations." *Moshell v. Sasol Ltd.*, 2021 WL 3174414, at *16 (S.D.N.Y. July 24, 2021) (collecting cases). Nonetheless, Plaintiffs have offered everything needed to test the FE declarations: (1) all communications between (a) the parties/counsel/investigators and (b) any of the FEs cited in the complaint; (2) expedited depositions of the "disavowing" FEs; and (3) limited waiver of work product protection to show the investigators' memos (or relevant portions thereof) memorializing the statements made by the "disavowing" FEs (which are the only investigation materials Plaintiffs used to draft the FE allegations in the complaint).[4] There is no "substantial need" to vitiate core work product protection for strategy communications or other internal documents among counsel and their investigators where the FEs "disavowals" can be tested through depositions while confronting them with documents reflecting (a) what they told Plaintiffs' investigators versus (b) what they told Defendants' counsel. *See Weston v. DocuSign, Inc.*, No. 22-cv-00824-VC (SK) (N.D. Cal.), Dkt. 234 (denying motion to compel work product in nearly identical circumstances). Immaterial and untested FE "disavowals" and Defendants' supposition of impropriety are not a blank check to run rampant through Plaintiffs' attorneys' inner sanctum and provide no basis to compel the disclosure of work product.[5]

Ironically, Defendants refuse to produce documents necessary to test their own Rule 11 allegations. *First*, Defendants refuse to produce their communications with FE2, the lynchpin of their Rule 11 gambit. Defendants assert *Upjohn* privilege, which does not apply to FE2's knowledge about his personal, off-the-clock interactions with the Plaintiffs' investigator occurring outside his employment duties.[6] Regardless, even if privileged, Defendants have placed the circumstances of FE2's disavowal squarely at issue: a quintessential sword-shield problem. The timeline of events suggests that FE2 initially refused to disavow the complaint when first contacted by Defendants'

---

[3] After conferring on this issue, the parties have since agreed to a retroactive four-week extension conditioned on Defendants' immediate resumption of rolling productions.

[4] Plaintiffs' agreement on the first category is contingent on Defendants' reciprocity, which they have refused.

[5] *See Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1099-100 (N.D. Cal. 2017) ("[The Court] would obviously need to give the plaintiffs an opportunity to test the declaration's accuracy through discovery."); *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175, at *2 (N.D. Cal. Feb. 6, 2015) ("The most that can be said about defendants' proffer is that the declarations submitted raise questions requiring further development.").

[6] *See Insight Glob., LLC v. Beacon Hill Staffing Grp., LLC*, 2018 WL 6573081, at *3 (N.D. Cal. Dec. 13, 2018). Plaintiffs are continuing to meet and confer with Defendants about these documents and reserve all rights.

counsel, but he later changed his tune after Enovix hired him. Given Defendants' assertion that his declaration is a "case-dispositive concern," Plaintiffs are entitled to test its accuracy and whether it was cajoled.[7] *Second*, because Defendants still have not produced most of their documents, FE depositions will be fruitless at this stage because Plaintiffs cannot use critical documents to test whether their statements to Plaintiffs' investigators or subsequent "disavowals" better reflect the actual truth.[8]

Defendants' request to compel further production of protected work product should be denied.

Very truly yours,

Lawrence M. Rolnick

---

[7] *See Sandisk*, 227 F. Supp. 3d at 1099-100.

[8] *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *4–5 (C.D. Cal. July 17, 2024) (discounting utility of FE depositions "that took place very early in the action and without the benefit of discovery").