# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION | Civil Action No. 3:23-cv-00071-SI<br><br>CLASS ACTION |

**DECLARATION OF** ████████████

I, ██████████, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am currently employed as a Commodity Manager for Enovix in China.  I started this position in November 2024.

2. I have reviewed the Second Amended Complaint ("Complaint") in the above-captioned action and understand that I have been identified as the former employee designated as "FE2" in the Complaint.  In particular, I have reviewed the allegations apparently attributed to me in the Complaint, at paragraphs 51, 100, 101, 104, 112, and 124.

3. Plaintiffs' counsel attributed these allegations to me without my knowledge or consent.

4. Prior to speaking with counsel for Enovix on August 29, 2024 and again on December 2, 2024, I had never seen the Complaint and did not know that there was a securities fraud case against Enovix.

5. Prior to speaking with counsel for Enovix , I never spoke with any individual about Enovix who identified themselves as a lawyer, working with a lawyer, or who explained that their purpose was to investigate potential legal claims against the company.

6. Prior to speaking with counsel for Enovix, I had also never spoken with anyone about Enovix who represented that their purpose was to gather information generally on my time at the company.

7. When I spoke with Enovix counsel on December 2, 2024, I was surprised and concerned to learn that information attributed to me had been used in a legal complaint against Enovix.  Prior to being so informed by counsel for Enovix, I was not aware that information attributed to me had been used in such a way.

8. The only person outside of Enovix employees, friends, or family who I have spoken to about anything related to Enovix was a person who presented himself as an industry consultant working for customers who were interested in doing business with Yinghe. After our conversation, I told him that he did not have my consent to share my statements, declined a consulting fee that he offered me, and made clear that I would be upset if I later learned my statements had been used without permission.

9. Had I known that any information that I purportedly shared during any discussion was going to be used in a legal complaint against Enovix, including for allegations of securities fraud, I would not have participated.

10. Furthermore, some of the allegations attributed to me in the Complaint are incorrect or taken out of context.

11. Paragraph 51 alleges that I am a Former Employee of Enovix and that I worked as a Project Manager for Enovix from September 2020 to early 2024. This is inaccurate. I have been employed as a full-time Enovix employee since November 2024. Beginning in August 2020 and during the time period referenced in the Complaint, I was employed by Rongcheer Industrial Technology (Suzhou) Co., Ltd., working as a third-party contractor on Enovix projects.

12. Paragraph 100 alleges that I explained that the equipment that Enovix had ordered from Yinghe "did not pass the FAT."

13. This is inaccurate. The FAT process incorporates many standards, and it was my responsibility to put my observations of the equipment on the FAT checklist. Someone else then assigned "pass," "fail," or "conditionally pass," ratings for each individual standard evaluated in the FAT based on those observations. I did not decide whether the Yinghe equipment altogether "passed" or "failed" the FAT for shipping and milestone payment purposes, and I do not know who did. It would be more accurate to say the equipment "conditionally passed the FAT."

14. Paragraph 104 again alleges that I described the Yinghe equipment as having "failed" the FAT or having "never passed the FAT requirements."

15. Paragraph 104 is inaccurate for reasons similar to those for Paragraph 100. Again, it is more accurate to say that the equipment "conditionally passed the FAT."

16. Furthermore, in my experience, it is common for equipment to have a mix of "pass," "fail," and "conditional pass" ratings when undergoing the FAT. This is particularly true for unique, first-generation equipment like the kind that Enovix ordered from Yinghe in 2020.

2

17. Paragraph 112 alleges that I shared information regarding Enovix and Yinghe's negotiations over financial assistance for Yinghe's engineers to go to Enovix's Fremont facility to provide SAT services.

18. I was not part of the negotiations between Yinghe and Enovix regarding the expenses of Yinghe engineers in California.

19. Paragraph 124 alleges that I shared information regarding the equipment's ability to meet the SAT requirements.

20. I was not involved with the SAT for the equipment and this allegation is only my speculation. After the equipment left Yinghe and was shipped to Fremont, I returned to Rongcheer until Enovix hired me directly as an independent contractor in August of 2021 to work on projects unrelated to the Yinghe equipment. I only heard about updates on the Yinghe equipment and the SAT from other people.

21. I have only visited the Fremont, California facility once, in August of 2023. Prior to that time, I had never personally seen the Yinghe equipment in Enovix's Fremont facility.

22. To the extent the allegations attributed to me in the Complaint are used to suggest that Enovix lied to investors about the status of Fab-1, that suggestion is false. While I was overseeing the production and testing of Enovix Fab-1 equipment at Yinghe in 2021 as a third-party contractor, my impression was that Enovix management believed Fab-1 would reach the output goals the company set for it.

23. During this time, I also believed that Fab-1 could reach the output goals the company set for it. Everyone I interacted with was working as hard as they could to have the equipment meet the required standards, and the equipment ultimately did function. No technical challenges experienced with the Fab-1 equipment struck me as out of the ordinary for a startup engaged in the process of developing a novel and complex production line.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.



Executed on: March 17th, 2025 in Shenzhen, People's Republic of China.

3