QUINN EMANUEL URQUHART & SULLIVAN, LLP
Emily C. Kapur (Cal. Bar No. 306724)
emilykapur@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

Michael Ethan Liftik (Cal. Bar No. 232430)
michaelliftik@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Andrew J. Rossman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke,*
*Thurman J. Rodgers, Emmanuel T. Hernandez, John D.*
*McCranie, Betsy Atkins, and Gregory Reichow*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION | Case No. 23-cv-00071-SI<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Judge: Hon. Susan Illston<br><br>Hearing Date: August 15, 2025<br><br>Hearing Time: 10:00 AM |

Case No. 23-cv-00071-SI

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

BACKGROUND.......................................................................................................................3

      A.     Enovix, Its Proprietary Technology, And Fab-1 ........................................3

      B.     All But Three Alleged Misstatements Are Dismissed ...............................5

LEGAL STANDARD ..............................................................................................................8

ARGUMENT ...........................................................................................................................10

I.     STATEMENT 6 DOES NOT ADDRESS THE YINGHE EQUIPMENT .........................11

II.    STATEMENT 7 IS BOTH INACTIONABLE AND NOT FALSE....................................13

      A.     Statement 7 Is Inactionable Puffery As A Matter Of Law .......................13

      B.     Statement 7 Does Not Concern FAT Of The Yinghe Equipment............14

III.   PLAINTIFFS DO NOT PLEAD SCIENTER AS TO STATEMENTS 6 AND 7...............16

      A.     Plaintiffs Fail To Plead Scienter For Statement 6 ....................................16

      B.     Plaintiffs Fail To Plead Scienter For Statement 7 ....................................17

IV.   CONCLUSION .......................................................................................................................17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ............................................................ 3

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)............................................................................... 14

*In re eHealth Inc. Sec. Litig.*,
2023 WL 3951178 (N.D. Cal. June 12, 2023) ........................................................ 8

*Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
353 F.3d 1125 (9th Cir. 2004)................................................................................. 9

*Fadia v. FireEye, Inc.*,
2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)........................................................ 17

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009).................................................................................. 9

*Geffon v. Micrion Corp.*,
249 F.3d 29 (1st Cir. 2001) ................................................................................... 17

*In re GPC Biotech AG Sec. Litig.*,
2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009)........................................................ 14

*In re Intel Corp. Sec. Litig.*,
2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ....................................................... 10

*Jaszczyszyn v. SunPower Corp.*,
2024 WL 3463348 (N.D. Cal. July 17, 2024) .............................................. 9, 10, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)................................................................................. 10

*Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*,
2014 WL 12967357 (C.D. Cal. Oct. 14, 2014) ...................................................... 10

*Kusnier v. Virgin Galactic Holdings, Inc.*,
639 F. Supp. 3d 350 (E.D.N.Y. 2022).................................................................... 14

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022).................................................................................. 13

*In re NVE Corp. Sec. Litig.*,
551 F. Supp. 2d 871 (D. Minn. 2007) .................................................................... 14

*Sam Horse Corp. v. TQL Trading Inc.*,
2014 WL 4656433 (C.D. Cal. Sept. 17, 2014)......................................................................10

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) .................................................................2, 9, 10, 13

*Sigman v. Nuscale Power Corp.*,
2025 WL 1455432 (D. Or. May 21, 2025)..............................................................................14

*Sneed v. AcelRx Pharms., Inc.*,
2023 WL 4412164 (N.D. Cal. July 7, 2023) ...........................................................................9

*Sohovich v. Avalara, Inc.*,
2025 WL 957895 (9th Cir. Mar. 31, 2025) .............................................................................14

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
97 F.4th 634 (9th Cir. 2024)................................................................................10, 13, 16

*In re Syntex Corp. Sec. Litig.*,
855 F.Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)................................14

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
83 F.4th 514 (6th Cir. 2023)....................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................9, 16, 17

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship
LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) ..............................................................14

*Webb v. Trader Joe's*,
999 F.3d 1196 (9th Cir. 2021)....................................................................................9

*Weston Family P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022)..................................................................................8, 9

## Rules & Statutes

Fed. R. Civ. P. 9(b)...............................................................................................1, 9

Fed. R. Civ. P. 12(c) .........................................................................................1, 9, 10

Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)..........................................9, 16, 17

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 15, 2025, at 10:00 AM, before The Honorable Susan Ilston, United States District Court, San Francisco Courthouse, Courtroom 1, at 450 Golden Gate Avenue, San Francisco, CA, Defendants Enovix Corporation, Harrold Rust, Steffen Pietzke, Thurman J. Rodgers, Emmanuel T. Hernandez, John D. McCranie, Betsy Atkins, and Gregory Reichow ("Defendants") will move for an order entering partial judgment on the pleadings that, as a matter of law, Plaintiff's Second Amended Complaint, Dkt. 102 ("Complaint") fails to state a claim, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) et seq., and Fed. R. Civ. P. 9(b) and 12(c) with respect to two of three remaining at-issue statements ("Motion"). This Motion is based on this Notice of Motion and Motion; Defendant's Memorandum of Points and Authorities, incorporated herein; Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference; the Declaration of Emily C. Kapur and exhibits thereto ("Kapur Declaration"); and other matters before the Court.

**STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(a)(3))**

Whether the allegations in the Complaint that survived the Court's Rule 12(b)(6) dismissal order relating to two of three remaining at-issue statements are sufficient to prove material falsity and scienter as necessary to maintain a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

**MEMORANDUM OF POINTS AND AUTHORITIES**

This case narrowly survived Defendants' motion to dismiss. Only three of twelve statements remain, all tied to a single targeted theory. Discovery would show that none of those three statements was false, let alone knowingly and materially false. But proving as much would be a waste of resources. Two of the three remaining statements cannot survive Rule 12(c) scrutiny due to fundamental shortcomings Defendants' prior counsel failed to raise to the Court's attention in the motion to dismiss. Defendants thus bring this motion to narrow the case for the Court and the parties, at which point targeted discovery can resolve the single remaining statement.

Plaintiffs' core theory of securities fraud is that Defendants knowingly made misleading statements that concealed that equipment supplied by a Chinese vendor, Shenzhen Yinghe

Technology Co., Ltd. ("Yinghe"), for the first production line at Enovix's Fab-1 battery manufacturing facility in Fremont, California, did not pass Enovix's rigorous Factory Acceptance Testing ("FAT") at Yinghe's factory in China.

Relying exclusively upon Plaintiffs' allegations concerning the purported failure of FAT of the Yinghe equipment, this Court denied Defendants' motion to dismiss the Second Amended Complaint as to three statements only:  Statement 4, from Enovix's August 10, 2021 Letter to Our Shareholders, that FAT was "already performed"; Statement 6, from Enovix CEO Harrold Rust's answer to an analyst's question on Enovix's August 10, 2021 earnings call that there were "no red flags" from the testing of certain equipment; and Statement 7, from Mr. Rust's comments during a September 8-10, 2021 industry conference, that "qualifying … was going on quite well."

But by selectively omitting portions of those statements themselves—as well as the context in which they were made—Plaintiffs fundamentally changed their meaning and misrepresented their contents.  In fact, Statement 6 **does not address the Yinghe equipment**, and Statement 7 **does not address FAT**.  In other words, two of the three remaining statements are entirely unrelated to Plaintiffs' theory of fraud and alleged reasons for falsity, rendering them ripe for judgment on the pleadings.  This type of deceptive pleading is precisely why securities fraud plaintiffs "may not simply cherry-pick[] portions of Defendants' statements and ignor[e] other portions, but must instead account for the entirety of [the statements] on which they rely."  *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020).

Taking Statements 6 and 7 in full, the Complaint pleads no particularized facts as to why those statements are false.  For example, Statement 6—that there were "no red flags"—responded to a question explicitly regarding **proprietary equipment from U.S.-based vendors**.  Statement 6 simply did not address the Yinghe equipment, which Enovix disclosed was not proprietary equipment from the U.S., but rather industry standard equipment from China.  This true meaning is clear from language that Plaintiffs strategically omitted from the Complaint.  Further, Statement 7—that "qualifying" was "going on quite well"—referred only to **post-installation** equipment testing at Enovix's facilities, or equipment testing **after** FAT had been completed, which is clear from language immediately preceding Statement 7 that Plaintiffs also omitted.  But Plaintiffs survived Defendants'

prior motion to dismiss solely based on their allegations that the *Yinghe equipment* failed *FAT*; Plaintiffs have set forth no particularized allegations that there were any issues with further, post-installation testing of the Fab-1 equipment.  Considering the statements' actual meaning, Plaintiffs also cannot establish scienter as to Statements 6 or 7.  Because this Court is entitled to consider the full contents and context of Statements 6 and 7, and those statements either do not relate to Yinghe or do not relate to FAT, Plaintiffs cannot sustain securities fraud claims based on those statements and thus should not be permitted to proceed through discovery on a theory of fraud that is untenable on the face of their Complaint.

Defendants' Motion should be granted.

**BACKGROUND**

**A.     Enovix, Its Proprietary Technology, And Fab-1**

Enovix has spent almost two decades studying and learning to manufacture cutting-edge batteries.  Enovix first began "developing its technology," which involves using "3D battery cell architecture" to "construct" a new and better lithium-ion battery, in 2007.  ¶¶ 74-75.[1]  Developing this novel technology cost nearly $240 million dollars.  ¶ 76.[2]  What was unique about Enovix's approach was its "proprietary laser patterning, stacking, and constraining processes that uniquely manage the expansion of a 100% active silicon anode, replacing the traditional winding processes found in conventional Li-ion cell manufacturing."  Ex. C (Aug. 10, 2021 Enovix Shareholder Letter) at -3.[3]  After 13 years of work on these processes and the science behind them, in 2020 Enovix began procuring custom manufacturing equipment for its first production factory, called Fab-1.  ¶ 5.

Enovix's Fab-1 facility included four zones where "different parts of the battery manufacturing process would take place: Electrode Fabrication, Assembly, Packaging, and Testing

---

[1]   References to "¶ __" are to the Complaint.  All "Ex. _" references are to the Kapur Declaration. All emphasis is added and quotations and citations omitted unless otherwise noted.

[2]   *See also* Ex. A (Feb. 22, 2021 Investor Presentation) at 10 (discussed and quoted in ¶¶ 126-130) (developing Enovix's novel technology took "R&D 13 years (starting in 2007) & $239 million").

