QUINN EMANUEL URQUHART & SULLIVAN, LLP
Emily C. Kapur (Cal. Bar No. 306724)
emilykapur@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

Michael Ethan Liftik (Cal. Bar No. 232430)
michaelliftik@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Andrew J. Rossman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100

Attorneys for Defendants
*Enovix Corporation, Harrold Rust, Steffen Pietzke,*
*Thurman J. Rodgers, Emmanuel T. Hernandez, John D.*
*McCranie, Betsy Atkins, and Gregory Reichow*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION | Case No. 23-cv-00071-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Judge:  Hon. Susan Illston<br><br>Hearing Date:  September 5, 2025<br><br>Hearing Time: 10:00 AM |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................2

I.      THIS MOTION PROVIDES THE COURT WITH COMPLETE STATEMENTS
        NECESSARY TO ANALYZE THE SUFFICIENCY OF PLAINTIFFS' CLAIMS ............2

II.     STATEMENT 6 FAILS AS A MATTER OF LAW ...........................................................4

        A.      Enovix Disclosed The Definition Of Proprietary Equipment ...................................4

        B.      Plaintiffs' Other Arguments Fail..............................................................................6

        C.      Plaintiffs Fail To Plead Scienter For Statement 6 ....................................................9

III.    STATEMENT 7 FAILS AS A MATTER OF LAW ...........................................................10

        A.      Statement 7 Is No Longer Actionable .......................................................................10

        B.      Plaintiffs Fail To Plead Scienter For Statement 7 ....................................................13

IV.     THIS MOTION SEEKS TO PROPERLY STREAMLINE THIS ACTION.......................14

V.      CONCLUSION ...............................................................................................................15

REPLY ISO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sep. 20, 2021) .................................................................. 7

*In re Apple iPhone Antitrust Litig.*,
846 F.3d 313 (9th Cir. 2017).......................................................................................... 14

*Aviles v. S&P Glob., Inc.*,
2020 WL 1689405 (S.D.N.Y. Apr. 6, 2020) ................................................................... 4

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 6, 1991)...................... 6, 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008).......................................................................... 12

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)........................................................................................ 13

*Estep v. City of Somerset, Ky.*,
2011 WL 845847 (E.D. Ky. Mar. 8, 2011) ..................................................................... 3

*In re Fibrogen Sec. Litig.*,
2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) .............................................................. 15

*Gen Digital, Inc. v. Sycomp*,
2025 WL 895212 (N.D. Cal. Mar. 24, 2025) .................................................................. 4

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)........................................................................................... 9

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021) ...................................................................................................... 15

*In re Gritstone Bio, Inc.*,
2025 WL 2084918 (N.D. Cal. July 24, 2025) ................................................................. 4

*In re Intel Corp. Sec. Litig.*,
2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ................................................................ 5

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
2022 WL 195648 (N.D. Cal. Jan. 21, 2022) ................................................................... 2

*Kelly v. Elec. Arts, Inc.*,
2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) (Illston, J.) ............................................. 4

REPLY ISO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ........................................................................................... 3

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
    2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ........................................................... 15

*Luken v. Christensen Grp. Inc.*,
    247 F. Supp. 3d 1158 (W.D. Wash. 2017) .............................................................. 14

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
    876 F.3d 541 (4th Cir. 2017) ...................................................................................... 12

*McMahan & Co. v. Wherehouse Ent., Inc.*,
    900 F.2d 576 (2d Cir. 1990) .......................................................................................... 7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................................... 9

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) .................................................................................... 6, 7

*Newton v. Parker Drilling Mgmt. Servs., Inc.*,
    2020 WL 1972572 (C.D. Cal. Jan. 29, 2020) ............................................................ 3

*Pampena v. Musk*,
    2024 WL 3678002 (N.D. Cal. Aug. 5, 2024) ............................................................. 4

*Pirani v. Netflix, Inc.*,
    710 F. Supp. 3d 756 (N.D. Cal. 2024) ...................................................................... 12

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .............................................................................. 12, 13

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................ 3, 4, 7, 8

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ........................................................................................ 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................... 9, 13

*United Food and Commercial Workers Union Loc. 880 Pension Fund v.
    Chesapeake Energy Corp.*,
    774 F.3d 1229 (10th Cir. 2014) ................................................................................... 5

*In re Venator Materials PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. 2021) ....................................................................... 5

REPLY ISO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................................... 9

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. ............. 1, 2, 3, 12, 14

**Other Authorities**

Fed. R. Civ. P. 9(b)..................................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 14

Fed. R. Civ. P. 12(c)........................................................................................................ 1, 2, 3, 4, 14

Fed. R. Civ. P. 12(h)(2) ...................................................................................................... 2, 14

## **PRELIMINARY STATEMENT**

Plaintiffs strategically omitted critical context from the alleged misstatements in their Second Amended Complaint in the hope of avoiding another dismissal after failing their first attempt at pleading securities fraud claims.  Now that Defendants have put that missing context before the Court, Plaintiffs can neither explain nor justify their selective and misleading quotations and instead spend the bulk of their brief casting aspersions and raising meritless procedural objections.  Reading the alleged misstatements in their full context reveals that Statements 6 and 7 are accurate and cannot support a claim for securities fraud.  Removing these statements from the case now is not just appropriate under Rule 12(c), but will efficiently streamline this case to the benefit of the Parties and the Court.

*First*, as established in Defendants' Motion and largely ignored in Plaintiffs' Opposition, by omitting the very ***question*** to which Statement 6 was the ***answer***, Plaintiffs hid the fact that when Mr. Rust said there were "no red flags," he was responding to a question about Enovix's "***proprietary*** equipment."  Investors understood—based on Enovix's shareholder letter from the same day as well as numerous Enovix presentations detailing the different zones of Fab-1—that "proprietary equipment" referred to a portion of the manufacturing equipment wholly separate from that provided by Yinghe.  Plaintiffs' claim of falsity is thus implausible on its face.  Plaintiffs' attempt to muddy the waters by introducing alternative explanations for Statement 6 that are directly contradicted by Enovix's disclosures does not pass muster under the PSLRA.  Nor do Plaintiffs offer any plausible showing that the CEO of Enovix did not know what he was talking about when discussing Enovix's proprietary equipment.

*Second*, Plaintiffs concede that Statement 7, about "qualification," does not address FAT of the Yinghe equipment at all, even though their strategic pleading left a contrary impression.  Instead of defending their selective omissions, Plaintiffs pivot to resurrecting arguments that this Court already rejected in both of its motion to dismiss decisions and that are unsupported by well-pled allegations. Specifically, Plaintiffs argue that Mr. Rust's statement, which they concede was about ***post***-FAT testing, was misleading because it implied that equipment passed the FAT.  But the Court already found this argument to be "conclusory at best" and significant leaps of inference—

impermissible under the PSLRA—are required to accept Plaintiffs' explanation for falsity.

*Finally*, lacking any compelling substantive arguments, Plaintiffs spend much of their Opposition trying to convince this Court that Defendants' Motion is ill-intentioned and was filed for the purpose of delay.  These accusations are baseless.  Defendants' Motion not only "may narrow the issues for trial," thus offering "good cause to address its merits," *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 2022 WL 195648, at *2 (N.D. Cal. Jan. 21, 2022), but more immediately, the Motion, offered before class certification is adjudicated and before any depositions are taken, may significantly narrow the issues before the Parties and the Court at each of those stages of the case, properly streamlining these proceedings.

Having survived Defendants' Motion to Dismiss through incomplete presentations, Plaintiffs cannot now claim prejudice when Defendants seek to complete the record through proper procedural mechanisms.  Plaintiffs' argument rewards strategic omissions by making them essentially unreviewable, a result the Court should reject.  Defendants' Motion should be granted.

**ARGUMENT**

**I.    THIS MOTION PROVIDES THE COURT WITH COMPLETE STATEMENTS NECESSARY TO ANALYZE THE SUFFICIENCY OF PLAINTIFFS' CLAIMS**

Plaintiffs' selective quotation created the very problem this Motion addresses.  As shown in detail in Defendants' Motion,[1]  Plaintiffs quoted only portions of Statements 6 and 7 while omitting the specific questions those statements responded to, the essential context that defines their scope, and the Company's disclosures that provide key definitions.  *Compare, e.g.*, ¶ 142 (omitting analyst's question entirely) *with* Dkt. No. 175-5 at 6-7 (showing specific question about "proprietary equipment").  The Court's prior analysis necessarily relied on Plaintiffs' incomplete presentation. Rule 12(c) specifically permits raising "any issues not raised in a previous motion." Fed. R. Civ. P.

---

[1]  Capitalized terms not otherwise defined herein have the meaning assigned to them in Defendants' Motion, Dkt. No. 175.  References to "¶ __" are to the Second Amended Complaint ("SAC" or "Complaint").  All "Ex. __" references are to the Kapur Declaration, Dkt. No. 175-1.  All emphasis is added and quotations and citations omitted unless otherwise noted.

12(h)(2).  Accordingly, Plaintiffs' arguments that the MTD Order "explicitly"[2] or "implicitly"[3] decided these issues are meritless and illogical given Plaintiffs' selective omissions.

This type of strategic pleading is expressly prohibited.  *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) (plaintiffs "'may not simply cherry-pick[] portions of Defendants' statements and ignor[e] other portions,' but must instead 'account for the entirety of [the statements] on which they rely.'"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (prohibiting plaintiffs from "selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims").

Plaintiffs nonetheless mischaracterize this Motion as seeking "reconsideration" of the Court's MTD Order but cannot point to any arguments in Defendants' prior motion to dismiss briefing that are repeated here.  Opp. 7-8.  To the contrary, this Motion—***for the first time***—provides the Court with the full statements and context necessary to assess the sufficiency of Plaintiffs' claims under Rule 9(b) and the PSLRA.  Motions for judgment on the pleadings are routinely granted in this posture.  *See, e.g., Newton v. Parker Drilling Mgmt. Servs., Inc.*, 2020 WL 1972572, at *3 (C.D. Cal. Jan. 29, 2020) (granting 12(c) motion even though "Defendant could have made these arguments to the Court in their previous Motion to Dismiss," because the "argument[s] had substance" and there "is a strong preference in favor of adjudicating arguments on the merits," and collecting cases); *see also* Mot. at 9-10.  Tellingly, Plaintiffs cite no binding precedent for their suggestion that Defendants' new arguments are barred.[4]  For the same reasons, Plaintiffs' reconsideration-related caselaw (Opp.

---

[2]  Plaintiffs argue that the Court "explicitly … determined that Statement 7" was misleading "because it necessarily implied that the FAT was complete."  Opp. 7.  Not so.  Due to Plaintiffs' omissions, the Court understood "qualifying" to encompass FAT and concluded Statement 7 was actionable based on allegations that the "equipment failed multiple rounds of the FAT."  MTD Order at 12.

[3]  Plaintiffs' suggestion that the Court "implicitly" rejected puffery arguments ***never raised*** regarding Statement 7 because ***other*** statements were challenged on puffery grounds is baseless.  Opp. 7.

[4]  Plaintiffs cite a single-out-of-circuit case, which supports Defendants.  *See* Opp. 8 (citing *Estep v. City of Somerset, Ky.*, 2011 WL 845847, at *2 (E.D. Ky. Mar. 8, 2011)).  Here, as in *Estep*, adjudication of Defendants' motion "is not only permissible, but also desirable." 2011 WL 845847, at *2.  Defendants have shown that "the Court's analysis was incomplete" and that Plaintiffs' claims "fail[] as a matter of law."  *Id.*

8) is inapposite, as those cases all involved arguments already explicitly raised and rejected.[5]

## II.    STATEMENT 6 FAILS AS A MATTER OF LAW

Plaintiffs all but concede that Mr. Rust's "no red flags" statement on the August 10, 2021 earnings call was "literally true." Opp. 13. In Opposition, Plaintiffs ask this Court to ignore Enovix's contemporaneous disclosures that plainly show Statement 6 was in fact "literally true" because "***proprietary*** equipment" referred to laser patterning, high-speed stacking, and constraining equipment from "tier-one ***U.S.-***based factory automation vendors." Mot. 12.

### A.    Enovix Disclosed The Definition Of Proprietary Equipment

Statement 6 was a response to a question regarding Enovix's proprietary equipment. Enovix's August 10, 2021 Shareholder Letter disclosed that its "proprietary equipment" was laser, high-speed stacking, and constraining equipment from "tier one-U.S.-based factory automation vendors." Mot. 6, 11-12 (quoting Ex. C at -3). Because Enovix's disclosures establish that "proprietary equipment" did ***not*** include the packaging equipment from Yinghe in China, the competing interpretations Plaintiffs offer are "implausible." *SEB*, 485 F. Supp. 3d at 1126 (the "context and the full statements that were made," which plaintiffs "ignore[ed]," made "[p]laintiff's interpretation of the Statement . . . implausible as a matter of law"); *see* Opp. at 13-15. Where the "parties dispute the meaning of [a] statement," the "Court need not adopt the plaintiffs' view" if the "context of the statement contradicts plaintiffs' assertions" as to its meaning. *Kelly v. Elec. Arts, Inc.*, 2015 WL 1967233, at *9 (N.D. Cal. Apr. 30, 2015) (Illston, J.) (declining to draw inference that defendant's statement referred to specific product where context contradicted that understanding); *see also In re Gritstone Bio, Inc.*, 2025 WL 2084918, at *6 (N.D. Cal. July 24, 2025) (finding statements "not false or misleading when viewed in their proper context" and recognizing that while statements "[s]tanding alone" "might appear

---

[5]    *See Gen Digital, Inc. v. Sycomp*, 2025 WL 895212, at *3 (N.D. Cal. Mar. 24, 2025) (rejecting attempt by the defendant to "have it both ways" by "endorsing Plaintiff's failed arguments now that it benefits [the defendant]"); *Pampena v. Musk*, 2024 WL 3678002, at *2 (N.D. Cal. Aug. 5, 2024) (applying law of the case doctrine where the court had already "considered and explicitly decided the main issue" raised by the defendant's 12(c) motion and the defendant "admitted at the [Rule 12(c) hearing] that his argument 'was presented' during the motion to dismiss hearing"); *Aviles v. S&P Glob., Inc.*, 2020 WL 1689405, at *3 (S.D.N.Y. Apr. 6, 2020) (rejecting Rule 12(c) arguments that "cite[d] no new law and adduce[d] no new evidence that would require a different outcome").

misleading," "other statements in Gritstone's March 2023 Form 10-K" provided clarity for those statements).

Indeed, Plaintiffs offer no explanation of how a reasonable investor reading Enovix's August 10, 2021 Shareholder Letter could have read on page 2 that Enovix "fl[ew] over 60 tons of manufacturing equipment *from Asia* to San Francisco," then read on the very next page that the "Enovix-designed *proprietary equipment [is] from tier-one U.S.-based factory automation vendors*," and yet concluded that the "60 tons of manufacturing equipment from Asia" was the "Enovix-designed proprietary equipment" from the United States. Ex. C at -2-3; *see In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *10 (N.D. Cal. Mar. 29, 2019) (plaintiff carries burden of "demonstrat[ing] that [the statements], when *read in light of all the information then available to the market* . . . conveyed a false or misleading impression." (emphasis in original)); *United Food and Commercial Workers Union Loc. 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1238 (10th Cir. 2014) ("[A] 'reasonable investor' is neither an ostrich, hiding [its] head in the sand from relevant information, nor a child, unable to understand the facts . . . .").

Plaintiffs set forth no authority supporting their position that a reasonable investor would ignore how Enovix defined key terms in its disclosures, and Defendants are aware of none. Plaintiffs' reliance (Opp. 16) on *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 656 (S.D. Tex. 2021) illustrates the weakness of their argument. There, the defendants' own "past conduct" supported the plaintiffs' interpretation, *id.*, thus permitting a "fair inference" in favor of that interpretation, Opp. 16. By contrast, Enovix's public disclosures foreclose Plaintiffs' claims.

Indeed, Enovix repeatedly disclosed that only certain aspects of the factory incorporated Enovix's long history of laser patterning, high-speed stacking, and constraining R&D, while the rest were industry standard. Enovix's February 2021 presentation disclosed precisely that, illustrating the distinction in the diagram below[6] that contrasts the zones of Fab-1 effectuating (1) "Enovix's 3D Cell Direct Assembly and Pre-lithiation" processes for "Laser-Cutting and High-Speed Stacking" and "3D Cell" architecture from (2) "Industry Standard Cell Packaging" equipment. Ex. A at 37. The June

_____

[6] Red shapes and text therein added.

REPLY ISO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Proxy Statement reproduced the same diagram and in text contrasted the 30% of Fab-1 involving Enovix's "proprietary tools, produced for Enovix by precision automated equipment suppliers, [and] incorporat[ing] patented methods and processes to achieve precise laser patterning and high-speed roll-to-stack cell assembly" from the 70% involving standard equipment used to effectuate "the same battery packaging and formation process as a conventional Li-ion battery." Ex. B at -192-94.



Source: Ex. A (Feb. 2021 Investor Presentation) at 37; Ex. B (June Proxy Statement) at -192.

Investors reading the August 10, 2021 Shareholder Letter and its references to "proprietary equipment" and "proprietary laser patterning, stacking, and constraining processes" would have understood that to reference the 30% of Fab-1 captured in blue above, and not the Yinghe packaging equipment, captured in green. It is thus Plaintiffs who rely on a "string of [] inferences and interpretations," Opp. 15, not Defendants.

B.    **Plaintiffs' Other Arguments Fail**

Plaintiffs make several arguments in defense of Statement 6, each of which fails.

*First*, Plaintiffs argue that even "literally true" statements can mislead in context. Opp. 13 (quoting *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008)). But the pertinent context here is precisely that which Plaintiffs omitted from their SAC—***the specific question to which Statement 6 was a response***. Mot. 7, 11-13. Plaintiffs put forth no authority finding expressly defined corporate terms are susceptible to competing interpretations. To the contrary, the same case *Miller* quoted from

-6-                                                                          Case No. 23-cv-00071-SI

rejected such attempts. *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991), as amended on denial of reh'g (Dec. 6, 1991). Faced with the plaintiffs' theory that literally true statements "misled the market because they implied growth would continue at [prior rates]," the Ninth Circuit rejected it because the statements did not actually "imply any comparison between the rate of past and future growth." *Id.* (quoted in *Miller*, 519 F.3d at 886). So too here: Statement 6, "taken together and in context" with "defendants' [other] representations," *McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990), did not "imply any[thing]" regarding FAT of the Yinghe equipment. *Convergent*, 948 F.2d at 513.

*Second*, in advocating for an implausible interpretation of Statement 6, Plaintiffs again omit key context from Enovix's August 10, 2021 Shareholder Letter, particularly the portion containing Statement 4. Mot. at 6. In particular, Plaintiffs assert that Enovix's Letter implied that ***all*** Fab-1 equipment "incorporates our proprietary . . . processes" and therefore that investors could reasonably have understood Statement 6 to reference the Yinghe equipment. Opp. 13 (ellipsis in original). But what Enovix's Letter really said was that Fab-1 "incorporates our proprietary ***laser patterning, stacking, and constraining*** processes that uniquely manage the expansion of a 100% active silicon anode, replacing the traditional winding processes found in conventional Li-ion cell manufacturing." Ex. C at -3; *see supra* at 6. Plaintiffs omitted these details because they make clear that the "proprietary equipment" referenced was the U.S.-manufactured laser patterning, stacking, and constraining equipment, ***not*** the industry standard packaging equipment imported from Yinghe. Plaintiffs do not allege—nor could they—that the Yinghe packaging equipment incorporated any of those "proprietary laser patterning, stacking, and constraining processes." *Id*.; *supra* Section II.A.

*Third*, Plaintiffs' interpretation "ignore[s]" the actual "question" Mr. Rust was "responding to." *SEB*, 485 F. Supp. 3d at 1126 (rejecting the plaintiff's interpretation of alleged misstatement as a "***blanket*** statement about the state of competition" because defendant "was instead responding to a question about . . . a ***specific*** type of competitor"). Instead, Plaintiffs redirect the Court to a ***prior question*** from the analyst concerning qualification samples, automated production, and whether the line would be operational by Q4. Opp. 13; Ex. D at -6. Plaintiffs give the back of the hand to the ***actual*** "question" Mr. Rust was "responding to," *SEB*, 485 F. Supp. 3d at 1126, which explicitly

-7-

Case No. 23-cv-00071-SI

concerned "testing [of] the ***individual steps*** on the production line," and specifically the step involving Enovix's "***proprietary*** equipment." Ex. D at -6; *see In re AnaptysBio, Inc.*, 2021 WL 4267413, at *6 (S.D. Cal. Sep. 20, 2021) (rejecting Plaintiffs' "suggested" interpretations of misstatements because "context matters" and the questions they were responding to had "nothing to do with" what Plaintiffs alleged was the implied false fact) (citing *SEB*, 485 F. Supp. 3d at 1126). Plaintiffs are thus incorrect that based on the "colloquy between the analyst and Rust," "proprietary" referred to "larger processes" across Fab-1 as a whole (Opp. 13), as opposed to the equipment incorporating the "proprietary laser patterning, stacking and constraining processes that . . . replac[ed] traditional winding processes," Mot. 3 (quoting Ex. C at -3).

To that end, Plaintiffs' attempts to conflate customizations of industry standard equipment with equipment that is, in itself, proprietary are likewise baseless and unsupported by the SAC. *See* Opp. 15-16 (speculating, without citation to the SAC, the "Yinghe equipment ***may have*** included mostly 'standard' or 'conventional' battery manufacturing equipment that was *modified to conform* to Enovix's proprietary equipment, designs, or other requirements" and may have "incorporated various 'proprietary' battery design elements to integrate it with other components"). The Colliers analyst asked about Enovix's proprietary equipment (*i.e.*, U.S.-sourced equipment Enovix developed), not "customizations" Enovix may have made to imported Yinghe equipment. Ex. D at -6 ("how is your ***proprietary equipment*** sort of stacking up against your expectations on capacity.").

*Finally*, Plaintiffs' suggestion that Mr. Rust's reference to "no red flags" concerned whether the "entire production line [] work[ed]" for "full, automated production" and could "make whole batteries (not just parts of them) at commercially viable quality and scale" is indefensible. Opp. 13-14. The relevant information Mr. Rust conveyed was that there were no red flags with the proprietary equipment Enovix had spent over a decade and over $200 million developing—Enovix's secret sauce. Mot. 3 (citing ¶¶ 74-76). The analyst, like the market, well understood that full production was still months in the future—before asking about "individual steps" involving "proprietary equipment," the Colliers analyst had expressly noted that "it sounds like you guys ***haven't been able to do sort of a full dry run of production yet***." Ex. D at -6. *See* ¶¶ 4, 148; Ex. C at -2; Ex. D at -3 (production not expected until 2022).

### C.    Plaintiffs Fail To Plead Scienter For Statement 6

Plaintiffs' Opposition confirms that Plaintiffs fail to plead facts sufficient to infer an "intent to deceive, manipulate, or defraud" that is "cogent and at least as compelling" as opposing inferences, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 319, 324 (2007).  There is no plausible inference to be drawn that Mr. Rust intended to defraud investors when making Statement 6.

To start, Plaintiffs' attempt to paint the scienter inquiry as an easy bar to clear is not credible. *See* Opp. 19-20.  To plead scienter, Plaintiffs must allege "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008); *see also Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (scienter requires "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent").  It is not enough to allege facts from which an inference of scienter "could be drawn"; Plaintiffs must "plead with particularity facts that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference," *Tellabs*, 551 U.S. at 323, that is "***at least as compelling*** as any opposing inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (emphasis in original).

Plaintiffs cannot hope to satisfy this exacting standard given the full context of Statement 6. Plaintiffs plead that Mr. Rust "co-founded Enovix in November 2006 and served as the Company's CEO and President" until December 2022.  ¶ 37.  Mr. Rust led Enovix throughout the many years before the operative timeframe when it focused on R&D into its own proprietary laser, stacking, and constraining technology, *see* ¶¶ 37, 73-76, the same technology at the heart of Enovix's ability to deploy silicon anodes using what Plaintiffs themselves refer to as "a ***proprietary*** 3D stacking architecture" that improves the energy density of its batteries.  ¶¶ 73-75; *supra* Section II.A.  Plaintiffs have no credible argument that Mr. Rust believed he was speaking about anything other than Enovix's U.S.-sourced proprietary equipment when responding to the analyst question about "proprietary equipment" in Statement 6.

Plaintiffs ignore this context entirely—just as they did in their SAC—and regurgitate the same scienter arguments they made in their MTD Opposition that are neither viable nor credible given the full context of Statement 6.  Opp. 20-21; *see, e.g.*, *Teamsters Loc. 237 Welfare Fund v. ServiceMaster*

*Glob. Holdings, Inc.*, 83 F.4th 514, 533 (6th Cir. 2023) ("[T]he context of the question and answer makes an innocent inference of DiLucente's motivation for making the statement far more likely."). Here, Enovix's August 10, 2021 Letter to Our Shareholders—signed by Mr. Rust, issued just hours before the earnings call, and repeatedly referenced on the call—makes perfectly clear what Mr. Rust understood "proprietary equipment" to mean when asked about it on the call and, at the very least, supports a more compelling non-culpable inference that he intended to describe the state of Enovix's U.S.-sourced proprietary laser, stacking, and constraining equipment, thus warranting dismissal. Ex. C at -3; *supra* Section II.A.

## III.    STATEMENT 7 FAILS AS A MATTER OF LAW

Plaintiffs concede not only that Mr. Rust's September 10, 2021 statement that "qualifying . . . was going on quite well" did not address FAT of the Yinghe equipment but also that it is the sort of vague statement of general corporate optimism that is inactionable. Their arguments as to why Statement 7 should nonetheless survive have already been substantially rejected by this Court and otherwise fail on their face.

### A.    Statement 7 Is No Longer Actionable

*First*, Plaintiffs rely on the Court's analysis in its MTD Order that Statement 7 was false or misleading because "if the Fab-1 equipment never passed the FAT, it was false and misleading for Rust to state in September [2021] that the testing [out] of each piece of equipment was 'going on quite well.'" Opp. 17 (citing MTD Order at 12). But the Court's conclusion was premised on Plaintiffs' critical omission of the immediate referent—*i.e.*, that Mr. Rust was speaking about testing equipment following installation in Fremont—leaving the misleading impression that "qualifying" could plausibly encompass FAT at Yinghe in China. It does not. Mot. 15. This process and the distinctions among the several testing steps for each zone of Fab 1 was set forth in Enovix's February 2021 investor presentation, as depicted below.[7]

---

[7]    Red shapes and text therein added.



Source: Ex. A (Feb. 2021 Investor Presentation) at 48.

Indeed, Plaintiffs now concede—as they must—that qualifying occurs "after installation" while FAT occurs "before shipment," and that SAT is the "first step" in qualifying which is entirely a "post-installation" process. Opp. 17-18. That Statement 7 does not relate to FAT at all renders it inactionable under the analysis in Court's MTD Order.

*Second*, forced to change course, Plaintiffs resort to resurrecting the exact theory this Court *twice* rejected, first when dismissing Statement 7 from Plaintiffs' FAC, and again when evaluating Plaintiffs' SAC. Opp. 17-18; MTD Order at 13-14; Dkt. No. 97 at 15. In the FAC, Plaintiffs alleged that Statement 7 was false because Enovix "failed to conduct the SAT." FAC ¶ 117. This Court found those allegations "conclusory at best" and dismissed Plaintiffs' claims. Dkt. No. 97 at 15. Plaintiffs thus changed their pleading strategy in the SAC, omitting the exact language that clarified the distinction between FAT and qualifying processes. *Compare* FAC ¶ 116 (including Mr. Rust's statement that "equipment has been all installed for the last several months. The last pieces came in. We're in the middle of qualifying . . .") *with* SAC ¶ 144 (omitting the same). Simply, Plaintiffs obscured the fact that Statement 7 addressed only **post**-installation work rather than **pre**-shipment FAT testing—a distinction made clear by the full text of Statement 7 itself. While the Court sustained Plaintiffs' SAC based on Plaintiffs' incomplete presentation of the alleged misstatements, it nonetheless held a second time that "[t]o the extent the challenged statements in the SAC rely on allegations that the equipment never passed the SAT, . . . these allegations continue to suffer from the same timing problems that stymied the prior complaint." MTD Order at 13-14.

Plaintiffs now attempt to circumvent these pleading deficiencies once again and argue that Mr. Rust's statement that SAT was "going on quite well" conveyed the "implied fact" that the "Fab-1 equipment had passed the FAT." Opp. 17-18. But this is nothing more than a repackaged version of the implausible argument this Court already rejected and is nonetheless pled nowhere in the SAC. *See, e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1180 (C.D. Cal. 2008) (dismissing claims based on the "same [] theory already rejected as inadequately pled."). In support, Plaintiffs concoct the difficult-to-follow explanation that because SAT succeeded FAT, any mention of qualification or SAT testing implied certain results in connection with FAT and therefore SAT could not have been "going on quite well." Opp. 17. The gymnastics required to understand this purported explanation is in itself a reason to dismiss Statement 7 under the exacting standard for pleading falsity under the PSLRA. *See, e.g.*, *Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 771 (N.D. Cal. 2024) (dismissing securities fraud claims for failure to plead falsity with the particularity required under the PSLRA). More fundamentally, this theory is nowhere to be found in the SAC, and to credit it would require stacking inference upon unsupported inference. For example, Plaintiffs do not plead—nor could they—that it was impossible for SAT to "go on quite well" even were equipment to "not pass" FAT. And Plaintiffs do not plead—nor could they—that issues uncovered during the FAT process cannot be remedied during the SAT process. *See Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("A plaintiff may not stack inference upon inference to satisfy the PSLRA's pleading standard."). Indeed, Plaintiffs expressly allege that Enovix's intention as of mid-2021 was to further improve the Yinghe equipment in Fremont in connection with work on the SAT. ¶ 168. But the SAC is devoid of any facts pleading that the "catch up" process was not going well in September 2021. Simply, the SAC has no allegations to support Plaintiffs' *post hoc* argument that Statement 7 regarding post-FAT testing "implied" that the "Fab-1 equipment had passed the FAT." Opp. 18-19.

*Finally*, Plaintiffs' contention that Statement 7 addressed "**specific aspects**" of a company's operation that the speaker knows to be performing poorly" and is thus not puffery fails because it is wholly predicated on the same erroneous argument that Statement 7 regarding "qualifying" necessarily "implied that the equipment had passed . . . the FAT." Opp. 18-19 (quoting *In re Quality*

*Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017)). *Quality Systems* underscores the deficiencies in Plaintiffs' argument. There, unlike here, the defendants "did not just [speak] in subjective or emotive terms." 865 F.3d at 1144. Rather, they "provided a concrete description of the past and present state of the pipeline." *Id.* Not so here, where Mr. Rust was not even referring to FAT. Statement 7 is a "mildly optimistic, subjective assessment" and is inactionable as a matter of law. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

### B.    Plaintiffs Fail To Plead Scienter For Statement 7

For all of these reasons, when Mr. Rust stated that the Fab-1 "equipment has been all installed for the last several months . . . we're in the middle of qualifying, which [is] going on quite well," Ex. E at 5, he did not view his comments as in any way referencing FAT. Mot. 17. As with the term "proprietary equipment," Mr. Rust, as co-founder, CEO, and President of Enovix since 2006, ¶ 37, knew full well that qualification was a phase that followed installation and did not encompass FAT. *See* Ex. A at 48 (excerpted *supra* at 11).

Plaintiffs' allegations fail to dispel these more "plausible opposing inferences" drawn from the "complaint in its entirety." *Tellabs*, 551 U.S. at 310. Plaintiffs set forth no particularized allegations that Mr. Rust knew the qualifying process was not going on quite well. *See* MTD Order at 13-14; Mot. 17.[8] Indeed, despite alleging that the inability of Enovix's engineers to work on the Yinghe equipment during FAT due to travel restrictions was a major problem (¶ 109), the SAC contains no allegations to rebut the more compelling, non-culpable inference that Mr. Rust was pleased with how work on the Yinghe equipment was progressing after it arrived in California along with Yinghe's engineers. *See* MTD Order at 13-14 (rejecting SAT allegations as insufficient to establish falsity, let alone scienter). This inference is particularly strong in context of the upcoming milestones that Mr. Rust reiterated to investors at the start of his September 10, 2021 Cowen conference remarks: "It's in qualification. We expect to be [1] shipping qualification samples to

---

[8]    Additionally, Plaintiffs' allegations regarding post-installation testing depend almost entirely upon former employees not even employed by Enovix at the time of Statement 7 in September 2021—*e.g.* ¶¶ 52 (FE3); ¶¶ 55, 119 (FE6); ¶¶ 58, 118 (FE9)—thus reinforcing that it is unnecessary for the Court to permit re-litigation of its conclusion that such allegations are deficient. MTD Order at 13.

customers by the end of this year, [2] starting up production in Q1 of next year and then [3] beginning revenue in second quarter of 2022." Ex. E at 3. Plaintiffs' allegations show Enovix achieved those milestones. ¶¶ 146, 148, 157. No inference can be drawn that Mr. Rust had alternative expectations that would have rendered his statement regarding post-FAT testing knowingly false when made.

## IV.    THIS MOTION SEEKS TO PROPERLY STREAMLINE THIS ACTION

Defendants' Motion serves the Court's interest in "getting to the truth of the substance of this lawsuit" in the most efficient way possible. Dkt. No. 183 at 4. Plaintiffs cannot evade the reality that eliminating Statements 6 and 7 will "streamline" the scope of the case by narrowing the action to a straightforward, single-statement inquiry. Opp. 10; *see Luken v. Christensen Grp. Inc.*, 247 F. Supp. 3d 1158, 1160 (W.D. Wash. 2017) (granting Rule 12(c) motion, which was the "second motion seeking to streamline the allegations and claims in this complicated case"). Deciding the issues raised by Defendants' Motion now, and in particular prior to adjudicating class certification, will enable both the Court and the Parties to narrowly focus this litigation on Statement 4, a reality that defeats Plaintiffs' baseless accusations of gamesmanship.[9]

*First*, this Motion will meaningfully streamline the next phase of discovery. Defendants have already produced documents, but the most expensive and intrusive discovery lies ahead: depositions and expert testimony. Resolving these legal issues now prevents wasteful discovery and motion practice on claims that cannot survive PSLRA scrutiny regardless of what discovery reveals. As just one example, eliminating Statements 6 and 7 reduces the scope of depositions by at least a third by eliminating entire lines of inquiry about proprietary versus standard equipment distinctions and post-installation qualifying processes. Dismissal of Statements 6 and 7 also eliminates the need for expert opinions on equipment categorization and multiple testing protocols across different timeframes, focusing expert discovery on the core dispute over Statement 4 and FAT of the Yinghe equipment.

---

[9] Despite Plaintiffs' suggestion that Defendants' Motion is procedurally improper, Rule 12 is explicit that a party may raise a failure-to-state-a-claim defense in a Rule 12(c) motion where that same argument was not raised in the earlier motion to dismiss. Fed. R. Civ. P. 12(h)(2); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("If a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised . . . in a post-answer motion under Rule 12(c), or at trial.").

*Second*, a resolution of this Motion in Defendants' favor will allow the Court to focus on the remaining Statement 4 claim during class certification and thereby substantially narrow the Court's evidence-intensive inquiry under the Supreme Court's recent decision in *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113 (2021). Under *Goldman*, courts must "assess **all the evidence of price impact**—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact," even if such "evidence overlaps with materiality or any other merits issue." *Id.* at 124, 127. Plaintiffs' class certification motion (*see* Dkt. No. 162 at 16) relies on an inflation-maintenance theory—arguing that "back-end price drop[s]" from alleged corrective disclosures "equal[] front-end inflation" caused by the alleged misstatements. *Goldman*, 594 U.S. at 123. But this inference "break[s] down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Id*.

Because *Goldman*'s "mismatch" inquiry requires direct and granular evaluation of each of the alleged misstatements in comparison to corrective disclosures, eliminating Statements 6 and 7—which differ in content from Statement 4 on their face—will materially alter the scope of the price impact inquiry. *See, e.g.*, *In re Fibrogen Sec. Litig.*, 2024 WL 1064665, at *12-15 (N.D. Cal. Mar. 11, 2024). Further, under *Goldman*, consideration of whether analysts referenced alleged misstatements is critical evidence regarding price impact. *See, e.g., In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *12 (S.D.N.Y. Mar. 29, 2024) (finding no price impact because, among other reasons, no analysts commenting on purported corrective disclosures referred back to the alleged misstatements). Thus, dismissal of Statements 6 and 7 will materially affect, at both the front-end and the back-end, which analyst reports are relevant to the price impact inquiry and what parts of those reports are relevant. *See id.* By dismissing the facially deficient statements, class certification (as well as later expert discovery) becomes a clean analysis of whether Statement 4's "already performed" misrepresentation was material and later corrected.

## V.    **CONCLUSION**

For the above stated reasons, Defendants motion for partial judgment on the pleadings should be granted, and the claims regarding Statements 6 and 7 should be dismissed with prejudice.

Dated:  August 18, 2025

By: /s/ Emily C. Kapur

QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
Emily C. Kapur (306724)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: +1 650 801 5000
Facsimile: +1 650 801 5100
Email: emilykapur@quinnemanuel.com

Michael Liftik (232430)
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: +1 202 538 8000
Facsimile: +1 202 538-8100
Email: michaelliftik@quinnemanuel.com

Andrew J. Rossman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
andrewrossman@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com

*Attorneys for Defendants*