Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION | No: 3:23-cv-0071-SI<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>JUDGE:  Hon. Susan Illston, U.S.D.J.<br>DATE:    TBD<br>TIME:    TBD<br>CTRM:  1, 17th Floor |

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................1

II.    ARGUMENT...................................................................................................3

    A.    Defendants Fail to Establish the Absence of Price Impact .....................3

        1.    The Corrective Disclosures Incrementally Revealed the Truth that Defendants Hid from Investors...................................................3

        2.    The Corrective Disclosures Each Revealed New and Value-Relevant Information .........................................................6

    B.    The Market for Enovix Stock was Efficient During the Class Period....................9

    C.    Damages are Capable of Measurement on a Classwide Basis..............................11

    D.    The Proposed Class Representatives are Adequate and Typical ...........................13

III.    CONCLUSION.............................................................................................15

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

**Cases**

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 4098741 (D. Minn. July 28, 2016) ............................................................................15

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................................13

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) .....................................................................................9, 10, 11

*Brokop v. Farmland Partners Inc.*,
2021 WL 4913970 (D. Colo. Sept. 30, 2021)..........................................................................10

*Brokop v. Farmland Partners Inc.*,
2021 WL 4916240 (D. Colo. July 23, 2021) ...........................................................................10

*City of Birmingham Relief and Ret. Sys. v. Acadia Pharms., Inc.*,
348 F.R.D. 372 (S.D. Cal. 2024) ............................................................................................12

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)..........................................................................12

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2022 WL 1459567 (N.D. Cal. May 9, 2022)............................................................................11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)...............................................................................................................12

*Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*,
594 U.S. 113 (2021).................................................................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).................................................................................................................3

*Homyk v. ChemoCentryx, Inc.*,
2024 WL 1141699 (N.D. Cal. Mar. 6, 2024).............................................................................3

*In re Apple Inc. Sec. Litig.*,
2022 WL 354785 & n.9 (N.D. Cal. Feb. 4, 2022) ..............................................................passim

*In re Cassava Scis., Inc. Sec. Litig.*,
350 F.R.D. 91 (W.D. Tex. 2025) ..............................................................................................2

*In re Connetics Corp. Sec. Litig.*,
257 F.R.D. 572 (N.D. Cal. 2009).............................................................................................13

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

*In re Diamond Foods, Inc., Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013)....................................................................................13, 15

*In re FibroGen Sec. Litig.*,
  2024 WL 1064665 (N.D. Cal. Mar. 11, 2024)......................................................................3, 6, 7

*In re Groupon, Inc. Sec. Litig.*,
  2015 WL 1043321 (N.D. Ill. Mar. 5, 2015)..............................................................................11

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)...................................................................14, 15

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
  2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024).........................................................................5, 6

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017).....................................................................................14

*In re Mattel*,
  2021 WL 4704578 (C.D. Cal. Oct. 6, 2021).................................................................................9

*In re Miller Indus., Inc. Sec. Litig.*,
  186 F.R.D. 680 (N.D. Ga. 1999)................................................................................................14

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  2016 WL 1598666 (N.D. Cal. Apr. 21, 2016)............................................................................12

*In re PolyMedica Corp. Sec. Litig.*,
  453 F. Supp. 2d 260 (D. Mass. 2006).........................................................................................10

*In re Qualcomm Inc. Sec. Litig.*,
  2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) .............................................................................5

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D. 209 (C.D. Cal. 2019)................................................................................................13

*In re Solar City Corp. Sec. Litig.*,
  2017 WL 363274 (N.D. Cal. Jan. 25, 2017)...............................................................................14

*In re Vaxart, Inc. Sec. Litig.*,
  738 F. Supp. 3d 1259 (N.D. Cal. 2024) ........................................................................................6

*In re Vaxart, Inc. Sec. Litig.*,
  759 F. Supp. 3d 1015 (N.D. Cal. 2024) ......................................................................................12

*In re Waste Mgmt. Sec. Litig.*,
  775 F. Supp. 3d 742 (S.D.N.Y. 2025)..........................................................................................10

*Jaeger v. Zillow Grp., Inc.*,
  746 F. Supp. 3d 1025 (W.D. Wash. 2024)..........................................................................1, 4, 5

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

*Jaeger v. Zillow Grp., Inc.*,
  2025 WL 2741642 (9th Cir. Sept. 26, 2025) ............................................................. 1, 5, 9

*Jaroslawicz v. M&T Bank Corp.*,
  2024 WL 2975766 (D. Del. June 13, 2024) ...................................................................... 12

*Junge v. Geron Corp.*,
  2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .................................................................... 12

*Kalodner v. Michaels Stores, Inc.*,
  172 F.R.D. 200 (N.D. Tex. 1997) ..................................................................................... 14

*Kottaras v. Whole Foods Mkt., Inc.*,
  281 F.R.D. 16 (D.D.C. 2012) ........................................................................................... 12

*Levy v. Gutierrez*,
  448 F. Supp. 3d 46 (D.N.H. 2019) .................................................................................... 15

*Loritz v. Exide Techs.*,
  2015 WL 6790247 (C.D. Cal. July 21, 2015) .................................................................. 13

*Ma v. Twitter*,
  2024 WL 4859090 (N.D. Cal. Nov. 20, 2024) ................................................................. 13

*Malriat v. QuantumScape Corp.*,
  2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) .................................................... 10, 11, 12

*Miller v. Thane Int'l, Inc.*,
  2005 WL 5957833 (C.D. Cal. Mar. 3, 2005) .................................................................... 10

*Mulderrig v. Amyris, Inc.*,
  340 F.R.D. 575 (N.D. Cal. 2021) ................................................................................... 7, 14

*Pardi v. Tricida, Inc.*,
  2024 WL 4336627 (N.D. Cal. Sept. 27, 2024) ............................................................ 3, 6, 7

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .................................................................... 13

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015) ...................................................................................... 10

*Sayce v. Forescout Tech., Inc.*,
  754 F. Supp. 3d 878 (N.D. Cal. 2024) ........................................................................ passim

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020) ..................................................................................... 3, 9

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
  2023 WL 3569981 (N.D. Cal. May 19, 2023) .................................................................... 9

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

*Shupe v. Rocket Cos., Inc.*,
  752 F. Supp. 3d 735 (E.D. Mich. 2024)......................................................................................10

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ................................................................................................10

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ................................................................................9

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................................10, 11

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017)..........................................................................................................9

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

## I.    PRELIMINARY STATEMENT

Plaintiffs' opening brief demonstrated why this ordinary securities fraud case is ideally suited for class certification.[1]   Indeed, Defendants concede that Rule 23's numerosity, commonality, and superiority requirements are satisfied.  Only predominance is meaningfully contested (although Defendants halfheartedly challenge adequacy and typicality also).  In doing so, Defendants distort what this case is about and ignore the relevant law, including this Court's prior rulings.  In particular, they ignore the Court's decision sustaining the SAC, which rejected the same loss causation arguments that Defendants now restyle as a "price impact" challenge.  As the Court laid out: this case is about Defendants' concealment of the fact that its Fab-1 battery manufacturing line was not commercially viable because the Yinghe-supplied part of that line was unable to produce batteries at commercial scale.  Defendants concealed that fact and misled investors by stating that the Yinghe-supplied equipment had passed its first round of commercial-scale testing (*i.e.*, the FAT) before being airlifted from China, when the equipment was not in fact capable of producing batteries at such scale.  The resulting truth that Fab-1 was not commercially viable was revealed in a series of disclosures, whereby Defendants admitted: (1) first, on November 1, 2022, that Fab-1 was yielding only *de minimis* revenue and Enovix would be focusing on other production lines rather than improving Fab-1; (2) next, in January 2023, that the Yinghe-supplied equipment was "wreak[ing] havoc with output"; and (3) finally, in October 2023, that Enovix was abandoning commercial production at Fab-1 altogether.[2]  (*See* SAC ¶¶ 160-192.)

Defendants do not contest that Enovix's share price dropped precipitously following each of these disclosures.  Instead, Defendants argue that their misstatements and omissions lack logical nexus to the disclosures and so had no "back-end" price impact.[3]  Such challenge, however, poses a "daunting task," in which Defendants bear the burden of proving a *complete* lack of price impact

---

[1] Capitalized terms not otherwise defined have the same meanings used in Plaintiffs' opening brief or Defendants' opposition ("Opp."), as applicable.  Internal citations and quotation marks are omitted from all quotations unless otherwise indicated.

[2] The "November 2022 Disclosure," "January 2023 Disclosure," and "October 2023 Disclosure."

[3] This is a price maintenance case, so Plaintiffs need not show front-end price impact to invoke the *Basic* presumption of reliance. *Jaeger v. Zillow Grp., Inc.*, 746 F. Supp. 3d 1025, n.4 (W.D. Wash. 2024) ("*Zillow I*"), *aff'd*, 2025 WL 2741642 (9th Cir. Sept. 26, 2025) ("*Zillow II*"); *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *8 & n.9 (N.D. Cal. Feb. 4, 2022).

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

by *completely* "sever[ing] the link between [the] misrepresentation[s] and the price paid by the [P]laintiff[s]." *In re Cassava Scis., Inc. Sec. Litig.*, 350 F.R.D. 91, 116 (W.D. Tex. 2025).

Defendants' opposition does not carry that heavy burden. Defendants attempt to conflate certification-stage price impact analysis with merits-stage loss causation analysis—a tactic routinely rejected by the courts. Their premature arguments fail on the law and the facts. Distorting both Plaintiffs' theory of liability and the corrective disclosures, Defendants assert the disclosures were not "corrective" because they did not explicitly reference the Yinghe equipment's failure to formally pass the FAT. But the disclosures plainly revealed the *consequence* of the Yinghe equipment's *inability* to pass the FAT: *i.e.*, the Fab-1 line's inability to manufacture batteries at commercial scale. The law is clear that corrective disclosures need only relate to—not precisely mirror—the earlier misstatements. The nexus here is equally clear: Defendants misled investors to believe that Enovix's Fab-1 manufacturing line was capable of producing batteries at commercial scale when, due to the Yinghe equipment, it was not. Defendants further argue that the January and October 2023 Disclosures were not corrective because the fact that the equipment *did not formally pass the FAT* was revealed in November 2022. But that is not the concealed truth at issue, and Defendants did not reveal that the Yinghe equipment *was substantively incapable of passing the FAT*, which posed a material risk to Fab-1's ability to achieve commercial production.

Next, Defendants argue that—for only a sub-period of the Class Period—the market for Enovix stock was insufficiently efficient to invoke *Basic*'s classwide presumption of reliance. That argument fails for two independent reasons. *First*, Defendants point to no extraordinary circumstances that would render the NASDAQ—a pinnacle of market efficiency—so inefficient as to not readily incorporate relevant information. *Second*, in any event, courts reject such attempts to gerrymander an otherwise efficient market during a class period into sub-periods of heightened and lessened efficiency. The same result should follow here.

Finally, Defendants make routine, uncompelling challenges to Plaintiffs' proposed damages methodology and to Plaintiffs' "typicality" and "adequacy" to represent the class. This Court and others uniformly reject such tired arguments.

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

## II.    ARGUMENT

### A.    Defendants Fail to Establish the Absence of Price Impact

"It is defendants' burden to show the *absence* of price impact." *Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *8 (N.D. Cal. Sept. 27, 2024) (cleaned up).  Defendants must *completely* "'sever the link' between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of some evidence relevant to price impact w[ill] rarely accomplish that feat." *Id.* Moreover, "corrective disclosure[s] need not precisely mirror the earlier misrepresentation.  It is enough if the disclosure[s] reveal new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *Id.*  Hence, a "price impact" challenge at class certification "should impose no heavy toll on securities-fraud plaintiffs with tenable claims." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (Ginsburg, J., concurring). Importantly, Defendants cannot carry their burden by pointing to confounding factors that may also have contributed to the price drops; *any* finding that the information is corrective, new, and value-relevant "defeat[s] Defendants' rebuttal." *In re FibroGen Sec. Litig.*, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024).  Defendants may seek to disaggregate the various factors by "challeng[ing] loss causation at the appropriate time" later in the case—not at class certification. *Id.*; *see also Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6, 2024) ("The relevant inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage."); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 287 (N.D. Cal. 2020) (that corrective effect "can be blurred by confounding news" is no barrier to certification).

#### 1.    The Corrective Disclosures Incrementally Revealed the Truth that Defendants Hid from Investors

Defendants' challenge to the disclosures' corrective effect should be rejected for the simple reason that it does not address Plaintiffs' actual theory of the case.  *See Apple*, 2022 WL 354785, at *9 ("In analyzing whether defendants have severed the link between the alleged misrepresentation and the stock price, it bears repeating what this case is about.").  Ignoring the full allegations and narrative set forth in the SAC, Defendants misconstrue the concealed truth as

merely that the Yinghe equipment did not formally pass the FAT. (Opp. at 14.) But Plaintiffs' allegations are not so limited. Instead, Plaintiffs allege that, by misrepresenting that the Yinghe equipment had met the commercial production specifications required to pass the FAT, Defendants concealed the material risk that Fab-1 would not be able to achieve commercial production.[4] As the Court already held, *that* is the truth that caused Enovix's share price to fall when incrementally revealed by Enovix's subsequent pivot from (and then abandonment of) commercial production at Fab-1. As the Court succinctly put it:

> [The] theory of the case is that Enovix's decision to rush the Yinghe manufacturing equipment to Fremont before it passed the FAT was the first step in a chain of events that led to the equipment's continued failure to perform and the company's ultimate decision in October 2023 to abandon manufacturing efforts at Fab-1.

(Dkt. No. 116 at 23.) Hence, the corrective disclosures revealed the natural consequence (the inability of Fab-1 to produce batteries at commercial scale) of the concealed information (the inability of the Yinghe-supplied portion of the Fab-1 line to meet the commercial production specifications required to pass the FAT). Defendants cannot completely sever that inherent "link" between the alleged misstatement and disclosures.[5] *See Apple*, 2022 WL 354785, at *9 (admonishing defendants for "attempt[ing] to divorce" the remaining misstatements from broader issues and other statements that were not "wholly irrelevant" even if not independently actionable).

    *Zillow I* is instructive. There, the plaintiff alleged that the defendants overstated the performance of their algorithmic valuation model, which the company used to acquire and re-sell homes at profitable margins. *Zillow I*, 746 F. Supp. 3d at 1030. Subsequently, the company disclosed a series of drastic pivots away from its home acquisition program, including revelations that it had overpaid for and was unable to profitably re-sell numerous homes. *Id.* The court

---

[4] This distinguishes this action from *Pardi* and other cases addressing government approvals that *must* be formally "passed." Here, that Defendants waived the self-imposed FAT as a formal matter would be much less impactful had the equipment nonetheless been *capable* of meeting the FAT benchmarks for commercial viability, which is what investors were led to believe.

[5] Conceding that "all three corrective disclosures relate to the status of Fab-1," Defendants make the irrelevant observation that "the broad point that Fab-1 had problems is not the truth that Plaintiffs allege." (Opp. at 14.) Indeed, that is not at all what Plaintiffs allege. Defendants further posit that Fab-1's commercial nonviability may be partially attributable to other factors besides the nonperformance of the Yinghe-supplied equipment. (*Id.* at 17.) Even assuming that were true, *arguendo*, potentially needing to disaggregate the various contributing factors does not negate price impact. Such an undertaking is not required at class certification, where it is Defendants' burden to establish that the misleading information was not connected to the later disclosure *at all*.

rejected the argument that such disclosures were "mismatched" from the alleged misstatements about the valuation model, holding instead that the disclosed overpayments were "the result of" the model's inability "to accurately predict home price appreciation," contrary to what the defendants "had told investors." *Id.* at 1037. Hence, because the pivot away from the acquisition program "disclose[d] the consequences of [the company]'s alleged misrepresentations" about deficiencies in the pricing model underlying the program, "they are corrective disclosures capable of having a price impact." *Id.* The court underscored that "[a]n event can be corrective when it merely discloses a consequence of concealed information, . . . even if the connection between the cause and the consequence is not made explicitly in the disclosure." *Id.* at 1036.

Here, like in *Zillow I*, Defendants overstated the performance of their technology by misrepresenting to investors that the Yinghe-supplied portion of the Fab-1 manufacturing line was capable of producing batteries at commercial scale when it was not. Defendants later revealed a natural consequence of that concealed fact: that their production line incorporating the overstated Yinghe equipment (Fab-1) was not commercially viable. That is a sufficient "link." *See Zillow II*, 2025 WL 2741642, at *2 ("The back-end disclosures thus revealed new information about how [the company]'s home-pricing struggles threatened the business and suggested that its earlier statements may have obscured how [the company]'s pricing model misfired.").[6]

The cases relied upon by Defendants do not counsel otherwise.

*First*, *In re Kirkland Lake Gold Ltd. Sec. Litig.* addressed "fairly broad and generic statements," which the Supreme Court has cautioned are more likely to be mismatched from later, specific disclosures. 2024 WL 1342800, at *7-8 (S.D.N.Y. Mar. 29, 2024). Here, however, the misstatement was highly specific (*i.e.*, that a certain portion of the Fab-1 manufacturing line was meeting commercial production specifications) and was corrected by revelation of the direct consequences of that fact (*i.e.*, that Fab-1 was not commercially viable). *See In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *14 (S.D. Cal. Mar. 20, 2023) ("Defendants' alleged misstatements are not at such a high level of generality that one cannot discern the inherent

---

[6] Defendants fail to address *Zillow I*, noting only that its affirmance in *Zillow II* was "non precedential." (Opp. at n.4 (cleaned up).) But, that the Ninth Circuit nonetheless affirmed *Zillow I* by memorandum disposition only underscores that *Zillow I* rests on well-established principles.

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

contradiction between those statements and the information in the corrective disclosures when viewed side by side."). Moreover, one misstatement in *Kirkland* "referred to future [post-acquisition] targets, rather than rigid requirements at the time of [the upcoming] acquisition," so disclosure that those targets were not met "*at the time of acquisition*" was not corrective. 2024 WL 1342800, at *11. Here, Defendants misled investors about whether the Yinghe equipment was meeting then-*current* (not aspirational) specifications when it left China.

*Second*, the disclosures scrutinized in *FibroGen* are inapposite. There, two disclosures were deemed not-corrective because they revealed new information from the FDA that was previously unknown *to the defendants*, so they could not logically "correct" anything the defendants had previously said. *FibroGen*, 2024 WL 1064665, at *13-14. Here, there is no dispute that the Yinghe equipment's inability to function at commercial scale was known to Defendants.[7]

*Third*, the two misstatements deemed not corrective in *Pardi*—like in *FibroGen*—"reveal[ed] only new regulatory developments and FDA opinions" and not the substantive facts concealed by the defendants. 2024 WL 4336627, at *11.[8]

## 2. The Corrective Disclosures Each Revealed New and Value-Relevant Information

Properly framed, each of the three corrective disclosures incrementally revealed the truth of what Defendants could have said at the outset: "Our Yinghe-supplied equipment is unable to meet commercial production specifications, which poses a significant risk that our Fab-1 facility will not achieve commercial production." Tracing through the corrective disclosures, it is clear that the full truth was not exposed until Defendants finally admitted Fab-1's nonviability in October 2023. *See id.* at *10-12 (tracing timeline of alleged partial disclosures and concluding that only the final disclosure revealed the full truth).[9] Regardless, "precisely when the truth was

---

[7] Moreover, the third disclosure in *FibroGen*—a specific percentage figure—was deemed not-corrective because the data from which that percentage could be calculated had been previously disclosed. *Id.* at *15. Nothing of the sort happened here.

[8] *In re Vaxart, Inc. Sec. Litig.* is also inapposite. *Cf.* 738 F. Supp. 3d 1259 (N.D. Cal. 2024) That was "not your typical securities case"—unlike this one. *Id.* at 1265–66. There, "at least a portion of the corrective disclosures occurred immediately" alongside the misleading statement, so the key issue was how quickly the market absorbed the correction. *Id.* at 1266–67.

[9] Prior to *Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*, 594 U.S. 113 (2021), courts were generally precluded from entertaining any degree of "truth-on-the-market" defense at class

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

fully disclosed to the market" is an inquiry "best reserved for resolution on the merits, and should not result in the Court's narrowing of the class period" at this stage. *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 583 & n.4 (N.D. Cal. 2021) (collecting cases).

**November 2022 Disclosure:** Defendants do not contest that the November 2022 Disclosure revealed new, value-relevant information. (*See* Opp. at 16-18 (challenging only later disclosures).) Defendants passingly reference certain information disclosed in May-August 2022 as part of the bundle of information that Defendants contend was fully corrective *by November 7*, 2022, but they do not assert complete correction prior to *November 1*, 2022. (*Id.* at 17.) Nor could they. The statements made in May-August 2022 described how Enovix was "working on" Fab-1 "in order to fix" the "technical issues negatively impacting yield and volume production." (*Id.* at 6.) It was not until November 2022 that Enovix first disclosed that it was "dialing back" those Fab-1 improvement efforts and reducing its 2023 Fab-1 production forecast. (*Id.* at 7.)

**January 2023 Disclosure:** Contrary to Defendants' assertions, however, the full extent of the Yinghe equipment's inability to produce batteries at commercial scale was not disclosed in November 2022. As Dr. Tabak confirms, the November 2022 Disclosure and November 7, 2022 statements were not fully corrective, standing alone or combined with other disclosures. (Ex. 1 ("Tabak Reply") ¶¶ 6-22.[10]) Instead, the January 2023 Disclosure's revelation that the Yinghe equipment was unable to be automated, which "wreaks havoc with output and promises" (SAC ¶ 176), and was still producing only 100 UPH instead of 550 UPH (*id.* ¶¶ 176-78), further revealed that the Yinghe equipment was not commercially viable—as should have been verified by the FAT. That information was not fully disclosed in November 2022.

Indeed, the Court already adopted *Defendants' own position* that the November 7, 2022 press release disclosed only that the FAT was not *formally* completed because Enovix did not send its engineers to China; the press release did not say that the equipment *substantively* failed to meet

---

certification. *See Pardi*, 2024 WL 4336627, at *6–7. *Goldman* opened the door only to consideration of whether the *complete* truth was previously revealed, because *any degree* of corrective effect is sufficient to show *some* price impact, and disaggregation is a loss causation inquiry for a later stage. *Id.* at *7-8 & n.6; *see also FibroGen*, 2024 WL 1064665, at *12.

[10] "Ex." references exhibits to the Reply Declaration of Joshua Baker ("Baker Reply Decl.").

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

the required production specifications. (*See* Dkt. No. 116 at 20 (finding that "Rodgers admitted only to waiving the milestones that involved sending Enovix engineers to the vendor's factory in China and having the vendor's engineers travel to Enovix to install the manufacturing equipment" and not "that the equipment was never able to meet the [substantive] standards for [the FAT or SAT]").[11]) Defendants cannot now insist that the November 2022 press release actually disclosed that the Yinghe equipment could not meet the required production specifications for the FAT when it was airlifted from China. The January 2023 Disclosure was the first time that Enovix disclosed that the Fab-1 production line including the Yinghe equipment was performing far below the 550 UPH standard that should have been verified by the FAT. (*See also* Tabak Reply ¶¶ 25-27 (further disclosure of the *magnitude* of the risk to Fab-1 commercial production would impact stock price).)

**October 2023 Disclosure:** However, the January 2023 Disclosure's revelation that the airlifted equipment was yielding only 100 UPH *after installation* did not fully disclose to investors that the equipment had been performing so poorly *at the time it left China*. Hence, Enovix's January 2023 disclosure of post-installation problems still did not fully disclose that the Yinghe equipment had *never* met the required specifications for commercial production and the ongoing issues were not purely installation-related. Indeed, the very purpose of the SAT was to "provide[] an opportunity to confirm that the performance experienced during the FAT can be replicated after the equipment is installed," recognizing that "quality problems [may be] detected at the SAT" even "after the equipment passed the FAT." (SAC ¶¶ 91-92.) Moreover, Rodgers's assessment that Fab-1 was unlikely to *ever* exceed 200 UPH—while obviously new and value-relevant—did not fully disclose that the Yinghe equipment's inability to produce 550 UPH was fatal to Fab-1's commercial viability. The full materialization of the risk to Fab-1's commercial viability, stemming from the Yinghe equipment being substantively incapable of passing the FAT, was not apparent until Enovix announced in October 2023 that it was altogether abandoning commercial production at Fab-1. (*See also* Tabak Reply ¶¶ 28-30 (analyst estimates of 2025 revenues were

---

[11] *See also id.* at 11 (similar); Dkt. No. 97 at 17 ("[T]he only thing Rodgers admitted to [on November 7, 2022] was failing to send Enovix engineers to the vendor in China . . . in the midst of a global pandemic."); Dkt. No. 111 at 14 (Defendants arguing that "this statement only referred to waiving the travel requirement"); Dkt. No. 94 at 1 (similar); Dkt. No. 89 at 15-17 (similar).

lower by October 3, 2023, than they were on November 7, 2022).)

Defendants' arguments that the January and October 2023 Disclosures were not "value-relevant" mirror Defendants' arguments that such information was not "new": *i.e.*, that prior disclosures "superseded" the corrective disclosures and rendered "irrelevant" the information disclosed therein. (Opp. at 17-18.) However, Defendants concede that both disclosures were followed by significant drops in Enovix's share price (*id.* at 18), which is weighty evidence of price impact in an inflation maintenance case. *Zillow II*, 2025 WL 2741642 at *1; *In re Mattel*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) ("[A] statistically significant price adjustment following a corrective disclosure is evidence that the original misrepresentation did, in fact, affect the stock price."). Defendants attempt to discount that evidence with an expert opinion that such price declines were "caused exclusively by information other than the alleged truth." (Opp. at 18.) But that is merely (1) a re-hash of their failed argument that the disclosures were not corrective, and (2) a premature argument on loss causation. (*See* Tabak Reply ¶¶ 31-37.) Because Defendants fail to establish that the disclosures were not corrective *at all*, class certification is warranted. Disaggregation of corrective and confounding information (if any) is resolvable classwide later on. *SEB*, 335 F.R.D. at 287.

**B.      The Market for Enovix Stock was Efficient During the Class Period**

Here, "the burden required to establish market efficiency is not an onerous one." *Waggoner v. Barclays PLC*, 875 F.3d 79, 97 (2d Cir. 2017). National exchanges like the NASDAQ are the most efficient markets ever known to mankind. *See Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *10 (C.D. Cal. Jan. 5, 2017) (recognizing "presumption that stocks traded on the NASDAQ are efficient"); *see also Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 255 (D. Ariz. 2025) ("[T]his fact alone indicates market efficiency."). Whether the market for a NASDAQ stock may be marginally less efficient for sub-periods spawns interesting academic questions (*e.g.*: Is it slightly less efficient in the mornings before analysts in California have awoken? Or for the months a leading analyst is on maternity leave?). But these natural ebbs and flows do not render the market *inefficient* and are irrelevant to the *Basic* question of whether, "[l]ooking at the whole picture," Enovix's stock price sufficiently reflected all public material information throughout the

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Class Period. *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at \*9 (N.D. Cal. May 19, 2023).[12] *Basic* does not require "perfect" efficiency in every sub-period throughout the Class Period. Absent extraordinary circumstances, courts do not parse variations among sub-periods in exchange-based trading otherwise demonstrated to be robustly efficient on a class-period basis.[13] *See, e.g.*, *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 359 (C.D. Cal. 2015) (noting "dearth of precedent for modifying the length of a class period based on failure to meet the *Cammer* factors in certain sub-periods"); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 435 (D. Ariz. 2013) (rejecting requirement of "a day-by-day showing of market efficiency for class certification"); *In re Waste Mgmt. Sec. Litig.*, 775 F. Supp. 3d 742, 756 (S.D.N.Y. 2025) (declining to parse-out "lower trading volume" for sub-period "given the trading volume as a whole over [the class] period"); *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 735, 778 (E.D. Mich. 2024) (suggestion that market was inefficient on certain days did not outweigh analysis spanning full class period).[14] Ultimately, the *Cammer* factors—even the so-called "most important" one (Opp. at 19)—are merely "an analytical tool, not a checklist of requirements." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 574 (C.D. Cal. 2012); *see also Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at \*13 (N.D. Cal. Dec. 19, 2022) ("[E]ven if this [fifth] factor undisputedly favored defendants, plaintiffs still may be entitled to the fraud on the market

---

[12] "[B]ecause perfectly efficient and perfectly inefficient markets rarely, if ever, exist, market efficiency naturally must be measured in degrees, rather than in the absolute." *Miller v. Thane Int'l, Inc.,* 2005 WL 5957833, at \*3 (C.D. Cal. Mar. 3, 2005) (rejecting "nonsensical" notion "that an efficient market is an 'on/off switch'" because "even though a stock may not be perfectly efficient, it can still be efficient, i.e. impound information into its price," to a high degree).

[13] Notably, the *Cammer* and *Krogman* factors were developed to assess over-the-counter pricing efficiency for particular stocks. *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015). Absent extraordinary circumstances, there is no reason to subject the NASDAQ's efficiency for large capitalization stocks to *Cammer* analysis *ad nauseum*.

[14] Tellingly, Defendants' (out-of-circuit) authorities do not do so. *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260 (D. Mass. 2006), scrutinized a sub-period where "extraordinarily high" structural "constraints" and "barriers" made it so the stock price "*could not*" "quickly and fully respond to news." *Id.* at 273–75. Here, Defendants merely suggest the market for Enovix stock was less active during the Lock-Up Period, not that it was structurally incapable of incorporating information. *Brokop v. Farmland Partners Inc.* is also inapposite. *Cf.* 2021 WL 4913970 (D. Colo. Sept. 30, 2021). Plaintiffs there *conceded* there was no significant "relationship between firm news and price movement" for a full year. *Brokop v. Farmland Partners Inc.*, 2021 WL 4916240, at \*18 (D. Colo. July 23, 2021) (otherwise finding that "a battle of the experts" did not preclude class certification *for contested periods* notwithstanding "concerns" with the plaintiffs' analysis). And the magistrate judge's ruling was mooted by the district court shortening the class period on a different basis. *Brokop*, 2021 WL 4913970, at \*5 & n.7.

presumption."); *Borteanu*, 348 F.R.D. at 258 (similar).

Regardless, even if the Court were to entertain Defendants' selective *Cammer*-factor attacks on gerrymandered weeks or months of the Class Period, they at most show that efficiency was less than "perfect" during the Lock-Up Period—not that the market was *failing to incorporate available information*. (*See* Tabak Reply ¶¶ 49-70 (rebutting Defendants' expert's criticisms that six of the fourteen metrics Dr. Tabak analyzed show a lesser degree of efficiency during Lock-Up Period).) Indeed, courts specifically reject that lockup periods "undermine the overall . . . market efficiency analysis" for large companies where there are still many millions of shares (and dollars) freely trading on the NASDAQ, as there were here. *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at *10 (N.D. Ill. Mar. 5, 2015); *see also Borteanu*, 348 F.R.D. at 256. Absent a showing of "*actual*" constraints, the "theoretical constraints" of a temporarily reduced float "do not undermine Dr. [Tabak]'s methodology for determining whether there was an efficient market for [Enovix] stock during the [C]lass [P]eriod." *Groupon*, 2015 WL 1043321 at 10 & n.9. Likewise, courts regularly reject selective application of the *Cammer* factors to cherry-picked sub-periods with *less* price movement and *fewer* analysts. *Radient*, 287 F.R.D. at 572 ("Such a counting game seems antithetical to a thoughtful analysis of market efficiency."). Defendants' bid to gerrymander the Class Period by arguing that certain *Cammer* factors were *less* prevalent for the lockup sub-period cannot overcome Plaintiffs' showing that the market was sufficiently efficient during the Class Period to invoke *Basic* at this stage. *See Malriat*, 2022 WL 17974629, at *12.

## C.    Damages are Capable of Measurement on a Classwide Basis

At class certification, Plaintiffs need only show that a damages model is "attributable to" the proposed theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–36 (2013). Plaintiffs propose a standard methodology for calculating classwide damages that aligns neatly with their theory of liability. In his opening report, Dr. Tabak "opines that a class-wide 'out of pocket' damages model can be commonly applied to all class members, . . . provides details on how such a model could be constructed, including by using an event study, and explains that this methodology can disentangle the effects of confounding information and events," which is "sufficient to satisfy Rule 23(b)(3)." *Sayce v. Forescout Tech., Inc.*, 754 F. Supp. 3d 878, 897

(N.D. Cal. 2024) (Illston, J.) (collecting cases); *see also City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *7-11 (N.D. Cal. May 9, 2022) (finding Dr. Tabak's common damages methodology was sufficient to support certification and noting that "[o]ther courts in this District agree regarding the sufficiency of damages disclosures like Dr. Tabak's"). This methodology for securities fraud class actions is widely accepted. *Forescout*, 754 F. Supp 3d at 897-98 ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.").[15]

Defendants' argument that Plaintiffs have not yet detailed precisely how they will disaggregate damages (Opp. at 21) is premature and inappropriate at the class certification stage. *See Forescout*, 754 F. Supp. 3d at 898 (rejecting nearly identical arguments as "pertain[ing] to loss causation") (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812–13 (2011)). "Numerous courts in this District have similarly held that inquiries into loss causation are inappropriate at the class certification stage." *Id.* (collecting cases).[16] "[T]hat calculating damages is a complex undertaking does not undermine the use of the out-of-pocket model, nor does it militate against certifying the class." *Id.* at 899–900. Dr. Tabak's methodology will ably account for varying levels of inflation throughout the Class Period due to the alleged partial corrective disclosures (which is a classwide, not individualized, issue) using widely accepted disaggregation techniques "(including but not limited to cash-flow analyses and content analysis) to separate out the effect of any confounding (*i.e.*, unrelated to the remaining allegations) information." (Tabak

---

[15] *See also In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *13 (N.D. Cal. Apr. 21, 2016) (Illston, J.) (collecting cases)). That Plaintiffs assert a materialization-of-the-risk theory "does not contravene *Comcast* or defeat predominance." *Junge v. Geron Corp.*, 2022 WL 1002446, at *8 (N.D. Cal. Apr. 2, 2022).

[16] *See, e.g.*, *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (criticism of proposed disaggregation methods "prematurely addresses the quantification and allocation of damages"); *Malriat*, 2022 WL 17974629, at *15; *In re Vaxart, Inc. Sec. Litig.*, 759 F. Supp. 3d 1015, 1017 (N.D. Cal. 2024); *City of Birmingham Relief and Ret. Sys. v. Acadia Pharms., Inc.*, 348 F.R.D. 372, 394 (S.D. Cal. 2024) (plaintiff's expert need not "precisely identify what approach he will use to control for every variable in the case"). Defendants' out-of-circuit cases hold no differently. In *Jaroslawicz v. M&T Bank Corp.*, "Plaintiffs' expert ha[d] not presented *any* methodology or argument for addressing price impact" for non-Section 10(b) claims. 2024 WL 2975766, at *8 (D. Del. June 13, 2024). And *Kottaras v. Whole Foods Mkt., Inc.* was an antitrust case where the proposed damages methodology was "too vague for the Court to even evaluate." 281 F.R.D. 16, 25-26 (D.D.C. 2012).

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Report ¶ 68.) While Plaintiffs dispute that any disclosures prior to the November 2022 Disclosure impacted the level of artificial inflation, Dr. Tabak's methodology could account for any such differences in the same way.[17] (*See* Tabak Reply ¶¶ 40-47.) "[C]halleng[ing] [the expert's] ability *in practice* to adjust for the confounding factors . . . is an inquiry to consider at the merits stage." *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 217 (C.D. Cal. 2019).

### D.       The Proposed Class Representatives are Adequate and Typical

**Adequacy:** *First*, the notion that the timing of Discovery Funds' sales yields intra-class conflicts has been resoundingly rejected by this Court (and many others), *including in this very action* (Dkt. No. 68 at 9-12). *See In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009) (Illston, J.).[18] Regardless, while "expressly" finding no problems with Discovery Funds serving as a class representative "based on the timing of their stock sales," the Court also concluded that any latent issues were ameliorated by the presence of additional class representatives whose trading covers the entire Class Period. (Dkt. No. 68 at 15.) Ms. Selke, for example, fills that role, and Defendants provide no basis for the Court to deviate from its prior ruling on this issue.

*Second*, Defendants' arguments regarding Mr. Lee's trades elide critical details. Mr. Lee's first two purchases occurred during the Class Period, before any corrective disclosure, and he sold those shares for a significant loss after the January 2023 Disclosure. (Dkt. No. 203-1.) All his trading "profits" were from shares that he bought *and* sold (a) before the November 2022 Disclosure or (b) between the January and October 2023 Disclosures. (*Id.*; Baker Reply Decl. ¶ 6.) Thus, unlike the plaintiff in *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D.

---

[17] In *Loritz v. Exide Techs.*, the expert addressed damages for the first time in his rebuttal report, only "discuss[ed] general techniques for computing damages," and "fail[ed] to propose one model explaining how he would use the techniques in concert to calculate damages in this case." 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015). Here, Dr. Tabak "set forth the out-of-pocket model of damages in his opening expert report, tied the model to the facts of this case, and identified techniques that could be used to disaggregate the effects of different misrepresentations and confounding information." *Forescout*, 754 F. Supp. 3d at 899 & n.6 (distinguishing *Exide*).

[18] *See also Forescout*, 754 F. Supp. 3d at 909 (citing *Blackie v. Barrack*, 524 F.2d 891, 908–10 (9th Cir. 1975)); *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 254–55 (N.D. Cal. 2013) ("This argument regarding potential interclass conflict has been rejected by the majority of judges.") (collecting cases). *Ma v. Twitter* is inapposite. 2024 WL 4859090, at *4 (N.D. Cal. Nov. 20, 2024) (plaintiffs were "seek[ing] to compel arbitration in this district, while some putative class members seek to compel arbitration elsewhere or seek to pursue claims in court").

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Cal. Feb. 15, 2011), Mr. Lee did not "benefit[] from the fraud," he *lost* money on the trades affected by the artificial inflation and deflation caused by the fraud and corrective disclosures.

*Third*, that Mr. Lee and Mr. Kung amended their certifications to add trades made *after* they initially signed the documents or to correct immaterial typos does not render them inadequate. (*See* Baker Reply Decl. ¶¶ 7-8.[19]) Their timely correction of inadvertent errors in their certifications does not undermine their adequacy, as Defendants have made no showing of "bad faith or intent to deceive." *Apple*, 2022 WL 354785, at *5.[20]

*Fourth*, offhand comments from Mr. Fruchter and Mr. Kung do not detract from Plaintiffs' adequacy and reflect, at the most, the unpleasantness of the laborious deposition experience—not "disdain for their roles." (Opp. at 24.) Indeed, Mr. Kung clearly clarified he was "just kidding." (Ex. 3 at 223:6-10.) And Mr. Fruchter's lack of deep involvement in the case until he was prepared as the Discovery Funds' corporate representative for deposition does not reflect the *Discovery Funds'* ignorance of their roles or responsibilities. (*See* Dkt. Nos. 7-2, 67, 201-6.) Nor does Mr. Kung's inability to recall specificities in select deposition testimony undermine his adequacy; he demonstrated his understanding of the theory of the case.[21] (Baker Reply Decl. ¶ 10.) Mr. Lee understood and abided by his document preservation responsibilities. (*Id*. ¶ 11.)

**Typicality:** Defendants' baseless insinuation that Discovery Funds relied on non-public information from Omron and Enovix does not undermine typicality. Here, as in *Kalodner v. Michaels Stores, Inc.* (the lone case cited by Defendants), "*there is no evidence*" that anything was non-public. 172 F.R.D. 200, 209 (N.D. Tex. 1997) (emphasis added).[22] To the contrary, Mr.

---

[19] Mr. Lee also corrected his inadvertent omission of one purchase and sale in a separate account, where he had exited his entire position prior to signing his certification. (Baker Reply Decl. ¶ 7.)

[20] *See also In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) ("Multiple district courts have held that minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.") (collecting cases).

[21] *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (plaintiff's failure to "memorize[] portions of the complaint does not undercut" adequacy where he "otherwise demonstrated a basic understanding of the [case] theory"); *Mulderrig*, 340 F.R.D. at 584 (similar).

[22] This Court and others uniformly reject such unsupported insinuations. *See, e.g., Forescout*, 754 F. Supp. 3d at 904 ("[T]here is no indication that [the investor] had access to any material non-public information."); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *6 (N.D. Cal. Dec. 22, 2016) ("[T]here is no evidence that non-public information was shared."); *In re Miller Indus., Inc. Sec. Litig.*, 186 F.R.D. 680, 686 (N.D. Ga. 1999) ("The Defendants have made no showing that [the class representative] . . . relied on information not available to the market.").

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Lieberman testified that ████████████████████████████████████████ ████████████████████████████████████████████████████████ (Ex. 4 at 320:16-24.)  Hence, Defendants' insinuation is mere ███████████████████ ████████████████████████████████████████████ (*Id.* at 309:3-5.)  That Mr. Lieberman ███████████████████████████████████████████████████ ████████████ does not render the Discovery Funds atypical.  *Basic*'s premise is that even nascent information rapidly disseminates through the market, and "[c]ourts have routinely rejected the [typicality] argument [D]efendant[s] now advance[]." *Diamond Foods*, 295 F.R.D. at 252 ("Most investors think they are a little smarter than average and see opportunities others have missed.  Still, they all rely on publicly available data.").  Likewise, Mr. Lieberman testified ███ ████████████████████████████████████████████████ (Ex. 4 at 173:3), ████████████████████████████████████████████ (*id.* at 275:9).  No typicality problem exists where "the plaintiff has received information . . . that confirms, reflects, repeats, or even digests publicly available market information." *In re Intuitive Surgical*, 2016 WL 7425926, at *6.  That is exactly what Mr. Lieberman testified: ██████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████.[23]  (Ex. 4 at 278:23; *see also id.* at 278:16-19 (███████ ██████████████████████████████████████████████████████ █████████████████████.)  "Defendants have not offered any proof to the contrary," such as declarations from management establishing that Enovix furnished Mr. Lieberman with non-public information.  *Forescout*, 754 F. Supp. 3d at 904-05; *see also Tile Shop*, 2016 WL 4098741, at *5 & n.3.  Defendants would obviously be in possession of such evidence *if it existed*.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted.

---

[23] *See also Levy v. Gutierrez*, 448 F. Supp. 3d 46, 69 (D.N.H. 2019) ("Courts have consistently certified classes where there was no evidence that the named plaintiff received non-public information from a corporate officer." (cleaned up)); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *5 (D. Minn. July 28, 2016) ("[T]he record lacks support for Defendants' contention that non-public investment information was disclosed during [the representative]'s meeting and communications with [company] executives.").

- 15 -

Dated: January 16, 2026

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
pkim@rosenlegal.com
jbaker@rosenlegal.com

**ROLNICK KRAMER SADIGHI LLP**
Lawrence M. Rolnick (*pro hac vice*)
Marc B. Kramer (*pro hac vice*)
Nicole T. Castiglione (*pro hac vice*)
Shane Kunselman (*pro hac vice*)
1 Pennsylvania Plaza, Suite 3401
New York, NY 10119
Telephone: (212) 597-2800
lrolnick@rksllp.com
mkramer@rksllp.com
ncastiglione@rksllp.com
skunselman@rksllp.com

*Co-Lead Counsel for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION