# EXHIBIT 2

R. Lee - Confidential

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

------------------------------------------------------------x

In Re:

ENOVIX CORPORATION SECURITIES        C.A. No.
LITIGATION,                          3:23-cv-00071-SI

------------------------------------------------------------x

REMOTE VIDEOTAPED DEPOSITION OF

ROBERT G. LEE

New York, New York

November 12, 2025

Reported by:

THOMAS A. FERNICOLA, RPR

JOB NO. J13747955



R. Lee - Confidential

way to Enovix, such as options, swaps, derivatives?

Anything else?

A.    No.  No, I haven't.

Q.    Is there any other person besides yourself who you have ever consulted in connection with your decisions to buy and sell Enovix stock?

A.    No.

Q.    No one at all?

A.    No, I haven't.

Q.    Is there any other person you've ever spoken to about Enovix besides your attorneys at The Rosen Law Firm?

A.    No.

Q.    Not even a friend?  Nobody?

A.    Not that I recall.

Q.    When did you first learn of Enovix?

A.    It was prior to my purchase in the end of 2021, and I think it was probably a news wire that I received by email from my E*TRADE account or my



R. Lee - Confidential

Raymond James account, just as business news and...

Q.    Do you recall what that email reflected?

A.    Just announcement of a new energy company, the Enovix Corporation.

Q.    Do you think you still have that email in your email account?

A.    Probably not, no.

Q.    Why not?

Do you regularly delete emails from your email account?

A.    Yes, yes.  Every day, yes.

Q.    At the beginning of your involvement with this litigation, did your counsel advise you to retain any and all documents that you had related to Enovix?

A.    In the beginning, yes.

Q.    Do you think at that point in time, when you first got involved with this litigation, you might have still had that email from Raymond or E*TRADE?

A.    Probably not.  The initial



                    R. Lee - Confidential

emails, no.

          And I might not have recognized the significance even after I had initial contact with The Rosen Law Firm, just because it's the type of news wire emails that I get every day.

     Q.    I'm sorry, I didn't fully understand that.

          Just because what is at the top of news wire emails that you get every day?

     A.    Normal market informational-type emails that I get every day.

          I might briefly look them over, and I might not, but they always are deleted.

          And so I might not have saved all the emails regarding Enovix even after initial contact with The Rosen Law Firm.

     Q.    I see.

          So you had a regular practice of deleting those daily news wire emails



R. Lee - Confidential

that you receive?

A.    Yes.

Q.    Did you understand, after you first spoke with The Rosen Law Firm, that you had an obligation as a participant in this litigation to retain all documents that related in any way to Enovix?

MR. BAKER:  Objection.

Asked and answered.

A.    Initially, I had no reason to think that I was obligated to save any correspondence of that nature, because it was only in a, kind of, announcement by The Rosen Law Firm that they were filing a class action suit.

And I don't think I had signed anything, you know, initially with The Rosen Law Firm indicating that I was a class representative, and I needed to save correspondence of that nature, that I recall.

Q.    At some point in time, did you come to understand that you needed to save correspondence relating to Enovix?



R. Lee - Confidential

A.    At some point, yes.

Q.    Do you know when you came to understand that?

A.    It was probably later in the process.

Q.    Can you tell me, approximately, when in the process?

A.    I don't recall that specifically, no.

Q.    Have you known for at least the past year that you needed to retain information relating to Enovix?

A.    Yes.

Q.    Have you had that understanding for more than a year?

A.    I don't recall, but I don't think so.  Probably.

Q.    How do you recall learning that you had that obligation?

A.    When I received the formal documents from The Rosen Law Firm indicating that I would be participating in the suit.

Q.    When would that have been?



R. Lee - Confidential

A.    I don't recall an exact date. I'm sorry.

MS. KAPUR:  Olivia, let's bring up Demonstrative 1.

BY MS. KAPUR:

Q.    Mr. Lee, this is just a summary of what we just went through orally, just all of the sales and purchase transactions in Enovix stock for which we have records.

And later in the deposition, if needed, we can go through the underlying documents.  It will just take some time.

I just want to ask:

To the best of your recollection, sitting here today, does this accurately reflect all of your purchases and sales in Enovix stock?

A.    Yes, I believe so.

Q.    Thank you.

MS. KAPUR:  Olivia, you can take that down.

MR. BAKER:  Emily, I'll just interject briefly.



R. Lee - Confidential

submitted it...

Sorry.

When you first submitted your certification to The Rosen Law Firm in January 2023, did you intended to lie about or hide any trades that you had made?

A.    No.

Q.    Is it possible that at that time you simply forgot to include your trades from your Raymond James account?

A.    Very possible, yes.

Q.    When your certification was then filed in July of 2023, as we looked at earlier today, again, at that time, did you intend to lie about or hide any transactions you had made in the Enovix security?

A.    No.

Q.    And same when you reviewed your interrogatory responses that we looked at earlier today, in November of last year, when you reviewed those and provided responses, did you intend to lie about or



R. Lee - Confidential

hide any transactions in Enovix securities at that time?

A.    No.

Q.    Are you willing to submit an updated certification that more accurately reflects all of your trades in Enovix securities during the class period?

A.    Yes.

MR. BAKER:  That's it for now, unless there's further cross-examination.

MS. KAPUR:  Nothing further from me.

Thank you very much for your time today, Mr. Lee.

THE WITNESS:  You're welcome.

Thank you.

THE VIDEOGRAPHER:  This now concludes the videoconference deposition of Robert G. Lee.

MR. BAKER:  We will do a transcript.

Let's do a rough and a regular



```
                    R. Lee - Confidential

                        CERTIFICATE

STATE OF NEW YORK  )
                   :  ss
COUNTY OF NEW YORK )
```

        I, THOMAS A. FERNICOLA, a Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

        That ROBERT G. LEE, the witness whose deposition is herein before set forth, was duly sworn by me, and that such deposition is a true record of the testimony given by such witness on November 12, 2025.

        I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of November 2025.


                    _____
                        THOMAS A. FERNICOLA, RPR