# EXHIBIT 3

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE ENOVIX CORPORATION ) Case No.
SECURITIES LITIGATION ) 3:23-cv-00071-SI
)
)
THIS DOCUMENT RELATES TO: )
)
ALL ACTIONS )
_____ )

** CONFIDENTIAL **

VIDEO DEPOSITION OF GARY KUNG

VIA ZOOM VIDEOCONFERENCE

MONDAY, DECEMBER 1, 2025

REPORTED BY:

LISA MOSKOWITZ

CA-CSR 10816, RPR, CRR, CLR

WASHINGTON CCR 21001437, NEVADA CCR 991

ILLINOIS CSR 084.004982



signed.  I don't recall the details.

BY ATTORNEY VALLAR:

Q.  Sitting here today, what do you recall about the first amended complaint that you reviewed and authorized before filing?                          09:31

A.  Just that there were losses, based on misleading statements from management.

Q.  What were those misleading statements?

A.  Just about production capability of equipment, that there were sourcing from, you know,   09:31 overseas, statements regarding how the equipment were performing, and how they would work to -- what we -- you know, at that point, I guess it was quite a while ago.  About three, four, or five years ago. I think what they called factory acceptance testing.   09:32

So the big point for all the investors was waiting for factory acceptance by management so they could bring the equipment over for production in California.

And that seemed to be a big problem, and       09:32 that caused a lot of stop losses based on claims of the equipment was good, the equipment was not good, et cetera.

I mean, because when I say "not good," it never -- the equipment never produced product and   09:32



production capacity at the quality levels for customer production, customer shipments.

Hello?

Q.   I'm looking back over your answer, and so I asked you what those misleading statements were, and you said misstatements about the production capability of equipment, sourcing from overseas, statements regarding how the equipment were performing.

Are those generally the types of statements that you -- that the first amended complaint, in your understanding, alleges were misstatements?

A.   I think you should refer -- I don't recall. This is two, three years ago; right?  You can read what the amendment says, the amended complaint says. I'm just telling you, from my point of view, why I bought the stock, why I sold the stock, you know, at a loss.

Q.   I'm asking you for your recollection, sitting here today.  I'm not asking you to --

ATTORNEY KIM:  He's already testified as to his recollection.  It's not perfect.  Why don't we just move on to the next question.

ATTORNEY VALLAR:  Thank you very much.

ATTORNEY KIM:  This is not a memory test.



And it continues.

What did you allege in the second amended complaint that was different from the first amended complaint?

A.  I don't recall.  I know the second complaint was about products, the equipment shipped to California prior to the IPO.  It was never -- it was never accepted or confirmed.  And they just released the equipment and then they tried to do the confirmation of the production and the specifications in California, which they eventually gave up, too, I mean, at the final point, by going to Malaysia.  I think it was Malaysia.

So it was a big round circle and, you know, the investors were just following along, you know, getting the short end of the stick.

Q.  So I asked what you alleged in the second amended complaint that was different from the first amended complaint --

A.  I don't -- whatever is different, you need to check yourself.  Okay?

What -- the second complaint was more about what I felt were misleading statements about the condition and the capability of equipment that was supposed to be factory-acceptable equipment to do



not been doing that.

I just ask that you let me finish my questions, and we can get through this expediently as possible.

Does that make sense?                                      10:01

A.  Very professional.  So let me give you my side.  The dog needs to leave the kennel every one and a half hours for a potty break.

So does that make sense?

Q.  It makes sense.                                        10:01

A.  Okay.

Q.  To that end, before we left for our break, we were looking at Exhibit 1 which was your declaration.  We were going line by line.  But if we go to the bottom of it -- so this is Exhibit 1, if      10:02 you have that pulled up in front of you.

A.  No.  I kind of remember.  I would like to be able to keep an eye on -- okay.  There you go.

Q.  So if you go to the last page, we see that it's signed:  I declare, under penalty of perjury of     10:02 the laws of the United States of America, that the foregoing is true and correct.  It's signed.  And it looks like your signature and dated November 14, 2025.

Is that correct?                                          10:02



A.   Yes.

Q.   Does this document fully and completely reflect your understanding of the case as of November 14, 2025, as reflected in this signature?

A.   Yes.

10:02

Q.   Is there anything else you'd like to add or amend or change based on your review of this document, sitting here today?

A.   Not for that document, no.

Q.   When did you begin first investing in individual stocks?

10:02

A.   19 -- 1979.

Q.   How would you describe your approach to investing?

ATTORNEY KIM:  For then or now?

10:03

THE WITNESS:  What's that?

ATTORNEY KIM:  Are we asking for then or now?

BY ATTORNEY VALLAR:

Q.   Generally across time.  Starting in 1979, was there one overarching approach you've taken to investing?

10:03

A.   Yeah.  I tend to like betting on management teams, and I tend to look for a very, very large TAM.  That's Total Available Market.

10:04



on it.  And over time, they pivoted, and I bought in on it.  Both times were -- the optimism was misplaced.

Q.  Have you ever been lead plaintiff in a class action before?

A.  Never.  This is my first one, and I'm regretting it now.

Q.  Why are you regretting it?

A.  Thinking that Phil Kim is a better salesman than me.  No, just kidding.  He told me it wouldn't be a lot of work.  I know what happened to me, why I lost business.  And I thought that I was a pretty logical guy, and I still couldn't decipher what was going on properly, you know, with the statements and so forth coming out of the company.  And I was -- I guess I lost a lot of money, and I just -- you know, if I do a decent job, the other shareholders could be -- who lost money for this or other various reasons can get some money back, you know.

Q.  If you had known it would be as much work as it's been, would you have signed up to be a lead plaintiff?

A.  No.

ATTORNEY KIM:  Objection to form.  That calls for speculation.



REPORTER'S CERTIFICATE

I, LISA MOSKOWITZ, a Certified Shorthand Reporter, licensed in the states of California, Nevada, Illinois, and Washington, do hereby certify that GARY KUNG was by me duly sworn or affirmed; that said deposition was reported stenographically by me at the time and place herein named;

That the deposition is a true record of all testimony as reported stenographically to the best of my ability and was thereafter transcribed under my direction; that if this is a Federal case, a request [ ] was [X] was not made to read and correct said deposition; that the dismantling of the original transcript will void the reporter's certificate.

I further declare that I have no interest in the outcome of said action nor am I related to any of the parties or counsel in said action.

IN WITNESS WHEREOF, I have subscribed my name this 2nd day of December, 2025.

_____
LISA MOSKOWITZ
California CSR 10816, RPR, CRR, CLR
Washington CCR 21001437, Nevada CCR 991,
Illinois CSR 084.004982



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com