QUINN EMANUEL URQUHART & SULLIVAN, LLP
Emily C. Kapur (Cal. Bar No. 306724)
emilykapur@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

Andrew J. Rossman (*pro hac vice*)
Jesse Bernstein (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
Sasha Boutilier (*pro hac vice*)
W. Jackson Vallar (Cal. Bar No. 341861)
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
andrewrossman@quinnemanuel.com
jessebernstein@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com
sashaboutilier@quinnemanuel.com
jackvallar@quinnemanuel.com

*Attorneys for Defendants*
*Enovix Corporation, Harrold Rust, Steffen Pietzke,*
*Thurman J. Rodgers, Emmanuel T. Hernandez, John D.*
*McCranie, Betsy Atkins, and Gregory Reichow*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ENOVIX CORPORATION SECURITIES LITIGATION<br><br><br>This document relates to: all actions. | Case No. 23-cv-00071-SI<br><br>**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO LEAD PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Judge: Hon. Susan Illston<br><br>Hearing Date: March 13, 2026<br><br>Hearing Time: 10:00 AM<br><br>Courtroom 1, 17th Floor |

Case No. 23-cv-00071-SI

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ........................................................................................................................2

I.   PLAINTIFFS CANNOT SOLVE MISMATCH BY SEEKING RECONSIDERATION OF THEIR NARROWED CASE. ....................................................3

    A.   The Court Already Rejected Plaintiffs' Version Of The Alleged Truth. ...................3

    B.   A Consequence Disclosure Theory Fails With Independent Effects ........................4

II.  NO NEW, VALUE-RELEVANT INFORMATION ABOUT THE YINGHE EQUIPMENT WAS REVEALED IN 2023.............................................................................5

    A.   The Market Fully Understood The Alleged Truth By November 7, 2022.................5

    B.   The 2023 Disclosures Did Not Reveal Anything About The Alleged Truth. ............6

CONCLUSION .....................................................................................................................7

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F.4th 74 (2d Cir. 2023)......................................................................................................... 5

*Brown v. Am. Airlines, Inc.*,
  285 F.R.D. 546 (C.D. Cal. 2011) ............................................................................................. 4

*In re FibroGen Sec. Litig.*,
  2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ....................................................................... 2

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  594 U.S. 113 (2021) .................................................................................................................. 1

*Jaeger v. Zillow Grp., Inc.*,
  746 F. Supp. 3d 1025 (W.D. Wash. 2024) .......................................................................... 4, 5

*In re Qualcomm Inc. Sec. Litig.*,
  2023 WL 2583306 (S.D. Cal. Mar. 20, 2023)......................................................................... 5

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION

## PRELIMINARY STATEMENT

Plaintiffs offer an extreme theory in their reply brief in an attempt to make sense of their putative "corrective disclosures" within their now-narrowed case. But Plaintiffs cannot escape a fundamental fact.[1] When the allegedly withheld truth was disclosed, Enovix's stock price *rose*. On November 7, 2022, Enovix disclosed that it had waived compliance with Yinghe's FAT and that Yinghe's equipment had problems. All five Plaintiffs testified this disclosed "the truth." Plaintiffs' expert admitted this disclosure was "more of" a mirror image to the Alleged Misstatement than any alleged corrective disclosure.[2] Yet Enovix's stock rose $1.11. When the most direct disclosure produces no price decline, the inference of back-end price impact "completely collapses." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 119 (2021).

Forced to concede this uncomfortable reality, Plaintiffs move the goalposts. The *only* theory of falsity remaining in this case rests on Plaintiffs' allegation that "the [Yinghe] equipment had failed the FAT." Dkt. 116 at 21. In their Opposition, Defendants demonstrated the mismatch between that alleged truth and Plaintiffs' "corrective" disclosures (on 11/1/22, 1/3/23, and 10/3/23). None of the cited disclosures revealed any problems with the Yinghe equipment at all; only the disclosure on 11/7/22 did. Now, on reply, Plaintiffs offer the extreme assertions that the "concealed truth at issue," Reply at 2, is that Enovix knew in August 2021 that the Yinghe equipment was "***known to not work at all***," Dkt. 214-2 ("Tabak Reply") ¶ 21, had demonstrated an "***inability to function*** at commercial scale," Reply at 6, and would cause Fab-1 revenues to be "***permanently reduced*** to relatively immaterial amounts," Tabak Reply ¶ 30. But the Court already considered this theory and held it unsupported by the Complaint's particularized allegations. Dkt. 116 at 19. Without that extreme theory, none of Plaintiffs' other defenses hold. While a materialization-of-risk theory may work when an outcome—as in *Zillow I*—is admittedly caused by an earlier risk, it falls apart when, as here, an outcome has independent possible causes, and the risk has already been fully disclosed.

---

[1] Defendants restrict this sur-reply to responding to Plaintiffs' price impact arguments and otherwise incorporate by reference all arguments in their Opposition. *See* Dkt. 217.

[2] Capitalized terms are defined in the Opposition; all emphasis added and quotations and citations omitted unless otherwise noted. Citations to "¶ __" are to the Second Amended Complaint, Dkt. 102.

Moreover, Plaintiffs' extreme theory cannot change that the January and October 2023 disclosures did not offer "new" or "value-relevant" information related to the Yinghe equipment. Not only were these disclosures made months after Enovix had fully disclosed the Yinghe equipment problems by November 7, 2022, they did not reveal any "materialized" problems with the Yinghe equipment. The January 2023 disclosure about Fab-1's challenges revealed nothing about Zone 3's performance, and if anything pointed elsewhere. The October 2023 disclosure announced that Fab-1 had succeeded—"fulfill[ing] its intended purpose"—and nothing at all about Zone 3. As this Court recognized in the 12(c) Order: "not every reference to 'equipment'" is "a reference to the Yinghe equipment." 12(c) Order at 11. Defendants have rebutted price impact entirely and the Court should deny class certification. Alternatively, Plaintiffs have not carried their burden to prove an efficient market prior to January 10, 2022 and there was no new, value-relevant information disclosed after November 7, 2022, and the Court should limit the Class Period to start January 10, 2022 and end prior to November 7, 2022.

## ARGUMENT

Defendants can defeat back-end price impact, and therefore class certification, by showing that no putative corrective disclosure was corrective, new, or value-relevant. *In re FibroGen Sec. Litig.*, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024); Opp. at 13. Defendants have shown all three alleged corrective disclosures are not "corrective" because none revealed anything about the Yinghe Zone 3 equipment. Opp. at 13-15. Defendants have further shown the January and October 2023 disclosures were neither "new" nor "value-relevant" because by November 7, 2022, at the very latest, Enovix had already disclosed the alleged truth. Opp. at 15-18.

Plaintiffs' Reply only underscores these arguments. *First*, by seeking reconsideration of their extreme theory of truth and disclosure, Plaintiffs concede the fatal mismatch between their corrective disclosures and the alleged truth upheld at the pleading stage. *Second*, Plaintiffs advance a theory around the 2023 disclosures that requires accepting the same false equivalence between the performance of the Yinghe equipment and the performance of Fab-1 overall that the Court properly rejected in the 12(c) decision. Their Amended Motion should be denied.

## I.    PLAINTIFFS CANNOT SOLVE MISMATCH BY SEEKING RECONSIDERATION OF THEIR NARROWED CASE.

The Reply's attempt to reframe Plaintiffs' theory results from the trajectory of this case. Plaintiffs pled 12 misstatements that broadly covered "the testing and qualification of [Enovix's] manufacturing equipment" and three corrective disclosures revealing "truths" about Enovix's Fab-1 equipment. Dkt. 116 at 10. They now have one misstatement left and a narrow theory: that "if the [Yinghe] equipment [for Zone 3] never passed the FAT, it was false and misleading for Enovix to state that the site acceptance test would 'confirm' the [Yinghe] equipment was meeting performance requirements." *Id.* at 12; 12(c) Order at 11. But to certify a class, Plaintiffs must overcome Defendants' showing that this narrow "concealed truth" does not match the broad corrective disclosures in the pleadings, none of which address Yinghe equipment or FAT at all. No amount of reverse-engineering in Plaintiffs' reply can provide the necessary link.

### A.    The Court Already Rejected Plaintiffs' Version Of The Alleged Truth.

Plaintiffs seek leave to renew a drastic theory of the alleged truth that they hope will better match their broad "corrective" disclosures: that Enovix knew in August 2021 that the Yinghe equipment was "***known to not work at all,***" Tabak Reply ¶ 21, and "***[u]nab[le] to function***" at scale, dooming Fab-1, Reply at 6. The Court already considered and rejected this theory. Dkt. 116 at 19.

This Court sustained the Alleged Misstatement based on a precise theory of falsity: "Enovix brought the Fab-1 equipment to California without it ever having passed the FAT." Dkt. 116 at 11. The Court sustained scienter on the theory that Defendants knew "the equipment had failed the FAT." *Id.* at 21. That is the Alleged Truth Plaintiffs adequately pled: the Yinghe equipment shipped without passing FAT and Enovix knew the equipment had problems.

Not only did the Court sustain only this narrow theory, it also rejected Plaintiffs' broader theory from their Reply. The Court held that Plaintiffs failed to plead that Enovix "k[new] on November 7, 2022 that Fab-1 would not in fact 'work and ship a lot of batteries to our customers[.]'" *Id.* at 19. This holding is directly in tension with Plaintiffs' extreme Reply theory: Enovix cannot have known in August 2021 that the Yinghe equipment would "not work at all" yet also reasonably believed in November 2022 that the Yinghe equipment would "work and ship a lot of batteries."

Nor is there any reason for the Court to revisit these settled holdings. At most, the Complaint alleges the "Assembly" zone was slow as of June 2022, ¶ 122, but that zone—Zone 2—did not include any Yinghe equipment, as Plaintiffs now concede. *See* Kapur Sur-Reply Decl. Ex. 5 (Plaintiffs admit they had ***no basis to assert*** that the Assembly zone included Yinghe equipment or that the Yinghe equipment was slow as of June 2022). There are no allegations that the Yinghe equipment had serious problems that lasted past FAT testing in early 2021.[3] Plaintiffs cannot now fill these holes in their Complaint with attorney argument. *See, e.g.*, *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011) ("Class certification is not a time for asserting new legal theories that were not pleaded in the complaint."). As such, Plaintiffs do not seriously challenge Defendants' mismatch argument under the ***only*** theory of falsity left in the case, and the Motion should be denied.

### B.    A Consequence Disclosure Theory Fails With Independent Effects

Plaintiffs invoke *Zillow I* to argue that disclosures can be "corrective" even if they do not *match* the alleged truth so long as they reveal the "*consequence*" of the alleged truth. Reply at 4-5 (citing *Jaeger v. Zillow Grp., Inc.* ("*Zillow I*"), 746 F. Supp. 3d 1025 (W.D. Wash. 2024), aff'd, 2025 WL 2741642 (9th Cir. Sept. 26, 2025)). But *Zillow I* only shows why this class cannot be certified.

In *Zillow I*, Zillow admitted that its home-buying business failed "because its pricing models had been unable to accurately forecast future home prices." *Zillow I*, 746 F. Supp. 3d at 1037–38. The failure was a direct consequence of the algorithm's shortcomings—the concealed risk. Here, by contrast, Fab-1 was a sequential manufacturing line with multiple independent zones with distinct equipment that served different purposes for battery production. Batteries were first fabricated in Zone 1, then assembled in Zone 2, then packaged in Zone 3, and finally tested in Zone 4. Dkt. 208-3 at 40. As Plaintiffs concede, "[e]ach of the areas were critical to complete the manufacturing process, such that all of the production areas must be running at full speed in order for Fab-1 to produce quality batteries at the specified rates." ¶ 96. Thus, any zone could independently constrain line-wide performance; if Zone 2 assembled batteries at 100 UPH and Zone 3 packaged batteries at

---

[3] Plaintiffs only allege that the Yinghe equipment demonstrated a "very low" yield and "never got close" to "capacity specifications" during FAT testing. ¶ 100. But conclusory assertions cannot support that the Yinghe equipment was "known to not work at all." Tabak Reply ¶ 21.

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION

550 UPH, the line ran at 100 UPH.  Just as a news report stating only that a relay team lost their race reveals nothing about Runner 3's performance, the revelation of "problems" with Fab-1 revealed nothing about whether Zone 3 was the cause.[4]  The back-end disclosure's "corrective effect" on the specific, pleaded concealed truth must be "obvious," as in *Zillow I.  Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc*., 77 F.4th 74, 98 (2d Cir. 2023).  Here, it is nonexistent.[5]

## II.    NO NEW, VALUE-RELEVANT INFORMATION ABOUT THE YINGHE EQUIPMENT WAS REVEALED IN 2023.

The January and October 2023 disclosures also "did not actually contain new information correcting the alleged misrepresentations."  *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *12-13 (S.D. Cal. Mar. 20, 2023).  This is true for two reasons: (1) the market understood the alleged truth by November 7, 2022 and (2) the 2023 disclosures revealed nothing about the alleged truth.

### A.    The Market Fully Understood The Alleged Truth By November 7, 2022.

Plaintiffs' reformulated alleged truth aims not only to solve mismatch, but also to avoid the disclosure that *fully disclosed* the alleged truth and caused the stock to rise.  On November 7, 2022, Enovix revealed exactly what this Court sustained as the only adequately pled concealed truth.  Opp. at 15-16.  TJ Rodgers announced that before flying the Yinghe equipment to Fremont, Enovix "waiv[ed] a key milestone called Factory Acceptance Test (FAT) . . . ."  ¶ 168.  He added: "We are still paying for the months we gained and then gave back due to equipment problems."  *Id.*  The stock *rose* $1.11.  ¶ 172.  Plaintiffs understood what this disclosure meant: Each attested that the "truth" was that FAT was "actually waived so that Enovix could ship the equipment from China to California."  Dkts. 201-6 ¶ 11; 201-7 ¶ 9; 201-8 ¶ 8; 201-9 ¶ 8.  At depositions, Plaintiffs testified that Mr. Rodgers disclosed this truth on November 7, 2022.  Opp. at 16.  Plaintiffs half-heartedly contend that the November 7 Press Release revealed only "that the FAT was not *formally* completed,"

---

[4]  Plaintiffs suggest that the zones' independent effects is a "disaggregation" exercise for the merits.  Reply at 2, 4 n.5.  Not so.  Disaggregation allocates among multiple *known* causes of a single effect.  Here, though, there is no connection at all between Fab 1's disappointing performance and the Yinghe equipment's performance beyond Plaintiffs' say-so.

[5]  *Zillow I* also did not involve any intervening disclosures between the misstatement and the corrective disclosures that revealed the concealed truth.  *Zillow I*, 746 F. Supp. 3d at 1036–38.

-5-                              Case No. 23-cv-00071-SI

not that the equipment "**substantively** failed to meet the required production specifications." Reply at 7-8.[6] But even Dr. Tabak acknowledged that by November 2022 Enovix had disclosed the waiver of FAT and equipment problems. Kapur Sur-Reply Decl. Ex. 2.. Plaintiffs' attempt to repackage the November 7 Press Release as "not substantive" fails.

Moreover, by November 2022, the market had absorbed months of disclosures about Fab-1's difficulties. *See* Kapur Sur Reply Decl. Ex. 1 ("James Sur-Reply") ¶¶ 21-27. By November 7, 2022, analysts had severely reduced their Enovix revenue targets for FY 2023, 2024, and 2025, by 95.5%, 92.1%, and 76.7%, respectively, compared to August 2021 in response to the company's disclosures throughout 2022 that Fab-1 had performance problems. *Id.* ¶¶ 22-23. The market thus fully understood that the bottleneck zone of Fab-1 was having significant problems with throughput and yield. *Id.* ¶ 24. On November 7, 2022, the Company further revealed that the Yinghe equipment had not been required to pass FAT and had problems. Unless the Yinghe equipment was known to be doomed to fail in August 2021, which the Court has already rejected, *supra* 1.A., the November 7 Press Release combined with all of the information the Company disclosed prior to November 7, 2022 was more than enough to disclose the full alleged truth and sever the link between *further* information about Zone 3 performance and the original withheld truth. James Sur-Reply ¶¶ 25-27.

**B.    The 2023 Disclosures Did Not Reveal Anything About The Alleged Truth.**

Price impact is also rebutted as to the January and October 2023 disclosures because neither revealed anything at all to the market about further problems with the Yinghe equipment.

*January 2023*. Plaintiffs argue Enovix's January 2023 disclosure that Fab-1, line 1 was operating at 100 UPH revealed that "the Yinghe equipment was performing far below the 550 UPH standard." Reply at 8. It did not. *First*, the market could not have concluded anything at all about the Yinghe equipment from a disclosure about the speed *of Line 1 as a whole*. James Sur-Reply

---

[6] Plaintiffs' assertion (Reply at 7) that this Court has held that the November 7 Press Release revealed merely "that the FAT was not *formally* completed" is wrong. The Court only concluded that the November 7 Press Release "did not amount to an admission that the FAT had been waived *altogether*," Dkt. 116 at 11—Plaintiffs' first theory of the case. The Court did not address whether the November 7 Press Release revealed the "truth" underlying Plaintiffs' current theory: "that Enovix brought the Fab-1 equipment to California without it ever having passed the FAT." *Id.*

¶¶ 29-30. If Zone 1 ran at 330 UPH, Zone 2 ran at 100 UPH, Zone 3 ran at 550 UPH, and Zone 4 ran at 400 UPH, then the line ran at 100 UPH. *Id.* ¶¶ 18-19. The Complaint itself alleges that Zone 2 was a "far cry" from specifications in June 2022. ¶ 122.[7] *Second*, the same January 2023 disclosure affirmatively indicated satisfaction with Fab-1's process to "validate[]" the design for Zones 3 and 4 sufficient for the Company to change "almost nothing" in designing its Gen 2 lines. James Rep. ¶ 97; Kapur Sur-Reply Decl. Ex. 3. Analysts understood this. For instance, B. Riley reported that changes requiring redesign for the Gen 2 lines were to "the sections of the battery [that] are connected in *Zone 2* of the line." James Rep. ¶ 104; James Sur-Reply ¶ 31. A disclosure that Zone 3 required "almost nothing" to be changed cannot offer the market corrective, new, value-relevant information about Zone 3 equipment failures.[8]

*October 2023*. The October 2023 disclosure offered the opposite of corrective, new, value-relevant information about Yinghe equipment problems. Enovix announced that Fab-1 had "fulfilled its intended purpose" including to "drive overall yield on the Gen1 equipment." Kapur Sur-Reply Decl. Ex. 4. Analysts reported that Fab-1 had achieved "[y]ields above 60%" "faster than expected." James Rep. ¶ 115. They understood this was a strategic choice for the company to reduce costs, not an equipment failure: J.P. Morgan stated the pivot was "more of a strategic decision than one reflective of capabilities, given that Fab-1 has seen significant yield improvements." *Id.* Canaccord called it a decision "made from a position of strength" after "Fab 1 had accomplished its mission." *Id.* A disclosure that Fab-1 achieved its purpose and drove high yields cannot provide new, value-relevant information about Zone 3 equipment failures. Plaintiffs' theory requires the Court to treat a disclosure of broad success as a disclosure of precise failure.

## CONCLUSION

The Court should deny Plaintiffs' Amended Motion or, in the alternative, certify only a Class Period starting January 10, 2022 and ending prior to November 7, 2022.

---

[7] *See supra* p.4. ¶ 122 refers only to the Assembly equipment in Zone 2. Opp. at 4.

[8] Plaintiffs also assert that the January 2023 disclosure "reveal[ed] that the Yinghe equipment was unable to be automated." Reply at 7. This is not true. The January 2023 disclosure said nothing at all specific to the Yinghe equipment as compared to "Line 1" or "Fab 1" as a whole. ¶¶ 21, 176.

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

Dated:  February 13, 2026

By: */s/ Emily C. Kapur*

QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
Emily C. Kapur (Cal. Bar No. 306724)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: +1 650 801 5000
Facsimile: +1 650 801 5100
Email: emilykapur@quinnemanuel.com

Andrew J. Rossman (*pro hac vice*)
Jesse Bernstein (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Brenna D. Nelinson (*pro hac vice*)
Sasha Boutilier (*pro hac vice*)
W. Jackson Vallar (Cal. Bar No. 341861)
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
andrewrossman@quinnemanuel.com
jessebernstein@quinnemanuel.com
courtneywhang@quinnemanuel.com
brennanelinson@quinnemanuel.com
sashaboutilier@quinnemanuel.com
jackvallar@quinnemanuel.com

*Attorneys for Defendants*
*Enovix Corporation, Harrold Rust, Steffen Pietzke,*
*Thurman J. Rodgers, Emmanuel T. Hernandez, John D.*
*McCranie, Betsy Atkins, and Gregory Reichow*

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION