# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
- - - - - - - - - - - - - - - - - - -x
IN RE: ENOVIX CORPORATION

SECURITIES LITIGATION                          Case No.

This Document Relates to                       3:23-cv-00071-SI

All Actions:
- - - - - - - - - - - - - - - - - -x

VIDEO-RECORDED DEPOSITION OF DAVID I. TABAK, Ph.D.

Taken remotely

Tuesday, November 25, 2025

Reported by:
Jeffrey Benz, CRR, RMR
Job No. J13823864



        VIDEO-RECORDED DEPOSITION of DAVID I. TABAK,

Ph.D., taken remotely, by Defendants, on November

25, 2025, commencing at 11:01 a.m., before

Jeffrey Benz, a Certified Realtime Reporter,

Registered Merit Reporter and Notary Public within

and for the State of New York.



increased the risk really at all?

MR. BODNAR:  Object to form.

A.   So let me put it this way, in that case if you ultimately win on that and the court or the jury accepts those documents as the correct view, there's no alternative view, I don't think you need me.  I don't think you need a damages expert.

So the only reason -- so I would basically have to structure my report kind of as if that's true, you don't need me, there are no damages because there's no liability.

If it's not true, then I would want to know why presumably plaintiffs' counsel thinks it's not true and what their alternative is. Because the case only goes to damages if there is in some sense some alternative to those documents.

Q.   You're aware that the company did disclose during the class period that --

A.   You're breaking up as you're turning. Can you --

Q.   Sorry.  You're aware that the company did disclose during the class period that they had waived FAT, correct?



A.    So I --

MR. BODNAR:  Object --

A.    -- I believe you're talking about -- about November 7, 2022?

Q.    Yeah, you're aware that on November 7, 2022, the company disclosed that it had waived FAT, correct?

A.    I just said it, so, yes.

Q.    And there was no price reaction to that disclosure, correct?

MR. BODNAR:  Object to form.

A.    If by "disclosure" you mean everything said in that statement, which was not just that they waived FAT, the answer is, there was not a statistically significant price movement.

Q.    The November 7 disclosure regarding the waiver of FAT was more of a mirror image to the alleged misrepresentation than any of the corrective disclosures, true?

MR. BODNAR:  Object to form.

A.    Well, I want to be careful by "more of."  I mean, it wasn't a mirror image in the sense that it didn't disclose the failures.  All it disclosed was a waiver, so in that sense it may be -- it may -- it may be closer on the

particular wording, but it didn't reveal anything about the failures of FAT, which plaintiffs allege essentially showed up via the three alleged corrective disclosures.

Q.   But you would agree that -- well, perhaps you would say it's not a perfect mirror image, it is more of a mirror image to the alleged misrepresentation than the three corrective disclosures, correct?

MR. BODNAR:   Object to form.

A.   I don't -- I think that's not quite right, because, really, the misrepresentation is -- I mean, there's waive FAT and failed the testing.  And November 7 is certainly more of a mirror image to waive FAT, but it doesn't reveal anything about failing the testing, which at least arguably shows up in the three alleged corrective disclosures, again, not as a -- it doesn't actually say, you're absolutely right, that -- that FAT was failed, but shows, at least plaintiffs allege, the results of that; or the results of the reasons underlying the failure of the FAT.

Q.   How many cases have you served as a retained witness?




A.    Over a hundred, I imagine.  Almost certainly has to be.

Q.    You had mentioned -- just go back a second for your -- the November 7.  You agree it did disclose that they were having equipment problems, correct?

MR. BODNAR:  Object to form.

A.    I -- I mean, that was -- I would want to compare November 1 to November 7, because November 7 basically said, what we said on November 1 seemed to overstate or give the market an overstated view of the equipment problems.

So I don't know if there was new information about the -- I would want to compare those two before saying that November 7 provided new negative information about equipment issues.

Q.    Back to -- back to the -- how many cases, you said over 100?

A.    I've got to imagine I've been retained on over a hundred.

Q.    And in the past three years, how many cases would you estimate you've been retained as a witness in?

A.    I don't know.  I -- I just don't know.



Q.   In the past three years, what percentage of the cases you were retained in were securities class actions?

A.   Probability 90-odd percent.

Q.   Okay.  And what percentage of those have been for -- were you retained by the plaintiffs in the past three years?

A.   I can't tell you.  I mean, we can go to my testimony and it will do something -- approximately -- if you want on my testimony for each side in the past three years, but on retentions, I don't recall.

Q.   You are familiar with the law firms in this case, correct, on the plaintiff side?

A.   It depends what you mean by "familiar."  I've worked with the Rosen firm before.  I don't recall if I've worked with RKS before.

Q.   How many times do you think you've worked with the Rosen firm for?

A.   Six to ten, maybe.  I'm not sure.

Can I -- I guess you're not going to count working with as when Larry Rosen deposed me, because I was working for the defense firm?

Q.   I would not count that, I suppose.

How many years ago was that deposition?

A.    Pretty sure it was pre-pandemic.

Q.    And you said you think you've worked with the Rosen Law Firm six to ten times, right?

A.    It's an estimate, I may be off.

Q.    Do you have an estimate of how much NERA has been paid from the Rosen firm over the past five years?

A.    I do not.

Q.    Think it is over a million dollars?

MR. BODNAR:  Object to form.

A.    It may be.

Q.    Think it's over 2 million?

MR. BODNAR:  Same objection.

A.    It may be.

Q.    Over 5 million?

MR. BODNAR:  Same objection.

A.    I don't know.

Q.    You said this is the first time you have worked with the Rolnick Kramer Sadighi firm?

A.    The first time I remember?

Q.    I -- I didn't use the word "remember." I asked if this is the first time that you've



A C K N O W L E D G E M E N T

I, DAVID I. TABAK, Ph.D., hereby certify, I have read the transcript of my testimony taken under oath in my deposition of November 25, 2025; that the transcript is a true, complete and correct record of what was asked, answered and said during this deposition, and that the answers on the record as given by me are true and correct.

_____
DAVID I. TABAK, Ph.D.

Subscribed and sworn to before me on this _____ day of _____, 2025

_____
NOTARY PUBLIC



C E R T I F I C A T E

STATE OF NEW YORK      )
                       )  Ss.:
COUNTY OF NEW YORK     )

      I JEFFREY BENZ, a Certified Realtime Reporter, Registered Merit Reporter and Notary Public within and for the State of New York, do hereby certify:

      That the witness whose examination is hereinbefore set forth was duly sworn by me and that this transcript of such examination is a true record of the testimony given by such witness.

      I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

      IN WITNESS WHEREOF, I have hereunto set my hand this 1st of December, 2025.

_____

JEFFREY BENZ, CRR, RMR



ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:    Enovix Corporation Securities

              Litigation

Dep. Date:    November 25, 2025

Deponent:     David I. Tabak, Ph.D.


Pg. Ln.      Now Reads        Should Read           Reason

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____

___ ___    _____  _____    _____


                         _____
                         Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME

THIS _____ DAY OF _____, 2025


_____

(Notary Public)  MY COMMISSION EXPIRES: _____

