

**The Rosen Law Firm**

**I N V E S T O R   C O U N S E L**

Joshua Baker
jbaker@rosenlegal.com

March 19, 2026

**VIA ECF**

Honorable Susan Illston
United States District Court for the Northern District of California
San Francisco Courthouse
Courtroom 1 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:    *In re Enovix Corp. Securities Litigation*, No. 3:23-cv-71-SI (N.D. Cal.)

Dear Judge Illston:

We write on behalf of Plaintiffs in response to Defendants' letter dated March 17, 2026 (Dkt. No. 226) and the Parties' colloquy with the Court during the March 13, 2026 hearing on Plaintiffs' motion for class certification.  Defendants' letter—purportedly to correct Plaintiffs' characterizations of evidence made at the hearing—does no such thing and only underscores how *Defendants* misconstrue the appropriate inquiry at the class certification stage.  Indeed, Defendants' counsel stated during the hearing that class certification should be denied because "there is no showing that the Yinghe equipment was the reason that Fab-1 ultimately did not operate at commercial scale" (Tr. of Mar. 13, 2026 Hrg. at 16:16-18), but Defendants' burden to prove the *absence* of price impact does not require Plaintiffs to make an affirmative evidentiary showing at this stage.

Instead, it is *Defendants* who must prove that there is *no causal link whatsoever* between the Yinghe equipment's failure to pass threshold testing (as was misrepresented to investors) and the materialization of the risk that misrepresentation concealed: that Fab-1 may not achieve commercial production.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (Ginsburg, J., concurring) ("[I]t is incumbent upon the defendant to show the absence of price impact."); *Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *8 (N.D. Cal. Sept. 27, 2024) (similar). Essentially, to prevail at this early stage, Defendants must establish that Plaintiffs' theory of causation is *impossible*.  As set forth in Plaintiffs' briefing, however, the mere presence of other contributing factors (such as problems with Zone 2 or other parts of the Fab-1 assembly line) does not *completely* "sever the link" between the Yinghe equipment's problems and the disclosures about Fab-1's shortcomings and the investor losses they caused.  Disaggregation of factors and determining precisely what share of such losses are linked to the misrepresented risks presented by the Yinghe equipment's failures versus other factors are questions for summary judgment or trial.  *Pardi*, 2024 WL 4336627, at *8; *see also In re FibroGen Sec. Litig.*, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024) (loss causation questions of disaggregation reserved for "the appropriate time"); *Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6,

2024) ("The relevant inquiry is whether Defendants have proven a complete lack of price impact during the Class Period.").

As a threshold matter, Defendants' letter and additional evidence does not correct any characterization of evidence made at the hearing.  There, I plainly stated:

> [O]ne of [Defendants'] requests for admission was admit that the Yinghe equipment was only [Z]one 3 and not for anywhere else. That's not true. . . . [W]e are saying there is evidence in the record that shows Yinghe supplied some equipment at least for some other zones as well.

(Tr. of Mar. 13, 2026 Hrg. at 9:19-10:3.)  That representation is not "at odds" with the evidentiary record, which shows that ███████████████████████████████████████



[1] ████████████████████████████████████

████████████████████████████████████████████████████

██████████████ (*See* Enovix_0109839 (attached to the accompanying Supplemental Declaration of Joshua Baker ("Baker Suppl. Decl.") as Exhibit 1) at ███████████████████████████

████████████████████████████████████████████████████

(*See* Baker Suppl. Decl., Exs. 2-4 (Enovix_0061172 at lines 242-46; Enovix_0061184 at lines 94-95, 310-11, and 328-29; Enovix_0061531 at lines 124 and 130-34).)  Ongoing fact discovery may yet uncover further evidence showing Yinghe supplied equipment to other zones of Fab-1.[2]  The parties are still negotiating the scope of document production from four additional custodians and Plaintiffs have yet to take fact depositions. Nonetheless, Plaintiffs already have a factual basis to deny that Yinghe supplied equipment exclusively to Zone 3.

More importantly, however, whether or not Yinghe supplied equipment for other zones is immaterial to the class certification inquiry because it does not change the fact that Defendants cannot prove (as they must) that the risks concealed by the misrepresentation about the Yinghe equipment did not cause, *even in part*, the delays and failures of Fab-1 to achieve commercial production.  In order to prove a *complete* lack of price impact at the class certification stage, Defendants must prove either (A) a full disclosure of the relevant truth and concealed risks to Fab-1 prior to any of the alleged corrective disclosures; or (B) that the disclosures about Fab-1's struggles to achieve commercial production capabilities could not be due, in *any part*, to the concealed risks stemming from the deficient Yinghe equipment. With respect to (A), Defendants have not even attempted to argue that the truth was fully disclosed or the risks fully materialized

---

[1] Defendants also mischaracterize my response to their post-hearing inquiry. I did not claim that I "did not recall" the foregoing colloquy; I merely stated that (1) Defendants' demand for immediate identification of evidence related to Plaintiffs' RFA responses—made on a Friday evening with an arbitrary Sunday deadline—was merely a disguised interrogatory; (2) Plaintiffs would respond in due course to such an interrogatory, if served; and (3) the factual basis for Plaintiffs' response to RFA No. 1 and my representation to the Court is based on documents produced by (and thus equally available to) Defendants. Defendants declined to serve such an interrogatory, and instead filed their letter to the Court. *See* Baker Suppl. Decl., Ex. 11 (correspondence with counsel).

[2] Plaintiffs are entitled to test, through depositions and further document discovery, the self-serving declaration Defendants submit with their letter.  Indeed, contrary to Defendants' representations, Plaintiffs have also identified evidence showing that the vendor in Wilsonville, Oregon, was not the only supplier of manufacturing equipment for Zone 2.  Other vendors supplied Zone 2 equipment as well, although to Plaintiffs' (incomplete) knowledge those vendors did not include Yinghe. This is relevant to Plaintiffs' partial denial of RFA No. 1, but not to the issues presently before the Court.

THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827

prior to the November 1, 2022 disclosure, and—as Plaintiffs set forth in their reply brief and at the hearing—Defendants fail to show the truth and concealed risks were fully revealed prior to the January and October 2023 disclosures as well. With respect to (B), Defendants' proffer of some evidence showing that problems with Zone 2 *also* contributed to Fab-1's struggles does not *completely* "sever" the connection to the concealed failings of the Yinghe equipment; it merely poses a disaggregation issue to be addressed at later stages.

Plaintiffs do not need to submit evidence proving loss causation at class certification (well before Plaintiffs have completed fact discovery), especially where Defendants have failed to carry their burden. Nonetheless, because Defendants (erroneously) insist that Plaintiffs are required to make some sort of *prima facie* evidentiary showing of loss causation at this stage (*see* Tr. of Mar. 13, 2026 Hrg. At 16:16-18 ("there is no showing that the Yinghe equipment was the reason that Fab-1 ultimately did not operate at commercial scale.")), and the Court indicated that it may find Defendants' argument persuasive, Plaintiffs submit that substantial evidence already shows the failure of the Yinghe equipment to pass the FAT was a material contributing factor to the struggles of Fab-1 to achieve commercial production, as revealed in the three alleged corrective disclosures. That is more than sufficient to defeat Defendants' attempt to show a complete lack of price impact.

There is ample evidence that the deficient Yinghe equipment contributed materially to Fab-1's struggles to achieve commercial production capabilities. Strikingly, for example, a memorandum dated October 20, 2022, from Enovix's VP of Engineering and Senior Director of Advanced Manufacturing to Enovix's top officers and directors, including Defendants Rodgers, Rust, Pietzke, Hernandez, Atkins, and Reichow, among others, ██████████████████ ███████████████████ (Baker Suppl. Decl., Ex. 5 (Enovix_0305018).) ███████████ ████████████████████████████ ████████████████████████████ ███████████████████████ (*Id.*) █████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████ (*Id.*) █████████████████████████ ████████████████████████████ ████████████████████████ Further discovery is likely to reveal that other ████████████████████ from Fab-1's failures were also attributable to the Yinghe equipment.

Other documentary evidence obtained so far tells a similar story. Achieving commercial production at Fab-1 was pegged to a production capacity of 550 UPH. A November 7, 2022 presentation by Defendant Pietzke, Enovix's CFO, ███████████████████ ████████████████████████████ █████████████████████ (Baker Suppl. Decl., Ex. 6 (Enovix_0117481) at 2.) This document demonstrates that, by November 7, 2022—less than a week after the November 1, 2022 corrective disclosure—███████████████████████ ████████████████████████████ ███.

3

Similarly, an email dated August 10, 2022 from Enovix's Senior Director of Procurement ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████ (Baker Suppl. Decl., Ex. 7 (Enovix_0094889).)  This indicates that ████████████ ██████████████████████████████████████████ ██████████

A spreadsheet attached to the October 20, 2022 memorandum, █████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████ (Baker Suppl. Decl., Ex. 8 (Enovix_0305024) at line 110.)  This further shows that as of October 20, 2022—less than two weeks before the November 1, 2022 disclosure—███████████████████████████ ██████████████████████████████████████████ ██████████████████████████████.

Likewise, an email dated October 28, 2022, ████████████████████ ██████████████████████████████████████████ ████████████████████ (Baker Suppl. Decl., Ex. 9 (Enovix_0168619) at 1.)  This document also indicates that █████████████████████████ ██████████████████████████████████████████ █████████████████████████████.

Another document, a memorandum dated December 16, 2022, from Enovix's VP of Sales and Business Development to Defendants Rust, Pietzke, and other key personnel on Enovix's manufacturing team, ██████████████████████████████████████████ ███████████████████████████████ (Baker Suppl. Decl., Ex. 10 (Enovix_0101169) at 1-2.)  The memo also states, ████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████.

Plaintiffs submit that these documents, in addition to the other evidence discussed in Plaintiffs' reply brief and Dr. Tabak's reply report, are more than sufficient to defeat Defendants' attempts to prove a complete lack of connection between the corrective disclosures and the alleged misrepresentation. For these reasons, and those set forth in Plaintiffs' briefs and at the hearing, Defendants have failed to prove the total absence of back-end price impact and rebut the *Basic* presumption of reliance.

Discovery is ongoing, and in many cases (including here, when Plaintiffs filed their original class certification motion), plaintiffs often do not have the benefit of completing (or even substantially starting) fact discovery. That is why *price impact analysis cannot require an evidentiary showing on Plaintiffs' behalf*.  Further development of these documents and other facts will be critical to Plaintiffs' eventual demonstration of loss causation and damages, including the

disaggregation of potential confounding factors. Defendants may challenge Plaintiffs' showing at summary judgment, after fact discovery, when the evidentiary burden will fall on Plaintiffs. But at the class certification stage, the burden of proving a **complete** lack of price impact is on Defendants. Defendants have failed to make the requisite showing even without considering this supplemental evidence, but, to the extent the Court finds it necessary or helpful, this evidence further demonstrates back-end price impact by showing a clear connection between the misrepresentation and corrective disclosures.

Respectfully submitted,

*/s/Joshua Baker*
Joshua Baker

5