[3]   Plaintiffs allege as false certain statements from Enovix's August 10, 2021 Shareholder Letter.  It is therefore incorporated by reference, in full.  *See In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *5 (N.D. Cal. June 2, 2020) (finding incorporated by reference documents "Plaintiff claim[ed] … contained misleading statements, and [] therefore form[ed] the basis of plaintiff's claims").

and Formation," ¶ 96.  Enovix's "proprietary laser patterning, stacking, and constraining processes" came into play on the inside of the battery architecture.  Ex. C (Aug. 10, 2021 Shareholder Letter) at -3; *see* Ex. A (Feb. 22, 2021 Investor Presentation) at 37-38; Ex. B (June Proxy Statement) at -192-94.[4]  By contrast, other aspects of the battery production process were relatively standard as Enovix's goal was to package the proprietary insides of its batteries into a product compatible with a variety of customer needs.  Ex. B (June Proxy Statement) at -194.[5]

To procure the equipment for Fab-1, Enovix contracted with multiple vendors. ¶ 5.  Enovix sourced its "Enovix-designed ***proprietary equipment***," for the inside of the battery architecture, "from ***tier one U.S.-based*** factory automation vendors."  Ex. C (Aug. 10, 2021 Shareholder Letter) at -3.  By contrast, Enovix sourced "standard battery industry production equipment," such as for packaging, from third-party vendors from all over the globe.  *Id.*[6]  Enovix contracted with Yinghe—a manufacturing company in China—to provide equipment for Fab-1.  ¶¶ 5, 97.  In late April 2021, Enovix flew "over 60 tons of ***manufacturing equipment***" from Yinghe in China to Enovix's Fab-1 facility in Fremont.  ¶¶ 106, 140.

Enovix's Equipment Procurement Review ("EPR") process governs the Company's procurement of equipment from vendors.  ¶ 6.  As part of the EPR process for Fab-1, Factory Acceptance Testing ("FAT") was undertaken at the vendor's factory prior to shipping procured

---

[4]  The Court has already found this document "proper to consider."  MTD Order at 14-15 (finding February 22, 2021 investor presentation was "reference[d] extensively throughout" the Complaint).

[5]  The Court has already found this document "proper to consider."  MTD Order at 14-15 & n. 3 (noting June 2021 Proxy Statement was "reference[d] extensively throughout the SAC" and considering Proxy Statement as filed with SEC at www.sec.gov/Archives/edgar/data/1828318/000110465921085122/tm217682-15_424b3.htm).

[6]  *See also* Ex. A (Feb. 22, 2021 Investor Presentation) at 37-38 (illustrating that "industry standard" equipment comprised 70% of the line, while proprietary Enovix technology comprised 30%); Ex. B (June Proxy Statement), at -194 ("Enovix has designed proprietary tools, produced for Enovix by precision automated equipment suppliers, which incorporate patented methods and processes to achieve precise laser patterning and high-speed roll-to-stack cell assembly. … An Enovix 3D Silicon™ Lithium-ion battery uses the same battery packaging and formation process as a conventional Li-ion battery…."); *id.* at 192 (noting that Enovix's approach use[s] "conventional Li-ion battery cell manufacturing equipment on approximately 70% of the manufacturing process, while using Enovix's own proprietary tools on the approximately 30% of the processes focused on laser patterning and stacking of electrodes.").

ENOVIX'S NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

equipment to Fab-1 in California.  ¶¶ 7, 86.  After equipment arrived and was installed in Fremont, Enovix began "qualifying [the] production line."  ¶ 138.  The "first step" in this qualification process was Site Acceptance Testing ("SAT").  ¶ 138.  SAT marked the first step of "qualify[ing]" the equipment because Enovix's customers required Enovix to "provide them with batteries manufactured on the same production line that would be used to fill the order."  ¶ 83.  The next step was "characterization," which involved "tool and process bring-up."  Ex. C (Aug. 10, 2021 Shareholder Letter) at -3.

### B.    All But Three Alleged Misstatements Are Dismissed

In January 2024, this Court dismissed in its entirety Plaintiffs' First Amended Complaint (Dkt. No. 84, "FAC"), which alleged that Enovix had waived FAT and SAT of the Yinghe equipment for certain portions of Fab-1.  Dkt. No. 97 at 15.  A month and a half later, in March 2024, Plaintiffs filed the operative Complaint in this case, which alleged twelve statements to be false.  Dkt. No. 102. Defendants moved to dismiss the Complaint on May 3, 2024, putting forth none of the arguments herein.  Dkt. No. 105.  On July 23, 2024, this Court dismissed all but three alleged misstatements: Statement 4 (from Enovix's August 10, 2021 Shareholder Letter), Statement 6 (from Mr. Rust's response to a Colliers analyst's question on Enovix's earnings call the same day), and Statement 7 (from Mr. Rust's remarks at a September 8-10, 2021 TD Cowen conference).  Dkt. No. 116 ("MTD Order") at 24.

But the Complaint selectively excerpted each of these statements, omitting portions of each. When read in full, each remaining statement provides crucial detail regarding Enovix's manufacturing process which is directly relevant to the alleged misstatements.

**Statement 4 (August 10, 2021 Letter to Our Shareholders)**:  Plaintiffs *omitted* Enovix's disclosure—included and highlighted below—that all of its "proprietary equipment" was sourced from "tier one U.S.-based automation vendors" and was distinguishable from industry standard manufacturing equipment:

| Statement 4 (as alleged), ¶ 138 | Aug. 10, 2021 Enovix Letter to Our Shareholders (full text) |
|---|---|
| In the quarter we were able to install and begin qualifying our first production line at our headquarters in Fremont.<br><br>… | In the quarter we were able to install and begin qualifying our first production line at our headquarters in Fremont.<br><br>==This line includes a combination of Enovix-designed **proprietary equipment from tier one U.S.-based factory automation vendors as well as standard battery industry production equipment**. This equipment incorporates our proprietary laser patterning, stacking, and constraining processes that uniquely manage the expansion of a 100% active silicon anode, replacing the traditional winding processes found in conventional Li-ion cell manufacturing.== |
| With the equipment for Line 1 installed, our factory is now undergoing qualification. The first step in this process is a site acceptance test to confirm the individual pieces of equipment are meeting performance requirements. This follows factory acceptance testing already performed at the vendor's facility before taking delivery. | With the equipment for Line 1 installed, our factory is now undergoing qualification. The first step in this process is a site acceptance test to confirm the individual pieces of equipment are meeting performance requirements. This follows factory acceptance testing already performed at the vendor's facility before taking delivery. |

¶ 138; Ex. C (Aug. 10 2021 Shareholder Letter) at -3.

**Statement 6 (August 10, 2021 Enovix Earnings Call)**: Plaintiffs *omitted both* the analyst's question and nearly all of the context from Mr. Rust's response—included and highlighted below—which facially concerned only the testing of Fab-1's "*proprietary equipment*":

| Statement 6 (as alleged), ¶ 142 | Aug. 10, 2021 Enovix Earnings Call Transcript (full text) |
|---|---|
| During the same earnings call, Rust responded to a question from an analyst from Colliers Securities about the Company's "latest capacity test" for Fab-1 stating: | *Derek Soderberg,* **Analyst, Colliers Securities LLC:** Got it. So, it sounds like you guys haven't been able to do sort of a full dry run of production yet, but I guess, you've probably been testing you know the individual steps on the production line I guess as you look at the latest capacity test, how is *your proprietary equipment* sort of stacking up against your expectations on capacity. You know better or worse any detail around that would be great.<br><br>**Mr. Rust**: Yeah, I think we're pleased overall in terms of the equipment and its ability to do its intended function. You know we actually started working on the equipment probably two years ago in some ways. And so, there's been a lot of work that's gone do with a lot of proof of concept work some pilot tools that we did. So, we had pretty high confidence going in. And I think in general the tools that perform to specifications you know |
| "We have a pretty rigorous set of both factory and site acceptance things we have to go through and *I would say there's no red flags there.*" | [W]e have a pretty rigorous set of both factory and site acceptance things we have to go through. And you know *I would say there's no red flags there.*<br><br>We're pretty excited about the tools being able to deliver to the intended specs. And you know it's a real significant improvement from as you mentioned you know stuff in R&D is a bit more manual in nature. And I think the level of quality of the parts we're going to make is going to be quite high out of this new line. So, we're pretty excited about it. |

¶ 142; Ex. D (Aug. 10, 2021 Earnings Call Transcript) at 6-7.

**Statement 7 (September 8-10, 2021 TD Cowen Conference)**: Plaintiffs *omitted* sentences—*previously included in the FAC*—and included and highlighted below—making clear that

Mr. Rust's statement that "qualifying" was "going on quite well" solely addressed *post-installation testing*, *not FAT*:

| Statement 7 (as alleged), ¶ 144 | FAC ¶ 116 |
|---|---|
| | … we started ordering equipment for this factory in Fremont. We've got a roughly 50,000 square foot building here where we're putting on our first production lines *that equipment has been all installed for the last several months*. The last pieces came in. |
| We're in the middle of qualifying, which means basically testing out of each piece of equipment, making sure it's operating as optimum operating point, making sure we understand where the process windows are. That's going on quite well. | We're in the middle of qualifying, which means basically testing out of each piece of equipment, making sure it's operating as optimum operating point, making sure we understand where the process windows are. That's going on quite well. |
| | We expect that work will take us into the fourth quarter, to finish that work. |

FAC ¶ 116; ¶ 144; Ex. E (Sept. 10, 2021 Cowen Conference Tr.) at 5.

The Complaint alleged that Statements 6 and 7 were false and misleading based on allegations regarding the FAT of the Yinghe equipment. ¶ 145. And this Court relied exclusively on the Complaint's allegations regarding the FAT of the equipment from Yinghe in finding Statement 7 actionable. MTD Order at 12 (quoting ¶ 144); *id.* at 20-22.[7]

## LEGAL STANDARD

To state a claim for securities fraud, Plaintiffs must allege particularized facts showing (1) a material misrepresentation or omission of fact; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Weston Family*

---

[7] Although the filing of Defendant's Motion triggers an automatic stay of case deadlines pursuant to the PSLRA, *In re eHealth Inc. Sec. Litig.*, 2023 WL 3951178, at *3 (N.D. Cal. June 12, 2023) ("[A] party seeking a motion for judgment on the pleadings is entitled to a PSLRA automatic stay."), the discovery sought in Defendants' pending letter motion to compel, Dkt. No. 164, remains centrally relevant to Plaintiffs' Section 10(b) claim premised on Statement 4. Per the Parties' prior agreement, Defendants will meet their deadline for substantial completion of document production on June 24, 2025.

*P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). All elements must satisfy the "heightened," "exacting" pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 319-21 (2007). "[U]nder the PSLRA's particularity requirements and Federal Rule of Civil Procedure 9(b), allegations of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Weston*, 29 F.4th at 619 (citing 15 U.S.C. § 78u-4(b)(1)). The Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *2 (N.D. Cal. July 7, 2023). In alleging claims, plaintiffs "may not simply 'cherry-pick[ ] portions of Defendants' statements and ignor[e] other portions,' but must instead 'account for the entirety of [the statements] on which they rely.'" *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020); *see also Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *3 (N.D. Cal. July 17, 2024) ("[N]othing in *Khoja* prevents this Court from analyzing an alleged false statement in context" and "additional context surrounding [such] statements … matters in the Court's assessment of how a reasonable investor would consider the allegedly false statements").[8]

A Federal Rule of Civil Procedure Rule 12(c) motion is properly granted where taking "all factual allegations in the [pleading] as true," together with "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice," *Webb v. Trader Joe's*, 999 F.3d 1196, 1201 (9th Cir. 2021), "the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004) (affirming grant of judgment on the pleadings where complaint failed to meet PSLRA pleading standards).

---

[8]   As explained in Defendants' Request for Judicial Notice, this Court has already found Exhibit A (Feb. 22, 2021 Investor Presentation) and Exhibit B (June Proxy Statement) incorporated by reference and properly considered. MTD Order at 14-15. Exhibits C (Aug. 10, 2021 Shareholder Letter), D (Aug. 10, 2021 Earnings Call Tr.), and E (Sept. 10, 2021 Cowen Conference Tr.) are incorporated by reference for the same reasons: they are the sources of alleged misstatements and are "reference[d] extensively throughout the SAC." MTD Order at 15.

"[C]onclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings." *Sam Horse Corp. v. TQL Trading Inc.*, 2014 WL 4656433, at *2 (C.D. Cal. Sept. 17, 2014). And though a "Rule 12(c) motion for judgment on the pleadings raises the same legal questions as a 12(b)(6) motion to dismiss in that both motions test the formal sufficiency of a statement of claim for relief," *Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, 2014 WL 12967357, at *3 (C.D. Cal. Oct. 14, 2014), a Rule 12(c) motion raising "[f]ailure to state a claim" may be brought at any time before a trial date is set and may raise any issues not raised in a previous motion. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(h)(1)-(2).

## ARGUMENT

Alleged misstatements must be read "in [their] proper context" in assessing whether they are materially false and misleading in violation of Section 10(b) of the Exchange Act. *SEB*, 485 F. Supp. 3d at 1126-28 (considering "the entirety of the statements on which [Plaintiffs] rely" and what "question[s]" statements were "responding to"). "Such context matters in the Court's assessment of how a reasonable investor would consider the allegedly false statements," *Jaszczyszyn*, 2024 WL 3463348, at *3, because Plaintiffs may otherwise "select[] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). *See also In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *10 (N.D. Cal. Mar. 29, 2019) (plaintiff carries burden of "demonstrat[ing] that [the statements], when ***read in light of all the information then available*** to the market conveyed a false or misleading impression.").

Here, Plaintiffs selectively omitted relevant portions of Statements 6 and 7 that "doom[ed] their claims," *Khoja*, 899 F.3d at 1002, and ultimately show that these statements could not have been materially false or misleading. Read in full and "[w]hen viewed in context," *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 642 (9th Cir. 2024), Statement 6 did not concern the Yinghe equipment ***at all***, and Statement 7 did not concern ***FAT***, let alone FAT of the Yinghe equipment. In any case, Statement 7—that "qualifying … was going on quite well"—is precisely the sort of vague statement of corporate optimism that courts uniformly find constitute immaterial and inactionable puffery. And Plaintiffs cannot overcome the more compelling, non-culpable inference

that Mr. Rust believed he was not addressing the FAT of the Yinghe equipment in Statement 6 or Statement 7.

## I.    STATEMENT 6 DOES NOT ADDRESS THE YINGHE EQUIPMENT

Plaintiffs allege that Statement 6 was false because Defendants did not disclose purported failures of FAT of the Yinghe equipment and because Enovix waived successful completion of FAT before shipping the Yinghe equipment to Enovix's Fab-1 facility in Fremont, California.  ¶ 143. Crucially, Plaintiffs offer no allegations about FAT failures with respect to other portions of the Fab-1 equipment, *only* allegations about FAT failures in connection with the Yinghe-supplied equipment. This Court found that Plaintiffs adequately alleged Statement 6 was false because "if the equipment never passed the FAT, it was false and misleading for Rust to state that there were 'no red flags.'" MTD Order at 12.

But because of Plaintiffs' omissions, the Court was unaware when evaluating Defendants' Motion to Dismiss that Statement 6 *does not concern the Yinghe equipment at all*.  To the contrary, Mr. Rust's statement during Enovix's August 10, 2021 Earnings Call that there were "no red flags there" discussed Enovix's "*proprietary* equipment" from ***U.S. based vendors that was used in another portion of Fab-1***—not the ***industry standard*** equipment sourced from ***Yinghe***.

Indeed, Mr. Rust's statement in Statement 6 was made in response to an analyst question specifically concerning Enovix's testing of its "***proprietary equipment***":

> **Derek Soderberg, Analyst, Colliers Securities LLC**: Got it. So, it sounds like you guys haven't been able to do sort of a full dry run of production yet, but I guess, you've probably been testing you know the individual steps on the production line I guess as you look at the latest capacity test, ***how is your proprietary equipment sort of stacking up against your expectations*** on capacity.  You know better or worse any detail around that would be great.

Mr. Rust responded:

> Yeah, I think we're pleased overall in terms of the equipment and its ability to do its intended function. ***You know we actually started working on the equipment probably two years ago in some ways.*** And so, there's been a lot of work that's gone do with a lot of proof of concept work some pilot tools that we did. So, we had pretty high confidence going in. ***And I think in general the tools that perform to specifications you know we have a pretty rigorous set of both factor [and site] acceptance things we have to go through. And you know I would say there's no red flags there.*** [] And you know it's a

real significant improvement from as you mentioned you know stuff in R&D is a bit more manual in nature.

Ex. D (Aug. 10, 2021 Earnings Call Transcript) at 6-7; ¶ 142 (omitting analyst question and nearly all of Mr. Rust's response, *supra* at 7).

Enovix clearly disclosed that its "proprietary equipment" ***did not*** include the Yinghe equipment:  The definition of "proprietary equipment" was disclosed in Enovix's August 10, 2021 Shareholder Letter, which was filed the same day as Enovix's second quarter earnings call, repeatedly referenced during the earnings call, and relied on in Plaintiffs' Complaint as the source of Statement 4.[9]  Ex. C (Aug. 10, 2021 Shareholder Letter) at -3 (selectively quoted in ¶ 138).  Plaintiffs, however, obfuscated the meaning of this term by ***deliberately omitting*** the description of "proprietary equipment" from ¶ 138 of the Complaint (Statement 4), as exhibited *supra*.  In particular, the full text of Statement 4 explicitly states that Enovix's "first production line . . . includes a combination of Enovix-designed ***proprietary equipment from tier one U.S.-based factory automation vendors as well as standard battery industry production equipment***" which "incorporates our proprietary laser patterning, stacking, and constraining processes[.]"  *Id.*

Enovix's earlier public statements further elucidate the distinction between the portions of Fab-1 using "proprietary equipment" and those using "standard equipment," such as that supplied by Yinghe:  They distinguished the "***conventional*** Li-ion battery cell ***manufacturing*** equipment" that makes up "approximately 70% of [Fab-1]" from "Enovix's own ***proprietary tools***" that make up the remaining "30% … focused on laser patterning and stacking of electrodes." Ex. B (June Proxy Statement) at -192; *see also* Ex. A (Feb. 22, 2021 Investor Presentation) at 37-38 (quoted at ¶¶ 126-130) (distinguishing "industry standard" equipment from "Enovix" technology).  It is unsurprising that the Colliers analyst was particularly interested in the performance of the 30% of Fab-1 which

---

[9]  Indeed, Enovix began its August 10, 2021 earnings call by referring investors directly to Enovix's Shareholder Letter, and Mr. Rust stated that he would be "touch[ing] on the highlights of our shareholder letter which discusses in depth our results, strategy, progress around validation of production and supply chain."  Ex. D (Aug. 10, 2021 Earnings Call Transcript) at 3; *id.* at 2 (opening remarks from Enovix's Vice President of Investor Relations "remind[ing attendees] that we released a shareholder letter after the market closed today").

ENOVIX'S NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

was "proprietary equipment" that Enovix had spent 13 years and nearly $240 million dollars developing.  ¶¶ 74-76.

Plaintiff's theory of falsity is thus "illogical"—and "implausible as a matter of law"—"because it selectively ignores [Mr. Rust's] statement and the surrounding context," namely, that Mr. Rust "was not making a blanket statement about the state of [all Fab-1 equipment, including industry standard equipment from Yinghe] but was instead responding to a specific question about [Enovix's proprietary equipment from U.S.-based vendors] specific[ally]."  *SEB*, 485 F. Supp. 3d at 1126; *see also Sorrento Therapeutics*, 97 F.4th at 637 (affirming dismissal where "in context, Defendants' representations were not false").  Indeed, the Complaint contains no allegations setting forth the "reasons why" Mr. Rust's statement that testing had not raised any "red flags" was materially false or misleading **as to the question it responded to**—that is, the status of testing of Enovix's proprietary equipment from U.S-based vendors.  *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (dismissing falsity allegations where "the complaint has failed to plead sufficient facts to provide context that would allow us to assess the alleged falsity of Nektar's statements.").  Judgment on the pleadings should be entered in Defendants' favor as to Statement 6.

## II.   STATEMENT 7 IS BOTH INACTIONABLE AND NOT FALSE

Plaintiffs allege Mr. Rust's September 10, 2021 statement at a TD Cowen industry conference that "[w]e're in the middle of qualifying … [t]hat's going on quite well" was false and misleading. ¶ 144.  This Court found that the Complaint adequately alleged the falsity of Statement 7 based on allegations that the Yinghe equipment "never passed the FAT."  MTD Order at 12.  But "going on quite well" is precisely the sort of vague statement of corporate optimism that courts have repeatedly rejected as inactionable puffery.  More fundamentally, as the full text of statements alleged as false in Plaintiffs' own Complaint makes clear, "qualifying"—the subject matter of Statement 7—**did not encompass FAT**, and instead began with SAT after installation.  ¶ 138.  Accordingly, judgment on the pleadings should also be entered in Defendants' favor as to Statement 7.

### A.   Statement 7 Is Inactionable Puffery As A Matter Of Law

Mr. Rust's statement that the "qualifying" of equipment was "going on quite well" is immaterial puffery and inactionable as a matter of law.  *See, e.g.*, *Sohovich v. Avalara, Inc.*, 2025 WL

-13-                                    Case No. 23-cv-00071-SI

ENOVIX'S NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

957895, at *2 (9th Cir. Mar. 31, 2025) (finding "doing well" statements were puffery despite arguments regarding accompanying "'numerically specific' figures"); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (statements such as "'products are doing very well'" are "non-actionable puffing") (quoting *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1096 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)); *Sigman v. Nuscale Power Corp.*, 2025 WL 1455432, at *10 (D. Or. May 21, 2025) ("statement[] that conversations with potential subscribers were 'going quite well'" was "inactionable statement[] of vague corporate optimism that would not mislead a reasonable investor"); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 373 (E.D.N.Y. 2022) ("Courts generally find that present tense statements of optimism describing things as 'going well' … and the like are puffery because they are too general to be relied upon.").

Particularly relevant here, courts often find that vague, general statements concerning new products and technology—like those at issue here—constitute inactionable puffery. *See, e.g.*, *In re GPC Biotech AG Sec. Litig.*, 2009 WL 5125130, at *6 (S.D.N.Y. Dec. 29, 2009) (describing representation that testing of "new and experimental" product "was going well" as "mere puffery"); *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 881-82 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) (statements about company's "progress on improving" new advertising product were sorts of "vaguely optimistic statements … understood by reasonable investors as puffery" because they "are not measurable"); *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 894 (D. Minn. 2007) (finding statements regarding new technology "so vague that they constitute puffery" and noting that such statements "must be viewed in light of the fact that [they addressed] an innovative and developing technology").

Statement 7 should be dismissed on this basis alone.

**B.      Statement 7 Does Not Concern FAT Of The Yinghe Equipment**

This Court found that Plaintiffs adequately alleged Statement 7—that "qualifying … [was] going on quite well"—was misleading based on Plaintiffs' allegations that the Yinghe equipment "ultimately never passed the FAT."  MTD Order at 12.  But Enovix's August 10, 2021 disclosures make clear that Mr. Rust's statement was not addressing ***FAT*** (which according to Plaintiffs' own allegations took place at the ***vendor's facilities***, ¶¶ 86, 88), but rather was addressing post-delivery

-14-

and post-installation "qualifying" of the equipment (which took place at **Enovix's facilities**) beginning with **SAT**. Plaintiffs do not—and cannot—plead with particularity why Statement 7 is false or misleading in connection with post-FAT qualifying.

Enovix's disclosures (quoted in Plaintiffs' Complaint) make clear that Mr. Rust's reference to "qualifying" the equipment referred to the work Enovix undertook **after** it installed equipment at Fab-1 and excluded FAT, which was conducted at the vendor's factory prior to delivery. As with Statement 6, Enovix explained what it meant in its August 10, 2021 Letter to Our Shareholders, on which Plaintiffs rely for Statement 4, and which stated:

> In the quarter we were able **to install and begin qualifying** our first production line at our headquarters in Fremont. …
>
> With the equipment for Line 1 **installed**, our factory is **now undergoing qualification**. The **first step in this process is a site acceptance test** to confirm the individual pieces of equipment are meeting performance requirements. This **follows factory acceptance testing already performed at the vendor's facility** before taking delivery.…

¶ 138 (Statement 4). Other of Plaintiffs' own allegations confirm the same: that "qualify[ing]" did not begin until equipment from Enovix's different equipment vendors arrived at Fab-1 and was installed and assembled into "the same production line that would be used to fill the [customers'] order[s]." ¶ 83. By contrast, "the FAT by definition is to be conducted **at the vendor's factory**, SAC ¶ 86," MTD Order at 11 (emphasis in original), and thus occurred prior to "qualifying."

Importantly, Plaintiffs materially altered how they pled Statement 7 between the FAC and the Complaint to **omit language reiterating that qualification only commenced following installation**, and thus did not include the FAT. *Compare* FAC ¶ 116 (including the portion of Mr. Rust's TD Cowen conference remarks that "[w]e've got a roughly 50,000 square foot building here where we're putting on our first production lines **that equipment has been all installed for the last several months**. The last pieces came in."), *with* ¶ 144 (omitting the same). Why they did so is now clear. In dismissing the FAC, this Court rejected as "conclusory at best," Dkt. No. 97 at 15, Plaintiffs' allegations that Statement 7 was false because Enovix had "failed to conduct the SAT," FAC ¶ 117. Plaintiffs then undertook to seek out additional statements from FEs. But Plaintiffs failed to secure any reliable accounts from FEs supporting that post-FAT qualification was not "going on quite well"

when Statement 7 was made. Plaintiffs thus needed to mischaracterize Mr. Rust's statement as encompassing FAT of the Yinghe equipment to survive Defendants' motion to dismiss. That effort should not succeed. Because "qualifying" begins *after* installation of equipment at Fab-1, ¶ 138, and FAT, "by definition is to be conducted at the *vendor's factory*," MTD Order at 11 (citing ¶ 86), Statement 7 regarding "qualifying" of the equipment did not refer to the FAT, nor could a reasonable investor have so understood.[10] *See Sorrento Therapeutics*, 97 F.4th at 640.

## III.   PLAINTIFFS DO NOT PLEAD SCIENTER AS TO STATEMENTS 6 AND 7

Because Plaintiffs omitted portions of Statements 6 and 7—and those statements were not false as a result—the Complaint cannot support an inference of an "intent to deceive, manipulate, or defraud" that is "cogent and at least as compelling as any opposing inference," as required under the PSLRA for those statements. *Tellabs*, 551 U.S. at 314, 324.

### A.   Plaintiffs Fail To Plead Scienter For Statement 6

The Complaint lacks any allegations that Mr. Rust was aware of any "red flags" related to testing of Enovix's ***proprietary equipment from U.S.-based vendors***. Plaintiffs cannot dispel the far more compelling inference that Mr. Rust believed he was answering a question about, and therefore solely addressing, the testing of Enovix's proprietary laser and other equipment from U.S.-based vendors—not the Yinghe packaging equipment—and was not aware of any, let alone "multiple, obvious red flags" from that testing. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 526, 533 (6th Cir. 2023) ("[T]he context of the question and answer makes an innocent inference of DiLucente's motivation for making the statement far more likely."); *see also Jaszczyszyn*, 2024 WL 3463348, at *3 (noting that "[s]uch context [surrounding the alleged misstatements] matters" because "'[t]he strength of an inference cannot be decided in a vacuum'") (quoting *Tellabs*, 551 U.S. at 323-24).

---

[10]   Plaintiffs set forth a handful of conclusory allegations concerning "later testing," ¶¶ 112-124, which are inadequate to state any claim as to the SAT and this Court thus did not credit or rely on them in its MTD Order. To the extent Plaintiffs seek now to rehabilitate those allegations, any such effort will fail.

The Complaint does not plead any particularized allegations regarding the status of testing of Enovix's proprietary equipment from U.S. vendors at this time—let alone plead allegations to suggest knowledge of any unalleged issues that rises to the "[p]ersuasive, effective, and cogent" allegations that the PSLRA requires. *Tellabs*, 551 U.S. at 323-24. And even if the Court were to conclude that a reasonable investor could have concluded Mr. Rust was addressing the Yinghe equipment, where a speaker has a "different interpretation [of particular] terminology" under which his statements were truthful, while a reasonable investor could interpret it in a way that would make it false and misleading, an inference that a statement or omission "was purposely deceptive" cannot be drawn. *Geffon v. Micrion Corp.*, 249 F.3d 29, 37 (1st Cir. 2001).

## B.   Plaintiffs Fail To Plead Scienter For Statement 7

Similarly, even if the Complaint established that Mr. Rust's September 10, 2021 statement was false when made because post-FAT "qualification" was not, in fact, "going on quite well," the Complaint does not give rise to a strong inference of scienter. *See Tellabs*, 551 U.S. at 314, 319-24; *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *16 (N.D. Cal. Nov. 14, 2016) (plaintiffs must allege "information about precisely what was said by the parties in these meetings, which facts the [d]efendants were exposed to, and why this exposure supports an inference of scienter").

Indeed, the Complaint lacks *any* particularized allegations that Mr. Rust, at the time Statement 7 was made, was aware post-FAT "qualification" was not "going on quite well"—let alone allegations supporting an inference of an "intent to deceive, manipulate, or defraud" that is "cogent and at least as compelling as any opposing inference," as required under the PSLRA. *Tellabs*, 551 U.S. at 314, 324. The Complaint does not overcome the "cogent" and far more "compelling" inference that Rust (accurately) believed qualification was progressing well, and did not view his comments regarding qualification as in any way referencing FAT. *Id.*

## IV.   CONCLUSION

For the above stated reasons, Defendants motion for partial judgment on the pleadings should be granted and Statements 6 and 7 should be dismissed with prejudice.

Dated:  June 23, 2025

By: */s/ Emily C. Kapur*

QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
Emily C. Kapur (306724)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: +1 650 801 5000
Facsimile: +1 650 801 5100
Email: emilykapur@quinnemanuel.com

Michael Liftik (232430)
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: +1 202 538 8000
Facsimile: +1 202 538-8100
Email: michaelliftik@quinnemanuel.com

Andrew J. Rossman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com

*Attorneys for Defendants*

-18-                                    Case No. 23-cv-00071-SI

ENOVIX'S NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS